# EXHIBIT I

**From:** Eve J. Brown [mailto:ejbrown@bricolagelaw.com]
**Sent:** Wednesday, May 09, 2018 3:18 PM
**To:** Marko.Zoretic
**Cc:** Matt.Bellinger
**Subject:** RE: Monster v. BeastUp - Joint Statement Regarding Discovery Disagreement (Monster's portion and supporting declaration)

Marko,

I inserted BeastUp's introduction. I am not finished with the interrogatory contentions. Please see attached. I am continuing to work on it. In the meantime, you can review what I have added.

**From:** Marko.Zoretic <Marko.Zoretic@knobbe.com>
**Sent:** Wednesday, May 9, 2018 3:00 PM
**To:** Eve J. Brown <ejbrown@bricolagelaw.com>
**Cc:** Matt.Bellinger <Matt.Bellinger@knobbe.com>
**Subject:** RE: Monster v. BeastUp - Joint Statement Regarding Discovery Disagreement (Monster's portion and supporting declaration)

Eve,

We agree to give you until 3:00 pm Pacific to provide us with the Joint Statement with your portion inserted.  If we do not have the Joint Statement with your portion inserted by that time, we will proceed with our filing under Local Rule 251(d).

Best regards,
Marko

**Marko Zoretic**
Partner

949-721-7695 **Direct**

**Knobbe Martens**

**From:** Eve J. Brown [mailto:ejbrown@bricolagelaw.com]
**Sent:** Wednesday, May 09, 2018 11:48 AM
**To:** Marko.Zoretic
**Subject:** Re: Monster v. BeastUp - Joint Statement Regarding Discovery Disagreement (Monster's portion and supporting declaration)

Marko
noon is in 15 minutes can you give me until 3:00 p.m.?

**From:** Marko.Zoretic <Marko.Zoretic@knobbe.com>
**Sent:** Wednesday, May 9, 2018 1:19:12 PM
**To:** Eve J. Brown
**Cc:** Matt.Bellinger
**Subject:** RE: Monster v. BeastUp - Joint Statement Regarding Discovery Disagreement (Monster's portion and supporting declaration)

1

Eve,

We still have not received your portion of the Joint Statement re Discovery Disagreement, despite providing our portion to you over two weeks ago and requesting that you provide your portion no later than May 8.  We also have not received any supplemental document production or supplemental interrogatory responses.  The hearing on the Joint Statement re Discovery Disagreement is May 16, so the Joint Statement must be filed today.  Unless we receive your portion by noon Pacific today, we intend to file an affidavit along with our portion of the statement and supporting declaration pursuant to Local Rule 251(d) ("Failure to Meet or Obtain Joint Statement").

Best regards,
Marko

**Marko Zoretic**
Partner
Marko.Zoretic@knobbe.com

949-721-7695 **Direct**

**Knobbe** Martens
2040 Main St., 14th Fl.
Irvine, CA 92614
www.knobbe.com/marko-zoretic

---

**From:** Marko.Zoretic
**Sent:** Monday, April 23, 2018 12:28 PM
**To:** ejbrown@bricolagelaw.com
**Cc:** Matt.Bellinger
**Subject:** Monster v. BeastUp - Joint Statement Regarding Discovery Disagreement (Monster's portion and supporting declaration)

Eve,

Please find attached Monster's portion of the Joint Statement Regarding Discovery Disagreement (including supporting declaration and exhibits) noticed to be heard on May 16, 2018.  Please provide your portion as soon as possible, but no later than May 8, 2018 so that we have sufficient time to prepare for filing.  Please also note that the exhibits may contain reference to personal information that Defendant would prefer redacted. If there is any such information, please specifically identify any such portions.

Best regards,
Marko

**Marko Zoretic**
Partner
Marko.Zoretic@knobbe.com

949-721-7695 **Direct**

**Knobbe** Martens
2040 Main St., 14th Fl.
Irvine, CA 92614
www.knobbe.com/marko-zoretic

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information.
Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender
by reply email and destroy all copies of the original message.

Steven J. Nataupsky (CA SBN 155913)
steven.nataupsky@knobbe.com
Lynda J. Zadra-Symes (CA SBN 156511)
lynda.zadrasymes@knobbe.com
Matthew Bellinger (CA SBN 222228)
matt.bellinger@knobbe.com
Marko R. Zoretic (CA SBN 233952)
marko.zoretic@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Plaintiff
MONSTER ENERGY COMPANY

Eve J. Brown (CA SBN 247051)
ejbrown@bricolagelaw.com
BRICOLAGE LAW, LLC
1080 Beacon Street, Suite 4D
Brookline, MA  02446
(508) 734-3404

Attorney for Defendant,
BEASTUP, LLC

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONSTER ENERGY COMPANY, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>BEASTUP LLC, a California limited liability company,<br><br>Defendant. | Case No. 2:17-CV-01605-KJM-EFB<br><br>**JOINT STATEMENT REGARDING DISCOVERY DISAGREEMENT**<br><br>Date:          May 16, 2018<br>Time:          10:00 a.m.<br>Location:     Ctrm 8, 13th Floor<br>Magistrate Edmund F. Brennan |

1    Pursuant to Local Rule 251, Plaintiff Monster Energy Company ("Plaintiff" or

2 "Monster") and Defendant BeastUp, LLC ("Defendant" or "BeastUp"), through their respective

3 counsel of record, submit this Joint Statement re Discovery Disagreement.  Exhibits 1–19

4 referenced herein are attached to the Declaration of Marko R. Zoretic ("Zoretic Decl.") filed

5 concurrently herewith.

6                              **I.   INTRODUCTORY STATEMENTS**

7    **A.   Monster's Introduction**

8    Monster is a nationwide leader in the business of developing, marketing, selling, and

9 distributing ready-to-drink beverages, including energy drinks.  In 2002, Monster launched its

10 MONSTER ENERGY® drink brand, bearing its now-famous ℳ ® mark ("Claw Icon Mark")

11 and UNLEASH THE BEAST!® mark.  Images of Monster's original MONSTER ENERGY®

12 drink, which Monster has sold continuously since 2002, are shown below.

13

14

15

16      

17

18

19

20

21

22

23 In addition to the UNLEASH THE BEAST!® mark, Monster has used other marks containing

24 the term BEAST (BEAST-inclusive marks) in connection with its MONSTER™ line of

25 beverages, such as UNLEASH THE NITRO BEAST!®, REHAB THE BEAST!®, UNLEASH

26 THE ULTRA BEAST!®, and PUMP UP THE BEAST!®, among others.

27

28

1    Monster filed its Complaint on August 2, 2017, alleging that BeastUp is infringing

2    Monster's trademarks in connection with Defendant's BeastUp energy drink product and related

3    goods.   Doc. 1.   For example, Defendant has sold energy drinks bearing claw logos and

4    BEASTUP mark that are confusingly similar to Monster's Claw Icon Mark and UNLEASH THE

5    BEAST!® mark and other BEAST-inclusive marks.   Some exemplary images of Defendant's

6    BeastUp energy drink and promotional materials for the product are shown below.

7

8

9    

10

11

12

13

14

15

16

17    

18

19

20

21

22

23

24

25    Defendant has demonstrated a haphazard and cavalier attitude towards its discovery

26    obligations.   Monster has met and conferred with Defendant at length, over several months, and

27    still Defendant has not adequately supplemented its interrogatory responses and document

28    production despite repeated promises to do so.   Monster appreciates that Defendant's sole

employee, Mr. Waelty, has been faced with various personal matters—to which Monster has been accommodating—but the June 1, 2018 fact discovery cutoff is fast approaching.  Defendant has had more than sufficient time to comply with its discovery obligations.  Monster can no longer wait and rely on promises that it will receive the discovery to which it is entitled.

On December 1, 2017, Monster served its First Set of Interrogatories, First Set of Requests for Production, and First Set of Requests for Admission.  (Zoretic Decl., Exs. 1, 2; ¶ 4.)  Defendant, however, failed to provide timely responses.  Monster followed up multiple times with Defendant about its failure to respond, and it was not until January 9, 2018, that Defendant provided its belated responses and objections.  (*Id.*, Ex. 3 at 2–5; Exs. 4 and 5.)  It was not until January 11, after even more follow-up requests, that Defendant finally produced any documents.  (*Id.*, Ex. 3 at 1–2.)  Defendant's interrogatory responses and document production were severely deficient.  Accordingly, on January 19, 2018, Monster sent Defendant a letter detailing the deficiencies and requesting a meet and confer.  (*Id.*, Ex. 6.)

Defendant also failed to timely serve its responses to Monster's Second Set of Requests for Production and Second Set of Interrogatories, which were served on December 20, 2017 and responses thereto were due on January 22, 2018.  (*Id.*, Exs. 7–10.)   On January 23, 2018, Monster contacted Defendant regarding Defendant's failure to timely serve its responses.  (*Id.*, Ex. 11 at 3.)  Defendant untenably responded that it would <u>not</u> provide its responses to Monster's second set of discovery requests until it "understand[s] [Monster's] objections" to Defendant's untimely served responses to Monster's first set of discovery requests. (*Id.*, Ex. 11 at 1–2.)

Defendant's failure to provide timely and full responses prejudiced Monster's ability to conduct the Rule 30(b)(6) deposition of Defendant on January 25, 2018.  (*Id.*, Ex. 11 at 1.)  Indeed, Defendant's Rule 30(b)(6) designee, Mr. Waelty, testified about numerous documents that had not yet been produced, including unproduced documents that he reviewed in preparation for and during the course of the deposition.  (*Id.*, Ex. 12 at, e.g., 9:16–10:9, 13:19–14:12, 30:18–31:15, 41:18–44:9, 58:10–59:7, 112:7–113:8, 117:12–119:3, 170:20–171:1, 204–207; Ex. 13 at 2–3.)

On January 29, 2018 the parties met and conferred regarding the deficiencies in

1   Defendant's responses to Monster's first set of discovery requests, detailed in Monster's January
2   19, 2018 letter.  (*Id*., Exs. 6 & 13.)  The parties also conferred regarding Defendant's refusal to
3   respond to Monster's second set of discovery requests.  (*Id*., Ex. 13.)  Defendant thereafter
4   belatedly served its responses to Monster's Second Set of Requests for Production and also
5   served its supplemental responses to Monster's First Set of Requests for Production on February
6   2, 2018.  (*Id*., Ex. 10.)  Defendant also belatedly revealed that it had documents it was refusing to
7   copy and produce but instead was making available for inspection and copying at Monster's
8   expense at Defendant's principal place of business in Red Bluff, California.  (*Id*., Ex. 14 at 1.)
9   The week before, on January 25, 2018, Monster's counsel had already travelled to Red Bluff for
10  the Rule 30(b)(6) deposition of Defendant.   Monster's counsel could have reviewed the
11  documents during that trip in advance of the deposition had Defendant informed Monster about
12  the documents earlier.

13          On February 5, 2018, Defendant finally served its untimely responses to Monster's
14  Second Set of Interrogatories and also served its supplemental responses to Monster's First Set of
15  Interrogatories.  (*Id*., Ex. 9)  Defendant's responses and document production remained deficient
16  and Monster sent Defendant another letter requesting a meet and confer regarding those
17  deficiencies.  (*Id*., Ex. 13.)

18          The parties met and conferred again regarding Defendant's deficient interrogatory
19  responses and document production on March 20, 2018.  (*Id*., ¶ 17.)  Defendant represented that
20  many of the requested documents had already been produced in a particular document range, so
21  Monster agreed to continue the meet and confer later that week after reviewing the identified
22  document production range.  (*Id*., Ex. 15 at 3–4.)  On March 22, 2018, counsel for Monster
23  followed up with Defendant to continue the meet and confer and informed Defendant that its
24  representation was not correct.  (*Id*., Ex. 15 at 3–4.)  Defendant, however, refused to provide
25  availability for a conference of counsel, and instead unnecessarily requested a revised meet and
26  confer letter and an updated outline of Monster's discovery concerns. (*Id*., Ex. 15 at 1–2.)  The
27  parties ultimately met and conferred again on April 3, 2018 as summarized in Monster's April 4,
28  2018 letter.  (*Id*., Ex. 16.)  Defendant agreed that it would provide supplemental interrogatory

1  responses by April 11, but did not commit to a date for providing its supplemental document

2  production.  (*Id*., Ex. 16 at 4.)

3        On April 11, however, Defendant did not produce any supplemental discovery responses

4  or any additional documents.  Instead, Defendant stated that "I am still waiting on a few

5  responses from my client for the supplemental discovery we discussed.  I hope to be able to get

6  you my formal response tomorrow."  (*Id*., Ex. 18.)  Then, on April 16, Defendant requested an

7  extension in view of personal issues to which Mr. Waelty was attending and stated that "I don't

8  expect that I will have any additional documents or information for you until at least next week,

9  and I appreciate that if we go too long, your time may be limited as well."  (*Id*., Ex. 19.)

10  Defendant, however, has had more than sufficient time to provide complete discovery responses.

11  Despite Defendant's repeated assurances that it will provide the requested discovery, Defendant

12  still has not provided any further supplemental discovery responses or produced any additional

13  documents.   Nor had Defendant committed to a date certain by which it will provide the

14  discovery responses and additional documents.

15        It is apparent that Defendant will not comply with its discovery obligations unless

16  ordered to do so by this Court.  Because fact discovery closes on June 1, 2018, Monster moves

17  for an Order compelling Defendant to (1) fully respond to Interrogatory Nos. 1–3, 7, 8, and 13–

18  15; (2) produce requested documents from its various email accounts; (3) produce missing email

19  attachments and associate any produced attachments with its corresponding email; and (4)

20  provide the documents requested in Request for Production Nos. 1, 9, 10, 13, 14, 23, 26, 34, 38,

21  and 47.

22  **B.   BeastUp's Introduction**

23        Defendant has no objection to providing every piece of information germane to this

24  lawsuit to Plaintiff. As stated in Defendant's counsel's January 24, 2018 email to Plaintiff's

25  counsel, attached as Exhibit 11:

26
27        **We want to provide you with all the information we have. We know we
        are in the right, and genuinely hope that, the more facts you have, the
        more reasonable your client will be in dropping this meritless suit or
28      coming to a mutually agreeable resolution.**

Indeed, as of this date, Defendant has produced <u>over 2,000 documents</u> to Plaintiff, provided in-person deposition testimony for eight hours, and is cooperating with Plaintiff's notice of a second deposition scheduled for May 24, 2018.

Plaintiff's accusation that Defendant "has demonstrated a haphazard and cavalier attitude" towards this litigation could not be farther from the truth, and is not well taken. Defendant has gone to extreme measures and great personal expense to comply with Plaintiff's requests. When, in January, Plaintiff first made the accusation towards Defendant of a "cavalier" attitude, Defendant's counsel promptly and earnestly responded as follows:

> **I assure you that Defendant does not have a cavalier attitude towards this litigation, which is very seriously threatening to destroy his business, his home, and his retirement savings, all while his wife is going through chemotherapy.**

Email from Defendant's Counsel Eve Brown to Plaintiff's Counsel Marko Zoretic, dated January 24, 2018 and attached herein as Exhibit 11.

It is disingenuous to claim that Defendant has been uncooperative or dismissive with respect to any part of this litigation. Defendant is a single-member LLC, owned and operated by one individual, Robert Waelty. Mr. Waelty is a dedicated U.S. Army veteran, full-time Fire Chief for Cal Fire, husband, and father.

Mr. Waelty manages BeastUp, LLC on a part-time basis out of his personal home. Unlike Plaintiff, which is a billion-dollar corporation with a cadre of attorneys and unlimited resources, Mr. Waelty has no employees, assistants, or record-retention tools. To the extent Plaintiff complains that documents have been produced slowly, that is due solely to the genuinely long time it has taken Defendant to sift through decades-old personal files that, in most cases, were not kept in the ordinary course of business or within the proper scope of discovery,

but were nonetheless searched for and provided to Plaintiff in the spirit of transparency and cooperation.

Defendant's good faith efforts have been met with nothing but intimidation and harassment tactics by Plaintiff. For every question answered and every document produced, Plaintiff demands two more, often before reviewing what Defendant already provided.

Plaintiff's objections to Defendant's responses have been unending and indiscriminate, clearly designed to harass and delay rather than gather relevant facts. In reply to Plaintiff's various objections, Defendant has patiently and courteously attempted to discuss the issues, only to be further rebuked by one of numerous pugnacious attorneys on Plaintiff's legal team. See, e.g., the following additional excerpt from Defendant's counsel's January 24, 2018 email to Plaintiff's counsel:

> **No one is hiding anything from you. We simply want to make that the time we spend is productive and not wasted by engaging in avoidable spats among counsel.**
>
> **If we are not aligned in our basic understandings of the marks and definitions at issue, then our exchange of information will be unnecessarily messy and prolonged. You will not be satisfied with the responses you receive, and my client will be frustrated by truthfully and comprehensively responding to your inquiries, only to be told his answers are insufficient. We are talking past each other, which benefits no one.**

Exhibit 11.

Defendant has provided reams of records, documentation, and testimony. Mr. Waelty continues to supplement his production as he uncovers additional responsive documents, pursuant to the Federal Rules, and to address Plaintiff's complaints, even when those complaints

Jt Statement re Discovery Dispute
Case No. 2:17-CV-01605-KJM-EFB

lack foundation. Plaintiff continues to ask for documents already produced, documents never requested, and documents that have no bearing on, and are outside the scope of, this case.

Plaintiff's allegation that "It is apparent that Defendant will not comply with its discovery obligations unless ordered to do so by this Court" is, similarly to its other allegations, disingenuous. On numerous occasions, Defendant has expressed his willingness and desire to work with Plaintiff to satisfy Plaintiff's requests and concerns. See, e.g., email from Defendant's counsel Eve Brown to Plaintiff's counsel Marko Zoretic dated Monday, January 29, 2018:

> **I would like to work with you to get everything you need, but it would help the process if I could have your cooperation and patience as my client and I sort through years of paper files. As you know, BeastUp is a one man, part time operation. I understand that you want to fight and argue, but that is not productive. I assure you in good faith that my client and I are both doing out utmost to comply with your requests, and are not hiding anything intentionally. He will continue to search, and I will continue to supplement production as additional documents are shared with me.**
>
> **Under the Rules, you are of course also welcome to inspect BeastUp's documents as they are kept in the usual course of business in Red Bluff, if you do not feel like my client's responses are comprehensive or fast enough for you. Again, we want to work with you here, and I have no desire to waste our or the court's time spatting with you any more than necessary.**
>
> **If you list for me what you feel you are missing, I will coordinate with my client to get you whatever I can that is responsive.**
>
> **If you would still like to speak over the phone, you can reach me on my cell today at 617 xxx-xxxx.**
>
> **Sincerely,**
> **Eve**

In the limited circumstances when Defendant has been delayed, counsel has been in timely communication with Plaintiff's counsel, disclosed all reasons for the delay, and offered reciprocal courtesies in exchange for brief extensions. See, e.g., email from Eve Brown to Marko Zoretic, dated April 16, 2018:

Jt Statement re Discovery Dispute
Case No. 2:17-CV-01605-KJM-EFB

> I apologize for the delay on the BeastUp supplemental answers. My client is going through a difficult time with his wife's cancer treatments, and it has been a struggle to go back and spend time on the email searches. Would you be amenable to an extension? I don't expect that I will have any additional documents or information for you until at least next week, and I appreciate that if we go too long, your time may be limited as well.

Instead of replying, Plaintiff filed the instant motion to compel.

## II.  CONTENTIONS AND POINTS AND AUTHORITIES

### A.   INTERROGATORIES

#### 1.   Interrogatory No. 1

**INTERROGATORY NO. 1**

Identify and describe each of the BeastUp Products.

**RESPONSE TO INTERROGATORY NO. 1**

Defendant sells the following products under the BeastUp marks: (1) clothing items, including sweatshirts, t-shirts, tank tops, workout shirts (long and short-sleeved), hats, lanyards, wristbands, beanies, coffee cups and stickers/decals; and (2) performance beverages in 12 oz. aluminum cans, formulated to increase mental clarity, memory, and focus.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1:**

Defendant sells the following products under the BeastUp marks: (1) clothing items, including sweatshirts, t-shirts, tank tops, workout shirts (long and short-sleeved), hats, lanyards, wristbands, beanies, coffee cups and stickers/decals; and (2) two performance beverage formulations, one designed to increase mental clarity and focus that is currently sold in 12 oz. aluminum can, and one designed for refueling after strenuous physical activity that is ready for production and will be sold in a 16 oz. plastic bottle. Images, ingredient lists, prices, SKU and UPC codes, and descriptions of each product have been produced to Plaintiff, to the extent Defendant has such information in its possession, custody, or control and was able to locate them after a reasonable search.

##### a.   Monster's Contentions and Points of Authority

1  Defendant agreed on January 29, 2018 that it would supplement its response to identify

2  the SKU numbers for the products sold by Defendant to the extent such SKU numbers exist.

3  (Zoretic Decl., Ex. 13 at 5.)  Information regarding Defendant's energy drink products is relevant

4  to Monster's infringement claims.   While Monster has not accused Defendant's clothing

5  displaying the BEASTUP mark of infringement, Defendant is attempting to rely upon its use of

6  the mark on clothing to support its priority and laches defenses.  *See infra* at Interrogatory Nos.

7  13 and 15.  While Monster disagrees that Defendant's alleged use of the BEASTUP mark on

8  clothing supports either of those defenses, Monster is entitled to discovery regarding Defendant's

9  alleged use on clothing in view of Defendant's reliance on that use.

10  Defendant agreed on March 20, 2018 that it would supplement its response to specifically

11  identify the documents it was relying on in response to the interrogatory.  (*Id.*, Ex. 15 at 2.)  On

12  April 3, 2018, Defendant reaffirmed that commitment and agreed to provide the requested

13  information by April 11.  (*Id.*, Ex. 16 at 3, 4.)  But Defendant has still failed to provide the

14  requested information despite agreeing to do so.  Accordingly, Monster requests that the Court

15  order Defendant to fully respond to the interrogatory to provide the requested information.

16  **b.**      **BeastUp's Response**

17

18  **2.**      **Interrogatory No. 2**

19  **INTERROGATORY NO. 2:**

20  For each product identified in response to Interrogatory No. 1, identify the date the product was

21  first sold and its average wholesale and retail price.

22  **RESPONSE TO INTERROGATORY NO. 2:**

23  Defendant's first products were clothing items in April 2009. On average, clothing items are

24  purchased wholesale at between $8.00 and $20.00, and sold to the public at between $12.00 and

25  $30.00, depending on the specific item. Defendant launched its beverage in May 2014.

26  Defendant's cost to produce each beverage, not including overhead and R&D, is approximately

27  $.083/can. Defendant sells cans to distributors and retail stores for $1.05-$1.45 per can,

28  depending on the overall volume of cans purchased and whether the purchase is subject to a

promotion. Defendant believes that retail stores sell cans to the public for an average $2.50 each.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:**

Defendant's first products were clothing items in April 2009. On average, clothing items are purchased wholesale at between $8.00 and $20.00 and sold to the public at between $15.00 and $35.00, depending on factors such as whether a sale applied, where and when the item was sold, and the volume of items sold. Defendant launched its beverage in May 2014. Defendant's cost to produce each beverage, not including overhead and R&D, is approximately $.83/can. Defendant sells cans to distributors and retail stores for $1.05-$1.45 per can, depending on the overall volume of cans purchased and whether the purchase is subject to a promotion. Defendant believes that retail stores sell cans to the public for an average $2.50 each. Average retail prices for specific items are as follows:

- Tank tops: $15.00
- T-shirts: $20.00
- Workout Long Sleeve Shirts: $25
- Workout Short Sleeve Shirts: $22
- Hats: $20
- Beverage cans: $2.50

Price lists, cost estimates, and wholesale quotes have been produced to Plaintiff.

### a.    Monster's Contentions and Points of Authority

Defendant agreed on March 20, 2018 that it would supplement its response to specifically identify the documents it was relying on in response to the interrogatory. (Zoretic Decl., Ex. 15 at 2.)  On April 3, 2018, Defendant reaffirmed that commitment and agreed to provide such information by April 11. (*Id.*, Ex. 16 at 3, 4.)  But Defendant has still failed to provide the requested information despite agreeing to do so.  Accordingly, Monster requests that the Court order Defendant to fully respond to the interrogatory to provide the requested information.

### b.    BeastUp's Response

[BEASTUP TO INSERT]

### 3.    Interrogatory No. 3

**INTERROGATORY NO. 3:**

Identify each person involved with the development, selection, or approval of the BEASTUP mark and Defendant's Claw Logos, and for each person so identified, describe in detail, with reference to any supporting documents, information, and materials, their role in such development, selection, or approval.

**RESPONSE TO INTERROGATORY NO. 3:**

1.      Name: Robert Waelty

        Role: Robert Waelty is the CEO of BeastUp LLC, and was the primary individual responsible for the conception, development, selection, and approval of Defendant's mark and all packaging and presentation thereof.

2.      Name: Jessee Waelty

        Role: Jessee Waelty is Robert Waelty's son, and the Vice President of BeastUp LLC. Jessee Waelty manages Defendant's marketing and events and creates artwork for Defendant's clothing.

3.      Name: Power Brands Consulting, LLC

        Role: Power Brands is an independent beverage consulting company that was hired by Defendant in 2011 to support the development of BeastUp-branded beverages, pursuant to a Product Development Agreement that is being produced to Plaintiff together with these responses. Power Brands was solely involved in beverage-related branding; Defendant's BeastUp mark and logos were already in use on clothing prior to Defendant's expansion into beverages.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3:**

1.      Name: Robert Waelty

        Role: Robert Waelty is the CEO of BeastUp LLC, and was the primary individual responsible for the conception, development, selection, and approval of Defendant's mark and all packaging and presentation thereof.

2.      Name: Jessee Waelty

        Role: Jessee Waelty is Robert Waelty's son, and is a professional Motocross racer. Jessee

1  Waelty was consulted and provided opinions and advice with respect to the creation and

2  adoption of Defendant's mark and all packaging and presentation thereof.

3  3.      Name: Power Brands Consulting, LLC

4  Role: Power Brands is an independent beverage consulting company that was hired by

5  Defendant in 2011 to support the development of BeastUp-branded beverages, pursuant

6  to a Product Development Agreement that is being produced to Plaintiff together with

7  these responses. Power Brands was solely involved in beverage-related branding;

8  Defendant's BeastUp mark and logos were already in use on clothing prior to

9  Defendant's expansion into beverages. The individuals at Power Brands who were

10  involved in Defendant's beverage-related branding were: Kris Guiao (Creative Director);

11  Ashlliegh Brookham (Executive Assistant/Project Manager); and Alina Guerrero (Senior

12  Beverage Scientist).

13  **a.      Monster's Contentions and Points of Authority**

14  Defendant agreed on April 3, 2018 that it will supplement its response by April 11 to

15  explain the roles of Power Brand Consulting employees Kris Guoaio, Ashiliegh Brookham, and

16  Alina Guerrero in the development, selection, or approval of the BEASTUP mark.  (Zoretic

17  Decl., Ex. 16 at 3, 4.)  But Defendant has still failed to provide the requested information despite

18  agreeing to do so.  Accordingly, Monster requests that the Court order Defendant to fully

19  respond to the interrogatory to provide the requested information.

20  **b.      BeastUp's Response**

21  [BEASTUP TO INSERT]

22  **4.      Interrogatory No. 7**

23  **INTERROGATORY NO. 7:**

24  Describe any research (including, but not limited to, surveys, polls, market research,

25  investigations, analyses, studies, or searches) regarding the BEASTUP mark or Defendant's

26  Claw Logos, including, but not limited to, stating the person(s) who authorized the research,

27  when the research was conducted, the person(s) who conducted the research, the reason the

28  research was conducted, the results of the research, and identifying all documents relating to the

- 13 -

1  research.

2  **RESPONSE TO INTERROGATORY NO. 7:**

3  Robert Waelty performed a search of the USPTO's TESS database in or around September 2008

4  for the mark BEASTUP. He identified one potential competitor, "The Beast," which was a brand

5  from Austria. Plaintiff did not appear in Defendant's search results, nor did Plaintiff appear in

6  the USPTO's search results. All general marketing research and surveys are being produced to

7  Plaintiff contemporaneously with these responses.

8  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 7:**

9  Robert Waelty performed an amateur search of the USPTO's public TESS database in or around

10  September 2008 for the mark BEASTUP. He does not recall specific search terms and does not

11  have documents relating to that search in his possession. He recalls identifying a single potential

12  competitor, "The Beast," which was a brand from Austria. Defendant later retained LegalZoom

13  to perform an additional search for marks including the word BEAST in connection with apparel

14  in Class 25. LegalZoom's search results have been produced to Plaintiff. All other responsive

15  documents located after a reasonable search have been produced to Plaintiff.

16  a.      **Monster's Contentions and Points of Authority**

17          Defendant agreed on March 20, 2018 that it would supplement its response to specifically

18  identify the documents it was relying on in response to the interrogatory.  (Zoretic Decl., Ex. 15

19  at 2.)  On April 3, 2018, Defendant reaffirmed that commitment and agreed to provide such

20  information by April 11.  (*Id*., Ex. 16 at 3, 4.)  But Defendant has still failed to provide the

21  requested information despite agreeing to do so.  Accordingly, Monster requests that the Court

22  order Defendant to fully respond to the interrogatory to provide the requested information.

23  b.      **BeastUp's Response**

24          [BEASTUP TO INSERT]

25          **5.      Interrogatory No. 8**

26  **INTERROGATORY NO. 8:**

27  State Your net and gross sales (in units and dollars) and net and gross profits, on a monthly basis,

28  for each of the BeastUp Products since the date of first sale of each product.

**RESPONSE TO INTERROGATORY NO. 8:**

Defendant is producing its profit and loss tax statements to Plaintiff with these responses.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 8:**

Defendant objects to this Interrogatory to the extent that it is unduly burdensome, and that such information is not kept in Defendant's ordinary course of business. Defendant has produced available financial and sales documents to Plaintiff. Additional documents are kept in hard copy form and will be made available to Plaintiff for inspection and copying at Defendant's principal place of business, at Plaintiff's expense.

### a.    Monster's Contentions and Points of Authority

Defendant's supplemental response recites an unduly burdensome objection.  But that objection was not raised in Defendant's original response, which was also untimely. Accordingly, Defendant's unduly burdensome objection has long been waived.  Even assuming that such an objection has not been waived, the interrogatory is not unduly burdensome because it is narrowly tailored to seek basic sales and profit information for Defendant's BeastUp Products. Indeed, the information sought by the interrogatory is basic record keeping information that a business is expected to maintain for, at least, tax reasons.

Defendant agreed on January 29, 2018 that it would supplement its response to identify Defendant's net and gross sales and net and gross profits for each of the BeastUp Products since the date of first sale of each product.  (Zoretic Decl., Ex. 13 at 6.)  Defendant further agreed on March 20, 2018 that it would supplement its response to specifically identify the documents it was relying on in response to the interrogatory.  (*Id.*, Ex. 15 at 2.)  On April 3, 2018, Defendant reaffirmed that commitment and agreed to provide such information by April 11.  (*Id.*, Ex. 16 at 3, 4.)  But Defendant has still failed to provide the requested information despite agreeing to do so.  Accordingly, Monster requests that the Court order Defendant to fully respond to the interrogatory to provide the requested information.

### b.    BeastUp's Response

[BEASTUP TO INSERT]

### 6.    Interrogatory No. 9

Jt Statement re Discovery Dispute
Case No. 2:17-CV-01605-KJM-EFB

**INTERROGATORY NO. 9:**

Describe the trade channels, including identifying by name all retail stores and other outlets, through which the BeastUp Products have been sold, are currently being sold, or will be sold.

**RESPONSE TO INTERROGATORY NO. 9:**

Defendant has sold products online through its website, www.beastup.com, as well as through various retail stores throughout Siskiyou, Shasta, Tehama, Plumas, Trinity, and Butte counties in Northern California. For a full list of retail stores that have sold or distributed Defendant's products, see documents titled "BeastUp Buying Report," produced to Plaintiff with these responses.

   a.    **Monster's Contentions and Points of Authority**

Defendant's response is deficient because it fails to identify by name the retail stores and other outlets through which the BeastUp products have been sold.  While the response refers to a list of store names allegedly referenced in a "BeastUp Buying Report," the response fails to identify the "BeastUp Buying Report" (such as by production number) and Monster is not able to determine what buying report is being referenced. Further, Defendant agreed on January 29, 2018 that it would supplement its response to identify when the BeastUp Products were sold on Defendant's website.  (Zoretic Decl., Ex. 13 at 6.)  Defendant further stated on April 3, 2018 that it was still in the process of determining when BeastUp Products were sold on Defendant's website and reaffirmed that it would supplement its response by April 11.  (*Id.*, Ex. 16 at 4.)  But Defendant has still failed to provide the requested information despite agreeing to do so. Accordingly, Monster requests that the Court order Defendant to fully respond to the interrogatory to provide the requested information.

   b.    **BeastUp's Response**

      [BEASTUP TO INSERT]

   **7.    Interrogatory No. 13**

**INTERROGATORY NO. 13:**

Describe in detail, with reference to any supporting documents, information, and materials, the complete factual and legal basis for Your affirmative defense of "Laches, Waiver and/or

1  Acquiescence."

2  **RESPONSE TO INTERROGATORY NO. 13:**

3  Defendant objects to this Interrogatory to the extent it asks for a legal conclusion.

4  Notwithstanding this objection, Defendant has been openly using its BEASTUP mark in

5  commerce since 2009 without objection or comment from Plaintiff.

6       **a.**    **Monster's Contentions and Points of Authority**

7       Defendant's response recites a legal conclusion objection.  But Defendant's objections

8  were untimely, so the objection has been waived.  Even assuming that such an objection has not

9  been waived, the interrogatory does not merely seek legal conclusions, but rather seeks the

10  factual and legal basis for Defendant's affirmative defense.

11       Defendant agreed on April 3, 2018 that it will supplement the response to identify all

12  facts supporting its affirmative defense of "laches, waiver, and/or acquiescence" by April 11,

13  2018. (*Id.*, Ex. 16 at 4.)  But Defendant has still failed to provide the requested information

14  despite agreeing to do so.  Accordingly, Monster requests that the Court order Defendant to fully

15  respond to the interrogatory to provide the requested information or confirm that there is no basis

16  for its defense other than what is provided in the current response.

17       **b.**    **BeastUp's Response**

18       [BEASTUP TO INSERT]

19       **8.**    **Interrogatory No. 14**

20  **INTERROGATORY NO. 14:**

21  Describe in detail, with reference to any supporting documents, information, and materials, the

22  complete factual and legal basis for Your affirmative defense of "Unclean Hands."

23  **RESPONSE TO INTERROGATORY NO. 14:**

24  Defendant objects to this Interrogatory to the extent it asks for a legal conclusion.

25  Notwithstanding this objection, upon information and belief, Plaintiff is publicly known as a

26  "trademark bully," notorious for misusing the courts to vexatiously harass and intimidate other

27  businesses beyond what the law reasonably allows. Numerous third-party articles, scholarly

28  journals, websites, and news stories have documented Plaintiff's bad faith pattern of behavior.

Jt Statement re Discovery Dispute
Case No. 2:17-CV-01605-KJM-EFB

Such documents are not in Defendant's possession, custody, or control, but are equally available to Plaintiff through a public Internet search.

### a.   Monster's Contentions and Points of Authority

Defendant's response recites a legal conclusion objection.  But Defendant's objections were untimely, so the objection has been waived.  Even assuming that such an objection has not been waived, the interrogatory does not merely seek legal conclusions, but rather seeks the factual and legal basis for Defendant's affirmative defense.

Defendant agreed on April 3, 2018 that it will supplement its response by April 11, 2018 to identify (1) all facts to support Defendant's affirmative defense of unclean hands and (2) all third-party articles, scholarly journals, websites, and news stories that Defendant intends to rely upon in this case.  (*Id.*, Ex. 16 at 4.)  But Defendant has still failed to provide the requested information despite agreeing to do so.  Accordingly, Monster requests that the Court order Defendant to fully respond to the interrogatory to provide the requested information or confirm that there is no basis for its defense other than what is provided in the current response.

### b.   BeastUp's Response

[BEASTUP TO INSERT]

### 9.   Interrogatory No. 15

**INTERROGATORY NO. 15:**

Describe in detail, with reference to any supporting documents, information, and materials, the complete factual and legal basis for Your affirmative defense of "Priority."

**RESPONSE TO INTERROGATORY NO. 15:**

Defendant has been using its mark in commerce since April 2009. The following marks cited by Plaintiff in its Complaint appear to have originated after April 2009, thereby giving Defendant, and not Plaintiff, seniority with respect to those marks.

| Registration No. |
| --- |
| 3,908,600 |
| 3,908,601 |

Jt Statement re Discovery Dispute
Case No. 2:17-CV-01605-KJM-EFB

| |
|---|
| 3,914,828 |
| 3,923,683 |
| 3,963,668 |
| 3,963,669 |
| 4,011,301 |
| 4,051,650 |
| 4,332,062 |

### a.     Monster's Contentions and Points of Authority

Defendant agreed on April 3, 2018 that it will supplement its response by April 11, 2018 to identify any further factual or legal basis for its affirmative defense of priority.  (*Id*., Ex. 16 at 4.)  But Defendant has still failed to provide the requested information despite agreeing to do so.  Accordingly, Monster requests that the Court order Defendant to fully respond to the interrogatory to provide the requested information or confirm that there is no basis for its defense other than what is provided in the current response.

### b.     BeastUp's Response

[BEASTUP TO INSERT]

## B.     REQUESTS FOR PRODUCTION

### 1.     Emails from Defendant's Various Email Accounts

### a.     Monster's Contentions and Points of Authority

Defendant's Rule 30(b)(6) designee, Mr. Waelty, testified that he regularly conducted business communications using various email accounts including beastupenergy@gmail.com (the contact email address on www.beastup.com), info@beastup.com, and beastupgear@gmail.com. (Zoretic Decl., Ex. 13 at 2.)  But Defendant has not produced any emails from any of its email accounts other than from sniperwaelty@yahoo.com.  (*Id*., ¶ 23.)  On April 3, 2018, Defendant agreed to investigate if the emails from its other accounts are automatically forwarded to sniperwaelty@yahoo.com, and if they are not automatically forwarded to that account, to conduct the required search of each of these and any other of

Jt Statement re Discovery Dispute
Case No. 2:17-CV-01605-KJM-EFB

Defendant's email accounts for documents responsive to each of MEC's Requests for Production. (*Id.*, Ex. 16 at 1–2.) But Defendant has still failed to provide the requested information despite agreeing to do so. Accordingly, Monster requests that the Court order Defendant to produce the requested emails from each these and any other of Defendant's email accounts, including robertwaelty@beastup.com. Indeed, documents recently produced by third-party Foothill Distribution Company demonstrate that at least beastupenergy@gmail.com has been used by Defendant for communications. (*Id.*, Ex. 17 at 1.)

### b. BeastUp's Response

[BEASTUP TO INSERT]

### 2. Email Attachments

### a. Monster's Contentions and Points of Authority

Defendant's document production includes numerous emails that refer to attachments or other documents that were not produced with the respective email. Defendant agreed on April 3, 2018 that it would identify where in the production the following email attachment or documents referred to in emails have been produced (and associate it with its respective email), and if they have not been produced, it would produce them:

- The attachments identified in the emails produced at BEAST UP PROD 0242-243 (see Nov. 22 and Nov. 28 emails).
- The "Creative Brief" referred to in the email produced at BEAST UP PROD 0246.
- The attached and completed "Power Brands Agreement" referred to in the email produced at BEAST UP PROD 0274.
- The attachments referred to in the emails produced at BEAST UP PROD 0320, 0324, 0535, 0548 ("search.doc"), and 0666.
- The "attached two draft letters for your review" that are referred to in the Nov. 6, 2011 email produced at BEASTUP PROD 0598.
- The letter referred to in the May 12, 2010 email produced at BEASTUP PROD 0615.

(Zoretic Decl., Ex. 16 at 2.) But Defendant has still failed to provide the requested information despite agreeing to do so. Accordingly, Defendant should produce the requested documents and identify which document belongs to which email. Defendant should further produce all the attachments to all other emails in its production, to the extent they have not been produced, and

Jt Statement re Discovery Dispute
Case No. 2:17-CV-01605-KJM-EFB

1   identify the email that corresponds to each attachment.  *See Cohen v. Trump*, 2015 WL 3617124,

2   at *19–20 (S.D. Cal. June 9, 2015) (ordering Defendant to identify attachments corresponding to

3   each email produced by Defendant and observing that "[s]everal courts have held that emails

4   should be produced along with their attachments." (collecting cases)).

5               **b.**      **BeastUp's Response**

6       [BEASTUP TO INSERT]

7           **3.**     **RFP No. 47**

8   **REQUEST FOR PRODUCTION NO. 47:**

9   All communications between any of the following individuals that refer to or mention MEC, the

10  Claw Icon, any of MEC's BEAST-Inclusive Marks, or any of MEC's Products: Robert Waelty,

11  Jessee Waelty, John Waelty, Colter Hedden, and/or Tony Thompson.

12  **RESPONSE TO REQUEST FOR PRODUCTION 47:**

13  Defendant hereby produces all responsive documents located after a reasonable search. To the

14  extent additional documents are later uncovered, Defendant will supplement its production.

15              **a.**     **Monster's Contentions and Points of Authority**

16          Defendant's production does not contain any communications between Robert Waelty,

17  Jessee Waelty, John Waelty, Colter Hedden, and/or Tony Thompson responsive to this request.

18  (Zoretic Decl., ¶ 23.)   Defendant agreed on April 3, 2018 to confirm whether any such

19  communications existed and produce them.  (*Id.*, Ex.16 at 3.)  But Defendant has still failed to

20  provide the requested information despite agreeing to do so.  Accordingly, Monster requests

21  that the Court order Defendant to produce the requested communications or confirm that it has

22  conducted a reasonable search and no such communications exist.

23              **b.**      **BeastUp's Response**

24      [BEASTUP TO INSERT]

25          **4.**     **RFP No. 1**

26  **REQUEST FOR PRODUCTION NO. 1:**

27  All documents and things relating to the development, origin, conception, derivation, selection,

28  adoption, and/or approval of the BEASTUP mark and Defendant's Claw Logos.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

Defendant will produce all non-privileged documents responsive to this Request that are within its possession, custody, or control and are located after a reasonable search.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

Defendant hereby supplements its production to include additional documents relating to the development, origin, conception, derivation, selection, adoption, and/or approval of the BEASTUP mark and all related designs, including the art specification form submitted to Power Brands Consulting.

### a.    Monster's Contentions and Points of Authority

Defendant agreed on April 3, 2018 to produce the "art specification form" referenced on BEASTUP PROD0123 and BEASTUP PROD0242, which is responsive to this request for production because it relates to the BeastUp can design. (Zoretic Ex. 6 at 4; Ex. 16 at 3.)  But Defendant has still failed to provide the requested information despite agreeing to do so. Accordingly, Monster requests that the Court order Defendant to produce the requested document.

Defendant also agreed on April 3, 2018 that it would confirm in writing that a search was conducted for each of the following and state whether the requested documents are being produced or that there are no responsive documents:

- Communications with Tom Jahnke regarding Defendant's can designs (Mr. Collins was the artist involved in designing BeastUp can design (*see* Zoretic Decl., Ex. 12 at 58:10–59:10));

- Communications with A.J. Collins (including drawings mentioned during Rule 30(b)(6) deposition) (Mr. Collins allegedly designed BeastUp's "BU" logo (*see id*. at 112:7–113:8)); and

- Communications with PSI, including Ben Ebeling, and communications between Jessee Waelty and PSI (Jessee Waelty was involved in can design; Ben Ebeling at PSI, was involved in the production of BeastUp drinks (*see id*. at 117:12–119:13)).

(*Id*., Ex. 16 at 1.)  But Defendant has still failed to provide the requested information despite

Jt Statement re Discovery Dispute
Case No. 2:17-CV-01605-KJM-EFB

1  agreeing to do so.  Accordingly, Defendant should produce the requested documents.

2  **b.    BeastUp's Response**

3  [BEASTUP TO INSERT]

4  **5.    RFP No. 9**

5  **REQUEST FOR PRODUCTION NO. 9:**

6  All documents and things relating to communications between You and any distributors,

7  retailers, and/or consumers that refer to or mention MEC, the Claw Icon, any of MEC's

8  BEAST-Inclusive Marks, or any of MEC's Products.

9  **RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

10  Defendant has identified no responsive, non-privileged documents in its possession, custody, or

11  control after a reasonable search.

12  **a.    Monster's Contentions and Points of Authority**

13  Defendant agreed on April 3, 2018 that it would confirm in writing that a search was

14  conducted for all communications with Foothill Distributing and state whether the requested

15  documents are being produced or that there are no responsive documents. (Zoretic Decl., Ex. 16

16  at 1.)  But Defendant has still failed to provide the requested information despite agreeing to do

17  so.   Accordingly, Monster requests that the Court order Defendant to produce all of its

18  communications with Foothill Distributing so that Monster can determine whether any of those

19  communications refer or mention Monster, its marks, or its products.

20  **b.    BeastUp's Response**

21  [BEASTUP TO INSERT]

22  **6.    RFP No. 10**

23  **REQUEST FOR PRODUCTION NO. 10:**

24  All documents and things relating to any decision to seek or not seek trademark protection for

25  the BEASTUP mark and/or Defendant's Claw Logos.

26  **RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

27  Defendant will produce all non-privileged documents responsive to this Request that are within

28  its possession, custody, or control and are located after a reasonable search.

Jt Statement re Discovery Dispute
Case No. 2:17-CV-01605-KJM-EFB

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Defendant hereby supplements its production to provide additional documents responsive to this Request that were located after a reasonable search. To the extent additional documents are later uncovered, Defendant will continue to supplement its production.

    a.  <u>Monster's Contentions and Points of Authority</u>

   Defendant agreed on April 3, 2018 that it would confirm in writing that a search was conducted for all communications with Tony Thompson (who Mr. Waelty had communications with regarding Mr. Thompson's use of the BeastUp mark (*see* Zoretic Decl., Ex. 12 at 30:18–31:15)) and state whether the requested documents are being produced or that there are no responsive documents. (*Id.*, Ex. 16 at 1.)  But Defendant has still failed to provide the requested information despite agreeing to do so.   Accordingly, Monster requests that the Court order Defendant to produce all of its communications with Tony Thompson.

    b.  <u>BeastUp's Response</u>

  [BEASTUP TO INSERT]

   **7.**  <u>RFP Nos. 13 and 14</u>

**REQUEST FOR PRODUCTION NO. 13:**

Documents sufficient to show, on a monthly basis, Your total net and gross sales (both in units and dollars) and total net and gross profits for the BeastUp Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Defendant will produce all non-privileged documents responsive to this Request that are within its possession, custody, or control and are located after a reasonable search.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Defendant hereby supplements its production to provide additional documents responsive to this Request that were located after a reasonable search. Defendant maintains voluminous additional documents exclusively in hard copy format. Such documents are overly burdensome for Defendant to scan or mail to Plaintiff. Defendant will make such documents available to Plaintiff for inspection and copying, at Plaintiff's expense, at Defendant's place of business, during regular business hours and upon reasonable advance notice.

**REQUEST FOR PRODUCTION NO. 14:**

Documents sufficient to show the prices charged for BeastUp Products, including, but not limited to, price lists for the products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Defendant will produce all non-privileged documents responsive to this Request that are within its possession, custody, or control and are located after a reasonable search.

### a.       Monster's Contentions and Points of Authority

Defendant's counsel stated on April 3, 2018 that she "believe[d]" that all sales invoices and documents reflecting the amount of Defendant's products that have been given away "may" have been included in the documents made available for inspection.  (Zoretic Decl., Ex. 16 at 2.)  Indeed, Defendant's counsel had not reviewed any of the documents made available for inspection, so she did not even have an understanding of what documents were being collected and produced.  Although some invoices were included in the documents made available for inspection, it is not clear whether all sales invoices have been produced.  (*Id*., ¶ 23.)  It is also not clear whether all documents reflecting the amount of products that have been given away have been produced.  (*Id*.)  Accordingly, Monster requests that the Court order Defendant to confirm whether all such documents have been produced, and if they have not produced, Monster requests that the Court order Defendant to produce them.

Defendant's counsel also stated on April 3, 2018 that she "believe[d]" that all documents filed with the Board of Equalization (which shows sales information) "may" have been included in the documents made available for inspection.  (*Id*., Ex. 16 at 2 (also responsive to RFP No. 26).)  But the only documents that appear to have been filed with the Board of Equalization that were included in the documents made available for inspection were for 2017.  (*Id*., ¶ 23.)  Defendant has still failed to produce all other documents filed with the Board of Equalization for 2017 as well as any such documents for 2014–2016, so Monster requests that the Court order Defendant to produce them.

Defendant's counsel further stated on April 3, 2018 that she "believe[d]" that the form Defendant uses to track product provided to stores and all sales documents from Foothill

Jt Statement re Discovery Dispute
Case No. 2:17-CV-01605-KJM-EFB

1  Distributing "may" have been included in the documents made available for inspection.  (*Id.*,

2  Ex. 16 at 2.)   But the documents were not included in the documents made available for

3  inspection (*id.* ¶ 23), and Monster requests that the Court order Defendant to produce them.

4           **b.**    **BeastUp's Response**

5      [BEASTUP TO INSERT]

6       **8.**    **RFP No. 23**

7  **REQUEST FOR PRODUCTION NO. 23:**

8  All documents and things relating to the advertisement, promotion, or marketing of the

9  BEASTUP mark, Defendant's Claw Logos, or the BeastUp Products.

10  **RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

11  Defendant will produce all non-privileged documents responsive to this Request that are within

12  its possession, custody, or control and are located after a reasonable search.

13  **SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

14  Defendant hereby supplements its production to provide additional documents responsive to this

15  Request that were located after a reasonable search. To the extent additional documents are later

16  uncovered, Defendant will continue to supplement its production.

17           **a.**    **Monster's Contentions and Points of Authority**

18      Defendant's counsel stated on April 3, 2018 that she "believe[d]" that the list of athletes

19  Defendant has sponsored "may" have been included in the box of documents made available for

20  inspection.  (Zoretic Decl., Ex. 16 at 2.)  But the document was not included in the documents

21  made available for inspection (*id.*, ¶ 23), and Monster requests that the Court order Defendant to

22  produce it.

23           **b.**    **BeastUp's Response**

24      [BEASTUP TO INSERT]

25       **9.**    **RFP No. 26**

26  **REQUEST FOR PRODUCTION NO. 26:**

27  All documents relating to Your costs and expenditures in connection with promoting and

28  advertising the BEASTUP mark, Defendant's Claw Logos, and the BeastUp Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

Defendant will produce all non-privileged documents responsive to this Request that are within its possession, custody, or control and are located after a reasonable search.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

Defendant hereby supplements its production to provide additional documents responsive to this Request that were located after a reasonable search. Defendant maintains voluminous additional documents exclusively in hard copy format. Such documents are overly burdensome for Defendant to scan or mail to Plaintiff. Defendant will make such documents available to Plaintiff for inspection and copying, at Plaintiff's expense, at Defendant's place of business, during regular business hours and upon reasonable advance notice.

           **a.**      **Monster's Contentions and Points of Authority**

        Defendant's counsel stated on April 3, 2018 that she "believe[d]" that the sheet showing the investments made into Defendant's business "may" have been included in the box of documents made available for inspection.  (Zoretic Decl., Ex. 16 at 2.)  But the document was not included in the documents made available for inspection (*id.*, ¶ 23), and Monster requests that the Court order Defendant to produce it.

           **b.**      **BeastUp's Response**

    [BEASTUP TO INSERT]

     **10.**    **RFP No. 34**

**REQUEST FOR PRODUCTION NO. 34:**

All documents and things relating to the channels of distribution or the intended channels of distribution for the BeastUp Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

Defendant will produce all non-privileged documents responsive to this Request that are within its possession, custody, or control and are located after a reasonable search.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

Defendant hereby supplements its production to provide additional documents responsive to this Request that were located after a reasonable search. To the extent additional documents are later

Jt Statement re Discovery Dispute
Case No. 2:17-CV-01605-KJM-EFB

1   uncovered, Defendant will continue to supplement its production.

2           **a.**    **Monster's Contentions and Points of Authority**

3         Defendant's counsel stated on April 3, 2018 that she "believe[d]" that the final, executed

4   version of Deposition Exhibit 12 (BEASTUP PROD 0010–21) "may" have been included in the

5   box of documents made available for inspection.  (Zoretic Decl., Ex. 16 at 2.)  But the document

6   was not included in the documents made available for inspection (*id.*, ¶ 23), and Monster

7   requests that the Court order Defendant to produce it.

8           **b.**    **BeastUp's Response**

9       [BEASTUP TO INSERT]

10       **11.**   **RFP No. 38**

11   **REQUEST FOR PRODUCTION NO. 38:**

12   All documents relating to any communications between You and any third-parties relating to

13   this lawsuit.

14   **RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

15   Defendant objects to the extent that this Request asks for documents not relevant to Plaintiff's

16   claims. Without waiving this objection, Defendant will produce all non-privileged documents

17   responsive to this Request that are within its possession, custody, or control and are located

18   after a reasonable search.

19   **SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

20   Defendant objects to the extent that this Request is duplicative of prior requests. Nonetheless,

21   Defendant hereby supplements its production to provide additional documents responsive to this

22   Request that were located after a reasonable search. To the extent additional documents are later

23   uncovered, Defendant will continue to supplement its production.

24           **a.**    **Monster's Contentions and Points of Authority**

25         Defendant agreed to investigate whether there were communications that occurred

26   before Aug. 7, 2017 between Mr. Waelty and Mr. Norberg, who is the owner of a company

27   involved in a separate trademark opposition proceeding with Monster and who discussed the

28   present lawsuit with Mr. Waelty.  (Zoretic Decl., Ex. 16 at 2–3.)  Defendant has neither

1  confirmed whether such documents exist nor has it produced any such documents. (*Id.*, ¶ 23.)

2  Accordingly, Monster requests that the Court order Defendant to produce any such documents.

3  Defendant also agreed on April 3, 2018 that it would confirm in writing that a search

4  was conducted for all communications with Tim Crew (who provided business advice to

5  Defendant and discussed the present lawsuit with Defendant (*see Id.*, Ex. 12 at 41:18–44:9))

6  and state whether the requested documents are being produced or that there are no responsive

7  documents. (*Id.*, Ex. 16 at 1.)   But Defendant has still failed to provide the requested

8  information despite agreeing to do so.   (*Id.*, ¶ 23.)   Accordingly, Monster requests that the

9  Court order Defendant to produce all of its communications with Tim Crew.

10  Moreover, as discussed above in connection with Request for Production No. 47,

11  Defendant's production does not contain any communications between Robert Waelty, Jessee

12  Waelty, John Waelty, Colter Hedden, and/or Tony Thompson.   (*Id.*, Ex.16 at 3; ¶ 23.)

13  Defendant should produce any such communications responsive to this request.

14  **b.    BeastUp's Response**

15  [BEASTUP TO INSERT]

16

17

18  Respectfully submitted,

19  KNOBBE, MARTENS, OLSON & BEAR, LLP

20

21  Dated:   April 23, 2018                    By: /s/

22  Steven J. Nataupsky

     Lynda J. Zadra-Symes

23  Matthew S. Bellinger

     Marko R. Zoretic

24

25  Attorneys for Plaintiff

     MONSTER ENERGY COMPANY

26

27

28  BRICOLAGE LAW, LLC

- 29 -

1

2  Dated:    April 23, 2018                By: _/s/_____

3                                               Eve J. Brown

4                                          Attorney for Defendant,
                                           BEASTUP, LLC

5

6
   28056426
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Jt Statement re Discovery Dispute
                                           Case No. 2:17-CV-01605-KJM-EFB