# EXHIBIT J

**From:** Eve J. Brown [mailto:ejbrown@bricolagelaw.com]
**Sent:** Wednesday, May 09, 2018 4:08 PM
**To:** Marko.Zoretic
**Subject:** Further insertions

Marko,

It is 7pm here and I need to leave the office. I have inserted additional statements into this draft, and will continue working on it in the morning.


Eve J. Brown
**Bricolage Law, LLC**
Tel.  (617) 671-5044
Email:  ejbrown@bricolagelaw.com
Web: bricolagelaw.com

Steven J. Nataupsky (CA SBN 155913)
steven.nataupsky@knobbe.com
Lynda J. Zadra-Symes (CA SBN 156511)
lynda.zadrasymes@knobbe.com
Matthew Bellinger (CA SBN 222228)
matt.bellinger@knobbe.com
Marko R. Zoretic (CA SBN 233952)
marko.zoretic@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Plaintiff
MONSTER ENERGY COMPANY

Eve J. Brown (CA SBN 247051)
ejbrown@bricolagelaw.com
BRICOLAGE LAW, LLC
1080 Beacon Street, Suite 4D
Brookline, MA  02446
(508) 734-3404

Attorney for Defendant,
BEASTUP, LLC

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MONSTER ENERGY COMPANY, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>BEASTUP LLC, a California limited liability company,<br><br>Defendant. | Case No. 2:17-CV-01605-KJM-EFB<br><br>**JOINT STATEMENT REGARDING DISCOVERY DISAGREEMENT**<br><br>Date: May 16, 2018<br>Time: 10:00 a.m.<br>Location: Ctrm 8, 13th Floor<br>Magistrate Edmund F. Brennan |

Pursuant to Local Rule 251, Plaintiff Monster Energy Company ("Plaintiff" or "Monster") and Defendant BeastUp, LLC ("Defendant" or "BeastUp"), through their respective counsel of record, submit this Joint Statement re Discovery Disagreement.  Exhibits 1–19 referenced herein are attached to the Declaration of Marko R. Zoretic ("Zoretic Decl.") filed concurrently herewith.

## I.  INTRODUCTORY STATEMENTS

### A.  Monster's Introduction

Monster is a nationwide leader in the business of developing, marketing, selling, and distributing ready-to-drink beverages, including energy drinks.  In 2002, Monster launched its MONSTER ENERGY® drink brand, bearing its now-famous 𝗠 ® mark ("Claw Icon Mark") and UNLEASH THE BEAST!® mark.  Images of Monster's original MONSTER ENERGY® drink, which Monster has sold continuously since 2002, are shown below.



In addition to the UNLEASH THE BEAST!® mark, Monster has used other marks containing the term BEAST (BEAST-inclusive marks) in connection with its MONSTER™ line of beverages, such as UNLEASH THE NITRO BEAST!®, REHAB THE BEAST!®, UNLEASH THE ULTRA BEAST!®, and PUMP UP THE BEAST!®, among others.

1   Monster filed its Complaint on August 2, 2017, alleging that BeastUp is infringing

2   Monster's trademarks in connection with Defendant's BeastUp energy drink product and related

3   goods.   Doc. 1.   For example, Defendant has sold energy drinks bearing claw logos and

4   BEASTUP mark that are confusingly similar to Monster's Claw Icon Mark and UNLEASH THE

5   BEAST!® mark and other BEAST-inclusive marks.   Some exemplary images of Defendant's

6   BeastUp energy drink and promotional materials for the product are shown below.

7

8

9

10

11   

12

13

14

15

16

17   

18

19

20

21

22

23

24

25   Defendant has demonstrated a haphazard and cavalier attitude towards its discovery

26   obligations.   Monster has met and conferred with Defendant at length, over several months, and

27   still Defendant has not adequately supplemented its interrogatory responses and document

28   production despite repeated promises to do so.   Monster appreciates that Defendant's sole

- 2 -

1  employee, Mr. Waelty, has been faced with various personal matters—to which Monster has

2  been accommodating—but the June 1, 2018 fact discovery cutoff is fast approaching.  Defendant

3  has had more than sufficient time to comply with its discovery obligations.  Monster can no

4  longer wait and rely on promises that it will receive the discovery to which it is entitled.

5  On December 1, 2017, Monster served its First Set of Interrogatories, First Set of

6  Requests for Production, and First Set of Requests for Admission.  (Zoretic Decl., Exs. 1, 2; ¶ 4.)

7  Defendant, however, failed to provide timely responses.  Monster followed up multiple times

8  with Defendant about its failure to respond, and it was not until January 9, 2018, that Defendant

9  provided its belated responses and objections.  (*Id*., Ex. 3 at 2–5; Exs. 4 and 5.)  It was not until

10  January 11, after even more follow-up requests, that Defendant finally produced any documents.

11  (*Id*., Ex. 3 at 1–2.)  Defendant's interrogatory responses and document production were severely

12  deficient.  Accordingly, on January 19, 2018, Monster sent Defendant a letter detailing the

13  deficiencies and requesting a meet and confer.  (*Id*., Ex. 6.)

14  Defendant also failed to timely serve its responses to Monster's Second Set of Requests

15  for Production and Second Set of Interrogatories, which were served on December 20, 2017 and

16  responses thereto were due on January 22, 2018.  (*Id*., Exs. 7–10.)   On January 23, 2018,

17  Monster contacted Defendant regarding Defendant's failure to timely serve its responses.  (*Id*.,

18  Ex. 11 at 3.)  Defendant untenably responded that it would <u>not</u> provide its responses to Monster's

19  second set of discovery requests until it "understand[s] [Monster's] objections" to Defendant's

20  untimely served responses to Monster's first set of discovery requests. (*Id*., Ex. 11 at 1–2.)

21  Defendant's failure to provide timely and full responses prejudiced Monster's ability to

22  conduct the Rule 30(b)(6) deposition of Defendant on January 25, 2018.  (*Id*., Ex. 11 at 1.)

23  Indeed, Defendant's Rule 30(b)(6) designee, Mr. Waelty, testified about numerous documents

24  that had not yet been produced, including unproduced documents that he reviewed in preparation

25  for and during the course of the deposition.  (*Id*., Ex. 12 at, e.g., 9:16–10:9, 13:19–14:12, 30:18–

26  31:15, 41:18–44:9, 58:10–59:7, 112:7–113:8, 117:12–119:3, 170:20–171:1, 204–207; Ex. 13 at

27  2–3.)

28  On January 29, 2018 the parties met and conferred regarding the deficiencies in

1  Defendant's responses to Monster's first set of discovery requests, detailed in Monster's January

2  19, 2018 letter. (*Id.*, Exs. 6 & 13.) The parties also conferred regarding Defendant's refusal to

3  respond to Monster's second set of discovery requests. (*Id.*, Ex. 13.) Defendant thereafter

4  belatedly served its responses to Monster's Second Set of Requests for Production and also

5  served its supplemental responses to Monster's First Set of Requests for Production on February

6  2, 2018. (*Id.*, Ex. 10.) Defendant also belatedly revealed that it had documents it was refusing to

7  copy and produce but instead was making available for inspection and copying at Monster's

8  expense at Defendant's principal place of business in Red Bluff, California. (*Id.*, Ex. 14 at 1.)

9  The week before, on January 25, 2018, Monster's counsel had already travelled to Red Bluff for

10  the Rule 30(b)(6) deposition of Defendant. Monster's counsel could have reviewed the

11  documents during that trip in advance of the deposition had Defendant informed Monster about

12  the documents earlier.

13      On February 5, 2018, Defendant finally served its untimely responses to Monster's

14  Second Set of Interrogatories and also served its supplemental responses to Monster's First Set of

15  Interrogatories. (*Id.*, Ex. 9) Defendant's responses and document production remained deficient

16  and Monster sent Defendant another letter requesting a meet and confer regarding those

17  deficiencies. (*Id.*, Ex. 13.)

18      The parties met and conferred again regarding Defendant's deficient interrogatory

19  responses and document production on March 20, 2018. (*Id.*, ¶ 17.) Defendant represented that

20  many of the requested documents had already been produced in a particular document range, so

21  Monster agreed to continue the meet and confer later that week after reviewing the identified

22  document production range. (*Id.*, Ex. 15 at 3–4.) On March 22, 2018, counsel for Monster

23  followed up with Defendant to continue the meet and confer and informed Defendant that its

24  representation was not correct. (*Id.*, Ex. 15 at 3–4.) Defendant, however, refused to provide

25  availability for a conference of counsel, and instead unnecessarily requested a revised meet and

26  confer letter and an updated outline of Monster's discovery concerns. (*Id.*, Ex. 15 at 1–2.) The

27  parties ultimately met and conferred again on April 3, 2018 as summarized in Monster's April 4,

28  2018 letter. (*Id.*, Ex. 16.) Defendant agreed that it would provide supplemental interrogatory

Jt Statement re Discovery Dispute
Case No. 2:17-CV-01605-KJM-EFB

1  responses by April 11, but did not commit to a date for providing its supplemental document

2  production.  (*Id*., Ex. 16 at 4.)

3       On April 11, however, Defendant did not produce any supplemental discovery responses

4  or any additional documents.  Instead, Defendant stated that "I am still waiting on a few

5  responses from my client for the supplemental discovery we discussed.  I hope to be able to get

6  you my formal response tomorrow."  (*Id*., Ex. 18.)  Then, on April 16, Defendant requested an

7  extension in view of personal issues to which Mr. Waelty was attending and stated that "I don't

8  expect that I will have any additional documents or information for you until at least next week,

9  and I appreciate that if we go too long, your time may be limited as well."  (*Id*., Ex. 19.)

10  Defendant, however, has had more than sufficient time to provide complete discovery responses.

11  Despite Defendant's repeated assurances that it will provide the requested discovery, Defendant

12  still has not provided any further supplemental discovery responses or produced any additional

13  documents.  Nor had Defendant committed to a date certain by which it will provide the

14  discovery responses and additional documents.

15       It is apparent that Defendant will not comply with its discovery obligations unless

16  ordered to do so by this Court.  Because fact discovery closes on June 1, 2018, Monster moves

17  for an Order compelling Defendant to (1) fully respond to Interrogatory Nos. 1–3, 7, 8, and 13–

18  15; (2) produce requested documents from its various email accounts; (3) produce missing email

19  attachments and associate any produced attachments with its corresponding email; and (4)

20  provide the documents requested in Request for Production Nos. 1, 9, 10, 13, 14, 23, 26, 34, 38,

21  and 47.

22  **B.**   **BeastUp's Introduction**

23       Defendant has no objection to providing every piece of information germane to this

24  lawsuit to Plaintiff. As stated in Defendant's counsel's January 24, 2018 email to Plaintiff's

25  counsel, attached as Exhibit 11:

26         **We want to provide you with all the information we have. We know we**

27         **are in the right, and genuinely hope that, the more facts you have, the**
       **more reasonable your client will be in dropping this meritless suit or**

28         **coming to a mutually agreeable resolution.**

Indeed, as of this date, Defendant has produced <u>over 2,000 documents</u> to Plaintiff, arranged for over 600 hard copy documents to be made available to Plaintiff's agents for inspection and copying, opened his entire office to Plaintiff for inspection, provided in-person deposition testimony for eight hours, and is cooperating with Plaintiff's notice of a second deposition scheduled for May 24, 2018.

Plaintiff's accusation that Defendant "has demonstrated a haphazard and cavalier attitude" towards this litigation could not be farther from the truth, and is not well taken. Defendant has gone to extreme measures and great personal expense to comply with Plaintiff's requests. When, in January, Plaintiff first made the accusation towards Defendant of a "cavalier" attitude, Defendant's counsel promptly and earnestly responded as follows:

> **I assure you that Defendant does not have a cavalier attitude towards this litigation, which is very seriously threatening to destroy his business, his home, and his retirement savings, all while his wife is going through chemotherapy.**

Email from Defendant's Counsel Eve Brown to Plaintiff's Counsel Marko Zoretic, dated January 24, 2018 and attached herein as Exhibit 11.

It is disingenuous to claim that Defendant has been uncooperative or dismissive with respect to any part of this litigation. Defendant is a single-member LLC, owned and operated by one individual, Robert Waelty. Mr. Waelty is a dedicated U.S. Army veteran, full-time Fire Chief for Cal Fire, husband, and father.

Mr. Waelty manages BeastUp, LLC on a part-time basis out of his personal home. Unlike Plaintiff, which is a billion-dollar corporation with a cadre of attorneys and unlimited resources, Mr. Waelty has no employees, assistants, or record-retention tools. To the extent Plaintiff complains that documents have been produced slowly, that is due solely to the genuinely long time it has taken

Defendant to sift through decades-old personal files that, in most cases, were not kept in the ordinary course of business or within the proper scope of discovery, but were nonetheless searched for and provided to Plaintiff in the spirit of transparency and cooperation.

Defendant's good faith efforts have been met with nothing but intimidation and harassment tactics by Plaintiff. For every question answered and every document produced, Plaintiff demands two more, often before reviewing what Defendant already provided.

Plaintiff's objections to Defendant's responses have been unending and indiscriminate, clearly designed to harass and delay rather than gather relevant facts. In reply to Plaintiff's various objections, Defendant has patiently and courteously attempted to discuss the issues, only to be further rebuked by one of numerous pugnacious attorneys on Plaintiff's legal team. See, e.g., the following additional excerpt from Defendant's counsel's January 24, 2018 email to Plaintiff's counsel:

> **No one is hiding anything from you. We simply want to make that the time we spend is productive and not wasted by engaging in avoidable spats among counsel.**
>
> **If we are not aligned in our basic understandings of the marks and definitions at issue, then our exchange of information will be unnecessarily messy and prolonged. You will not be satisfied with the responses you receive, and my client will be frustrated by truthfully and comprehensively responding to your inquiries, only to be told his answers are insufficient. We are talking past each other, which benefits no one.**

Exhibit 11.

Defendant has provided reams of records, documentation, and testimony. Mr. Waelty continues to supplement his production as he uncovers additional responsive documents,

1  pursuant to the Federal Rules, and to address Plaintiff's complaints, even when those complaints

2  lack foundation. Plaintiff continues to ask for documents already produced, documents never

3  requested, and documents that have no bearing on, and are outside the scope of, this case.

4  　　　　Plaintiff's allegation that "It is apparent that Defendant will not comply with its discovery

5  obligations unless ordered to do so by this Court" is, similarly to its other allegations,

6  disingenuous. On numerous occasions, Defendant has expressed his willingness and desire to

7  work with Plaintiff to satisfy Plaintiff's requests and concerns. See, e.g., email from Defendant's

8  counsel Eve Brown to Plaintiff's counsel Marko Zoretic dated Monday, January 29, 2018:

9

10  **I would like to work with you to get everything you need, but it would help the process if I could have your cooperation and patience as my client and I sort through years of paper files. As you know, BeastUp is a one man, part time operation. I understand that you want to fight and argue, but that is not productive. I assure you in good faith that my client and I are both doing out utmost to comply with your requests, and are not hiding anything intentionally. He will continue to search, and I will continue to supplement production as additional documents are shared with me.**

11

12

13

14

15

16  **Under the Rules, you are of course also welcome to inspect BeastUp's documents as they are kept in the usual course of business in Red Bluff, if you do not feel like my client's responses are comprehensive or fast enough for you. Again, we want to work with you here, and I have no desire to waste our or the court's time spatting with you any more than necessary.**

17

18

19

20  **If you list for me what you feel you are missing, I will coordinate with my client to get you whatever I can that is responsive.**

21

22  **If you would still like to speak over the phone, you can reach me on my cell today at 617 xxx-xxxx.**

23

24  **Sincerely,**
   **Eve**

25  In the limited circumstances when Defendant has been delayed, counsel has been in

26  timely communication with Plaintiff's counsel, disclosed all reasons for the delay, and offered

27

28

　　　　　　　　　　　　　　　　- 8 -　　　　　　Jt Statement re Discovery Dispute
　　　　　　　　　　　　　　　　　　　　　　　　Case No. 2:17-CV-01605-KJM-EFB

reciprocal courtesies in exchange for brief extensions. See, e.g., email from Eve Brown to Marko

Zoretic, dated April 16, 2018:

> **I apologize for the delay on the BeastUp supplemental answers. My client is going through a difficult time with his wife's cancer treatments, and it has been a struggle to go back and spend time on the email searches. Would you be amenable to an extension? I don't expect that I will have any additional documents or information for you until at least next week, and I appreciate that if we go too long, your time may be limited as well.**

Instead of replying, Plaintiff filed the instant motion to compel.

Defendant's counsel immediately contacted Plaintiff's counsel upon being served with

the instant Motion, stating the following:

> **Marko,**
>
> **I am taken aback and a little speechless at your motion. I specifically asked for a week to allow my client time to be with his wife during cancer treatments. Instead of responding, you motioned the court with a comprehensive brief that must have taken an impressive number of billable hours, but that was entirely unnecessary.**
>
> **I repeat that we are not hiding anything, and that I continue to work with my client to address your questions. We have been nothing but cooperative and courteous with you. I wish we could ask for the same in return.**
>
> **I just spoke to Mr. Waelty to tell him about your motion. He is out of town until Saturday. He reiterated to me - again – that he has given you what he has, but said that he will triple check for the specific items you listed.**
>
> **I have continually promised in good faith to look for everything you request, and have kept you abreast of any and all delays and their legitimate causes. If there are more documents, you will have them.**

Email from Eve Brown to Marko Zoretic, dated April 24, 2018, and attached as Exhibit __.

In short, Defendant has bent over backwards to appease Plaintiff's often

unreasonable, overly burdensome, or already satisfied requests. To the extent that

Defendant locates additional documents, he has and will continue to provide

them. Defendant has not, and will not, withhold any information in this case, as he

firmly believes that all facts are on his side.

## II.  CONTENTIONS AND POINTS AND AUTHORITIES

## A.    INTERROGATORIES

### 1.    Interrogatory No. 1

**INTERROGATORY NO. 1**

Identify and describe each of the BeastUp Products.

**RESPONSE TO INTERROGATORY NO. 1**

Defendant sells the following products under the BeastUp marks: (1) clothing items, including sweatshirts, t-shirts, tank tops, workout shirts (long and short-sleeved), hats, lanyards, wristbands, beanies, coffee cups and stickers/decals; and (2) performance beverages in 12 oz. aluminum cans, formulated to increase mental clarity, memory, and focus.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1:**

Defendant sells the following products under the BeastUp marks: (1) clothing items, including sweatshirts, t-shirts, tank tops, workout shirts (long and short-sleeved), hats, lanyards, wristbands, beanies, coffee cups and stickers/decals; and (2) two performance beverage formulations, one designed to increase mental clarity and focus that is currently sold in 12 oz. aluminum can, and one designed for refueling after strenuous physical activity that is ready for production and will be sold in a 16 oz. plastic bottle. Images, ingredient lists, prices, SKU and UPC codes, and descriptions of each product have been produced to Plaintiff, to the extent Defendant has such information in its possession, custody, or control and was able to locate them after a reasonable search.

### a.    Monster's Contentions and Points of Authority

Defendant agreed on January 29, 2018 that it would supplement its response to identify the SKU numbers for the products sold by Defendant to the extent such SKU numbers exist. (Zoretic Decl., Ex. 13 at 5.)  Information regarding Defendant's energy drink products is relevant to Monster's infringement claims.  While Monster has not accused Defendant's clothing displaying the BEASTUP mark of infringement, Defendant is attempting to rely upon its use of

1  the mark on clothing to support its priority and laches defenses.  *See infra* at Interrogatory Nos.

2  13 and 15.  While Monster disagrees that Defendant's alleged use of the BEASTUP mark on

3  clothing supports either of those defenses, Monster is entitled to discovery regarding Defendant's

4  alleged use on clothing in view of Defendant's reliance on that use.

5       Defendant agreed on March 20, 2018 that it would supplement its response to specifically

6  identify the documents it was relying on in response to the interrogatory.  (*Id.*, Ex. 15 at 2.)  On

7  April 3, 2018, Defendant reaffirmed that commitment and agreed to provide the requested

8  information by April 11.  (*Id.*, Ex. 16 at 3, 4.)  But Defendant has still failed to provide the

9  requested information despite agreeing to do so.  Accordingly, Monster requests that the Court

10  order Defendant to fully respond to the interrogatory to provide the requested information.

11       **b.    BeastUp's Response**

12       With respect to all of the discovery referred to in this statement, Defendant has repeatedly

13  informed Plaintiff that all responsive documents have either been produced, do not exist, or are

14  not kept in the ordinary course of business but are in the process of being located through a

15  manual search. This was reiterated as recently as May 4, 2018, in an email from Eve Brown to

16  Marko Zoretic, attached as Exhibit __. Defendant has no additional information or response to

17  provide.

18       **2.    Interrogatory No. 2**

19  **INTERROGATORY NO. 2:**

20  For each product identified in response to Interrogatory No. 1, identify the date the product was

21  first sold and its average wholesale and retail price.

22  **RESPONSE TO INTERROGATORY NO. 2:**

23  Defendant's first products were clothing items in April 2009. On average, clothing items are

24  purchased wholesale at between $8.00 and $20.00, and sold to the public at between $12.00 and

25  $30.00, depending on the specific item. Defendant launched its beverage in May 2014.

26  Defendant's cost to produce each beverage, not including overhead and R&D, is approximately

27  $.083/can. Defendant sells cans to distributors and retail stores for $1.05-$1.45 per can,

28  depending on the overall volume of cans purchased and whether the purchase is subject to a

promotion. Defendant believes that retail stores sell cans to the public for an average $2.50 each.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:**

Defendant's first products were clothing items in April 2009. On average, clothing items are purchased wholesale at between $8.00 and $20.00 and sold to the public at between $15.00 and $35.00, depending on factors such as whether a sale applied, where and when the item was sold, and the volume of items sold. Defendant launched its beverage in May 2014. Defendant's cost to produce each beverage, not including overhead and R&D, is approximately $.83/can. Defendant sells cans to distributors and retail stores for $1.05-$1.45 per can, depending on the overall volume of cans purchased and whether the purchase is subject to a promotion. Defendant believes that retail stores sell cans to the public for an average $2.50 each. Average retail prices for specific items are as follows:

- Tank tops: $15.00
- T-shirts: $20.00
- Workout Long Sleeve Shirts: $25
- Workout Short Sleeve Shirts: $22
- Hats: $20
- Beverage cans: $2.50

Price lists, cost estimates, and wholesale quotes have been produced to Plaintiff.

### a.   Monster's Contentions and Points of Authority

Defendant agreed on March 20, 2018 that it would supplement its response to specifically identify the documents it was relying on in response to the interrogatory. (Zoretic Decl., Ex. 15 at 2.) On April 3, 2018, Defendant reaffirmed that commitment and agreed to provide such information by April 11. (*Id.*, Ex. 16 at 3, 4.) But Defendant has still failed to provide the requested information despite agreeing to do so. Accordingly, Monster requests that the Court order Defendant to fully respond to the interrogatory to provide the requested information.

### b.   BeastUp's Response

The requested documents were produced as kept in the ordinary course of business and are already in Plaintiff's possession. Defendant does not organize or collate his records in a

manner that would allow him to provide the table-of-contents level of detail Plaintiff requests

without undue burden. Defendant believes that the burden of compiling such detail is greater than

any contribution or benefit it would lend to Plaintiff's understanding of the case. However, if the

Court feels that compelling the requested information is justified, Defendant will certainly

comply.

### 3.   <u>Interrogatory No. 3</u>

**INTERROGATORY NO. 3:**

Identify each person involved with the development, selection, or approval of the BEASTUP

mark and Defendant's Claw Logos, and for each person so identified, describe in detail, with

reference to any supporting documents, information, and materials, their role in such

development, selection, or approval.

**RESPONSE TO INTERROGATORY NO. 3:**

1.   Name: Robert Waelty

Role: Robert Waelty is the CEO of BeastUp LLC, and was the primary individual

responsible for the conception, development, selection, and approval of Defendant's

mark and all packaging and presentation thereof.

2.   Name: Jessee Waelty

Role: Jessee Waelty is Robert Waelty's son, and the Vice President of BeastUp LLC.

Jessee Waelty manages Defendant's marketing and events and creates artwork for

Defendant's clothing.

3.   Name: Power Brands Consulting, LLC

Role: Power Brands is an independent beverage consulting company that was hired by

Defendant in 2011 to support the development of BeastUp-branded beverages, pursuant

to a Product Development Agreement that is being produced to Plaintiff together with

these responses. Power Brands was solely involved in beverage-related branding;

Defendant's BeastUp mark and logos were already in use on clothing prior to

Defendant's expansion into beverages.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3:**

1.   Name: Robert Waelty

Role: Robert Waelty is the CEO of BeastUp LLC, and was the primary individual responsible for the conception, development, selection, and approval of Defendant's mark and all packaging and presentation thereof.

2.   Name: Jessee Waelty

Role: Jessee Waelty is Robert Waelty's son, and is a professional Motocross racer. Jessee Waelty was consulted and provided opinions and advice with respect to the creation and adoption of Defendant's mark and all packaging and presentation thereof.

3.   Name: Power Brands Consulting, LLC

Role: Power Brands is an independent beverage consulting company that was hired by Defendant in 2011 to support the development of BeastUp-branded beverages, pursuant to a Product Development Agreement that is being produced to Plaintiff together with these responses. Power Brands was solely involved in beverage-related branding; Defendant's BeastUp mark and logos were already in use on clothing prior to Defendant's expansion into beverages. The individuals at Power Brands who were involved in Defendant's beverage-related branding were: Kris Guiao (Creative Director); Ashlliegh Brookham (Executive Assistant/Project Manager); and Alina Guerrero (Senior Beverage Scientist).

a.   **Monster's Contentions and Points of Authority**

Defendant agreed on April 3, 2018 that it will supplement its response by April 11 to explain the roles of Power Brand Consulting employees Kris Guoaio, Ashiliegh Brookham, and Alina Guerrero in the development, selection, or approval of the BEASTUP mark.  (Zoretic Decl., Ex. 16 at 3, 4.)  But Defendant has still failed to provide the requested information despite agreeing to do so.   Accordingly, Monster requests that the Court order Defendant to fully respond to the interrogatory to provide the requested information.

b.   **BeastUp's Response**

The above information was expressly provided to Plaintiff via email on May 4, 2018. See Exhibit __.

**INTERROGATORY NO. 7:**

Describe any research (including, but not limited to, surveys, polls, market research, investigations, analyses, studies, or searches) regarding the BEASTUP mark or Defendant's Claw Logos, including, but not limited to, stating the person(s) who authorized the research, when the research was conducted, the person(s) who conducted the research, the reason the research was conducted, the results of the research, and identifying all documents relating to the research.

**RESPONSE TO INTERROGATORY NO. 7:**

Robert Waelty performed a search of the USPTO's TESS database in or around September 2008 for the mark BEASTUP. He identified one potential competitor, "The Beast," which was a brand from Austria. Plaintiff did not appear in Defendant's search results, nor did Plaintiff appear in the USPTO's search results. All general marketing research and surveys are being produced to Plaintiff contemporaneously with these responses.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 7:**

Robert Waelty performed an amateur search of the USPTO's public TESS database in or around September 2008 for the mark BEASTUP. He does not recall specific search terms and does not have documents relating to that search in his possession. He recalls identifying a single potential competitor, "The Beast," which was a brand from Austria. Defendant later retained LegalZoom to perform an additional search for marks including the word BEAST in connection with apparel in Class 25. LegalZoom's search results have been produced to Plaintiff. All other responsive documents located after a reasonable search have been produced to Plaintiff.

> a.  **Monster's Contentions and Points of Authority**

Defendant agreed on March 20, 2018 that it would supplement its response to specifically identify the documents it was relying on in response to the interrogatory. (Zoretic Decl., Ex. 15 at 2.)  On April 3, 2018, Defendant reaffirmed that commitment and agreed to provide such information by April 11. (*Id.*, Ex. 16 at 3, 4.)  But Defendant has still failed to provide the requested information despite agreeing to do so.  Accordingly, Monster requests that the Court order Defendant to fully respond to the interrogatory to provide the requested information.

**b.**   **BeastUp's Response**

The requested documents were produced as kept in the ordinary course of business and are already in Plaintiff's possession. If the Court feels that compelling Defendant to locate the specific Bates number for Plaintiff is warranted, Defendant will certainly comply.

### 4.   Interrogatory No. 8

**INTERROGATORY NO. 8:**

State Your net and gross sales (in units and dollars) and net and gross profits, on a monthly basis, for each of the BeastUp Products since the date of first sale of each product.

**RESPONSE TO INTERROGATORY NO. 8:**

Defendant is producing its profit and loss tax statements to Plaintiff with these responses.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 8:**

Defendant objects to this Interrogatory to the extent that it is unduly burdensome, and that such information is not kept in Defendant's ordinary course of business. Defendant has produced available financial and sales documents to Plaintiff. Additional documents are kept in hard copy form and will be made available to Plaintiff for inspection and copying at Defendant's principal place of business, at Plaintiff's expense.

**a.**   **Monster's Contentions and Points of Authority**

Defendant's supplemental response recites an unduly burdensome objection.  But that objection was not raised in Defendant's original response, which was also untimely.  Accordingly, Defendant's unduly burdensome objection has long been waived.  Even assuming that such an objection has not been waived, the interrogatory is not unduly burdensome because it is narrowly tailored to seek basic sales and profit information for Defendant's BeastUp Products. Indeed, the information sought by the interrogatory is basic record keeping information that a business is expected to maintain for, at least, tax reasons.

Defendant agreed on January 29, 2018 that it would supplement its response to identify Defendant's net and gross sales and net and gross profits for each of the BeastUp Products since the date of first sale of each product.  (Zoretic Decl., Ex. 13 at 6.)  Defendant further agreed on March 20, 2018 that it would supplement its response to specifically identify the documents it

1  was relying on in response to the interrogatory.  (*Id*., Ex. 15 at 2.)  On April 3, 2018, Defendant
2  reaffirmed that commitment and agreed to provide such information by April 11.  (*Id*., Ex. 16 at
3  3, 4.)  But Defendant has still failed to provide the requested information despite agreeing to do
4  so.   Accordingly, Monster requests that the Court order Defendant to fully respond to the
5  interrogatory to provide the requested information.

### b.  BeastUp's Response

7  Defendant made all hard copy documents in Defendant's possession, as well as
8  Defendant's entire office, available to Plaintiff for inspection and copying. Plaintiff's agents
9  inspected and copied over 600 documents from Defendant's office on April 3, 2018. See email
10  from Eve Brown to Marko Zoretic referencing the date and time for pickup of the documents,
11  dated April 2, 2018 and attached as Exhibit __.

## 5.  Interrogatory No. 9

13  **INTERROGATORY NO. 9:**
14  Describe the trade channels, including identifying by name all retail stores and other outlets,
15  through which the BeastUp Products have been sold, are currently being sold, or will be sold.

16  **RESPONSE TO INTERROGATORY NO. 9:**
17  Defendant has sold products online through its website, www.beastup.com, as well as through
18  various retail stores throughout Siskiyou, Shasta, Tehama, Plumas, Trinity, and Butte counties in
19  Northern California. For a full list of retail stores that have sold or distributed Defendant's
20  products, see documents titled "BeastUp Buying Report," produced to Plaintiff with these
21  responses.

### a.  Monster's Contentions and Points of Authority

23  Defendant's response is deficient because it fails to identify by name the retail stores and
24  other outlets through which the BeastUp products have been sold.  While the response refers to a
25  list of store names allegedly referenced in a "BeastUp Buying Report," the response fails to
26  identify the "BeastUp Buying Report" (such as by production number) and Monster is not able to
27  determine what buying report is being referenced. Further, Defendant agreed on January 29,
28  2018 that it would supplement its response to identify when the BeastUp Products were sold on

Defendant's website.  (Zoretic Decl., Ex. 13 at 6.)  Defendant further stated on April 3, 2018 that it was still in the process of determining when BeastUp Products were sold on Defendant's website and reaffirmed that it would supplement its response by April 11.  (*Id.*, Ex. 16 at 4.)  But Defendant has still failed to provide the requested information despite agreeing to do so.  Accordingly, Monster requests that the Court order Defendant to fully respond to the interrogatory to provide the requested information.

### b.    **BeastUp's Response**

The above information was expressly provided to Plaintiff via email on May 4, 2018. See Exhibit __.

## 6.    Interrogatory No. 13

**INTERROGATORY NO. 13:**

Describe in detail, with reference to any supporting documents, information, and materials, the complete factual and legal basis for Your affirmative defense of "Laches, Waiver and/or Acquiescence."

**RESPONSE TO INTERROGATORY NO. 13:**

Defendant objects to this Interrogatory to the extent it asks for a legal conclusion. Notwithstanding this objection, Defendant has been openly using its BEASTUP mark in commerce since 2009 without objection or comment from Plaintiff.

### a.    **Monster's Contentions and Points of Authority**

Defendant's response recites a legal conclusion objection.  But Defendant's objections were untimely, so the objection has been waived.  Even assuming that such an objection has not been waived, the interrogatory does not merely seek legal conclusions, but rather seeks the factual and legal basis for Defendant's affirmative defense.

Defendant agreed on April 3, 2018 that it will supplement the response to identify all facts supporting its affirmative defense of "laches, waiver, and/or acquiescence" by April 11, 2018. (*Id.*, Ex. 16 at 4.)  But Defendant has still failed to provide the requested information despite agreeing to do so.  Accordingly, Monster requests that the Court order Defendant to fully respond to the interrogatory to provide the requested information or confirm that there is no basis

1  for its defense other than what is provided in the current response.

2                    **b.**        **BeastUp's Response**

3          As stated to Plaintiff, discovery in this case is still ongoing, and Defendant has not yet

4  gathered information supporting all of its claims and defenses. To the extent Defendant has

5  information, it has provided the same to Plaintiff.

6                **7.**     **Interrogatory No. 14**

7  **INTERROGATORY NO. 14:**

8  Describe in detail, with reference to any supporting documents, information, and materials, the

9  complete factual and legal basis for Your affirmative defense of "Unclean Hands."

10  **RESPONSE TO INTERROGATORY NO. 14:**

11  Defendant objects to this Interrogatory to the extent it asks for a legal conclusion.

12  Notwithstanding this objection, upon information and belief, Plaintiff is publicly known as a

13  "trademark bully," notorious for misusing the courts to vexatiously harass and intimidate other

14  businesses beyond what the law reasonably allows. Numerous third-party articles, scholarly

15  journals, websites, and news stories have documented Plaintiff's bad faith pattern of behavior.

16  Such documents are not in Defendant's possession, custody, or control, but are equally available

17  to Plaintiff through a public Internet search.

18               **a.**       **Monster's Contentions and Points of Authority**

19          Defendant's response recites a legal conclusion objection.  But Defendant's objections

20  were untimely, so the objection has been waived.  Even assuming that such an objection has not

21  been waived, the interrogatory does not merely seek legal conclusions, but rather seeks the

22  factual and legal basis for Defendant's affirmative defense.

23          Defendant agreed on April 3, 2018 that it will supplement its response by April 11, 2018

24  to identify (1) all facts to support Defendant's affirmative defense of unclean hands and (2) all

25  third-party articles, scholarly journals, websites, and news stories that Defendant intends to rely

26  upon in this case.  (*Id.*, Ex. 16 at 4.)  But Defendant has still failed to provide the requested

27  information despite agreeing to do so.  Accordingly, Monster requests that the Court order

28  Defendant to fully respond to the interrogatory to provide the requested information or confirm

1  that there is no basis for its defense other than what is provided in the current response.

2  **b.    BeastUp's Response**

3  The information requested did not originate from Defendant and is not in Defendant's

4  possession, custody, or control. Defendant's counsel intends to search for relevant documents in

5  preparation for trial, and will share any documents upon which Defendant intends to rely, with

6  Plaintiff pursuant to the Federal Rules.

7  **8.    Interrogatory No. 15**

8  **INTERROGATORY NO. 15:**

9  Describe in detail, with reference to any supporting documents, information, and materials, the

10  complete factual and legal basis for Your affirmative defense of "Priority."

11  **RESPONSE TO INTERROGATORY NO. 15:**

12  Defendant has been using its mark in commerce since April 2009. The following marks cited by

13  Plaintiff in its Complaint appear to have originated after April 2009, thereby giving Defendant,

14  and not Plaintiff, seniority with respect to those marks.

| Registration No. |
| --- |
| 3,908,600 |
| 3,908,601 |
| 3,914,828 |
| 3,923,683 |
| 3,963,668 |
| 3,963,669 |
| 4,011,301 |
| 4,051,650 |
| 4,332,062 |

26  **a.    Monster's Contentions and Points of Authority**

27  Defendant agreed on April 3, 2018 that it will supplement its response by April 11, 2018

28  to identify any further factual or legal basis for its affirmative defense of priority.  (*Id*., Ex. 16 at

Jt Statement re Discovery Dispute
Case No. 2:17-CV-01605-KJM-EFB

4.)  But Defendant has still failed to provide the requested information despite agreeing to do so.  Accordingly, Monster requests that the Court order Defendant to fully respond to the interrogatory to provide the requested information or confirm that there is no basis for its defense other than what is provided in the current response.

    **b.**  **BeastUp's Response**

  Defendant believes that it has provided the factual information requested by listing each mark by specific serial and/or registration number.

**B.**  **REQUESTS FOR PRODUCTION**

    **1.**  **Emails from Defendant's Various Email Accounts**

    **a.**  **Monster's Contentions and Points of Authority**

  Defendant's Rule 30(b)(6) designee, Mr. Waelty, testified that he regularly conducted business communications using various email accounts including beastupenergy@gmail.com (the contact email address on www.beastup.com), info@beastup.com, and beastupgear@gmail.com. (Zoretic Decl., Ex. 13 at 2.)  But Defendant has not produced any emails from any of its email accounts other than from sniperwaelty@yahoo.com.  (*Id*., ¶ 23.)  On April 3, 2018, Defendant agreed to investigate if the emails from its other accounts are automatically forwarded to sniperwaelty@yahoo.com, and if they are not automatically forwarded to that account, to conduct the required search of each of these and any other of Defendant's email accounts for documents responsive to each of MEC's Requests for Production.  (*Id*., Ex. 16 at 1–2.)  But Defendant has still failed to provide the requested information despite agreeing to do so.  Accordingly, Monster requests that the Court order Defendant to produce the requested emails from each these and any other of Defendant's email accounts, including robertwaelty@beastup.com.  Indeed, documents recently produced by third-party Foothill Distribution Company demonstrate that at least beastupenergy@gmail.com has been used by Defendant for communications.  (*Id*., Ex. 17 at 1.)

    **b.**  **BeastUp's Response**

  Defendant's counsel is in the process of combing through the requested historical email accounts and uploading all responsive documents for production. Defendant has no objection to

producing this information. It is simply time-consuming and still being gathered. Defendant has informed Plaintiff that it is working in good faith to prepare the records as quickly as possible, and is committed to doing so.

### 2. Email Attachments

#### a. Monster's Contentions and Points of Authority

Defendant's document production includes numerous emails that refer to attachments or other documents that were not produced with the respective email.  Defendant agreed on April 3, 2018 that it would identify where in the production the following email attachment or documents referred to in emails have been produced (and associate it with its respective email), and if they have not been produced, it would produce them:

- The attachments identified in the emails produced at BEAST UP PROD 0242-243 (see Nov. 22 and Nov. 28 emails).
- The "Creative Brief" referred to in the email produced at BEAST UP PROD 0246.
- The attached and completed "Power Brands Agreement" referred to in the email produced at BEAST UP PROD 0274.
- The attachments referred to in the emails produced at BEAST UP PROD 0320, 0324, 0535, 0548 ("search.doc"), and 0666.
- The "attached two draft letters for your review" that are referred to in the Nov. 6, 2011 email produced at BEASTUP PROD 0598.
- The letter referred to in the May 12, 2010 email produced at BEASTUP PROD 0615.

(Zoretic Decl., Ex. 16 at 2.)  But Defendant has still failed to provide the requested information despite agreeing to do so.  Accordingly, Defendant should produce the requested documents and identify which document belongs to which email.  Defendant should further produce all the attachments to all other emails in its production, to the extent they have not been produced, and identify the email that corresponds to each attachment.  *See Cohen v. Trump*, 2015 WL 3617124, at *19–20 (S.D. Cal. June 9, 2015) (ordering Defendant to identify attachments corresponding to each email produced by Defendant and observing that "[s]everal courts have held that emails should be produced along with their attachments." (collecting cases)).

#### b. BeastUp's Response

All email attachments have been produced, in the order in which they were downloaded

1   from Defendant's email server. To the extent that further identification of attachments is

2   genuinely required to assist in Plaintiff's understanding of the facts, Defendant will provide the

3   necessary information.

4         **3.**    **RFP No. 47**

5   **REQUEST FOR PRODUCTION NO. 47:**

6   All communications between any of the following individuals that refer to or mention MEC, the

7   Claw Icon, any of MEC's BEAST-Inclusive Marks, or any of MEC's Products: Robert Waelty,

8   Jessee Waelty, John Waelty, Colter Hedden, and/or Tony Thompson.

9   **RESPONSE TO REQUEST FOR PRODUCTION 47:**

10   Defendant hereby produces all responsive documents located after a reasonable search. To the

11   extent additional documents are later uncovered, Defendant will supplement its production.

12         **a.**    **Monster's Contentions and Points of Authority**

13       Defendant's production does not contain any communications between Robert Waelty,

14   Jessee Waelty, John Waelty, Colter Hedden, and/or Tony Thompson responsive to this request.

15   (Zoretic Decl., ¶ 23.)   Defendant agreed on April 3, 2018 to confirm whether any such

16   communications existed and produce them.  (*Id.*, Ex.16 at 3.)  But Defendant has still failed to

17   provide the requested information despite agreeing to do so.  Accordingly, Monster requests

18   that the Court order Defendant to produce the requested communications or confirm that it has

19   conducted a reasonable search and no such communications exist.

20         **b.**    **BeastUp's Response**

21       The requested information was expressly provided by email dated May 4, 2018.

22         **4.**    **RFP No. 1**

23   **REQUEST FOR PRODUCTION NO. 1:**

24   All documents and things relating to the development, origin, conception, derivation, selection,

25   adoption, and/or approval of the BEASTUP mark and Defendant's Claw Logos.

26   **RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

27   Defendant will produce all non-privileged documents responsive to this Request that are

28   within its possession, custody, or control and are located after a reasonable search.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

Defendant hereby supplements its production to include additional documents relating to the development, origin, conception, derivation, selection, adoption, and/or approval of the BEASTUP mark and all related designs, including the art specification form submitted to Power Brands Consulting.

### a.  Monster's Contentions and Points of Authority

Defendant agreed on April 3, 2018 to produce the "art specification form" referenced on BEASTUP PROD0123 and BEASTUP PROD0242, which is responsive to this request for production because it relates to the BeastUp can design.  (Zoretic Ex. 6 at 4; Ex. 16 at 3.)  But Defendant has still failed to provide the requested information despite agreeing to do so.  Accordingly, Monster requests that the Court order Defendant to produce the requested document.

Defendant also agreed on April 3, 2018 that it would confirm in writing that a search was conducted for each of the following and state whether the requested documents are being produced or that there are no responsive documents:

- Communications with Tom Jahnke regarding Defendant's can designs (Mr. Collins was the artist involved in designing BeastUp can design (*see* Zoretic Decl., Ex. 12 at 58:10–59:10));

- Communications with A.J. Collins (including drawings mentioned during Rule 30(b)(6) deposition) (Mr. Collins allegedly designed BeastUp's "BU" logo (*see id*. at 112:7–113:8)); and

- Communications with PSI, including Ben Ebeling, and communications between Jessee Waelty and PSI (Jessee Waelty was involved in can design; Ben Ebeling at PSI, was involved in the production of BeastUp drinks (*see id*. at 117:12–119:13)).

(*Id*., Ex. 16 at 1.)  But Defendant has still failed to provide the requested information despite agreeing to do so.  Accordingly, Defendant should produce the requested documents.

### b.  BeastUp's Response

[BEASTUP TO INSERT]

Jt Statement re Discovery Dispute
Case No. 2:17-CV-01605-KJM-EFB

**5.**    **RFP No. 9**

**REQUEST FOR PRODUCTION NO. 9:**

All documents and things relating to communications between You and any distributors, retailers, and/or consumers that refer to or mention MEC, the Claw Icon, any of MEC's BEAST-Inclusive Marks, or any of MEC's Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Defendant has identified no responsive, non-privileged documents in its possession, custody, or control after a reasonable search.

**a.**    **Monster's Contentions and Points of Authority**

Defendant agreed on April 3, 2018 that it would confirm in writing that a search was conducted for all communications with Foothill Distributing and state whether the requested documents are being produced or that there are no responsive documents. (Zoretic Decl., Ex. 16 at 1.)  But Defendant has still failed to provide the requested information despite agreeing to do so.  Accordingly, Monster requests that the Court order Defendant to produce all of its communications with Foothill Distributing so that Monster can determine whether any of those communications refer or mention Monster, its marks, or its products.

**b.**    **BeastUp's Response**

[BEASTUP TO INSERT]

**6.**    **RFP No. 10**

**REQUEST FOR PRODUCTION NO. 10:**

All documents and things relating to any decision to seek or not seek trademark protection for the BEASTUP mark and/or Defendant's Claw Logos.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Defendant will produce all non-privileged documents responsive to this Request that are within its possession, custody, or control and are located after a reasonable search.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Defendant hereby supplements its production to provide additional documents responsive to this Request that were located after a reasonable search. To the extent additional documents are later

1    uncovered, Defendant will continue to supplement its production.

2              **a.    Monster's Contentions and Points of Authority**

3        Defendant agreed on April 3, 2018 that it would confirm in writing that a search was

4    conducted for all communications with Tony Thompson (who Mr. Waelty had communications

5    with regarding Mr. Thompson's use of the BeastUp mark (*see* Zoretic Decl., Ex. 12 at 30:18–

6    31:15)) and state whether the requested documents are being produced or that there are no

7    responsive documents. (*Id.*, Ex. 16 at 1.)  But Defendant has still failed to provide the requested

8    information despite agreeing to do so.   Accordingly, Monster requests that the Court order

9    Defendant to produce all of its communications with Tony Thompson.

10             **b.    BeastUp's Response**

11       [BEASTUP TO INSERT]

12       **7.    RFP Nos. 13 and 14**

13   **REQUEST FOR PRODUCTION NO. 13:**

14   Documents sufficient to show, on a monthly basis, Your total net and gross sales (both in units

15   and dollars) and total net and gross profits for the BeastUp Products.

16   **RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

17   Defendant will produce all non-privileged documents responsive to this Request that are within

18   its possession, custody, or control and are located after a reasonable search.

19   **SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

20   Defendant hereby supplements its production to provide additional documents responsive to

21   this Request that were located after a reasonable search. Defendant maintains voluminous

22   additional documents exclusively in hard copy format. Such documents are overly burdensome

23   for Defendant to scan or mail to Plaintiff. Defendant will make such documents available to

24   Plaintiff for inspection and copying, at Plaintiff's expense, at Defendant's place of business,

25   during regular business hours and upon reasonable advance notice.

26   **REQUEST FOR PRODUCTION NO. 14:**

27   Documents sufficient to show the prices charged for BeastUp Products, including, but not

28   limited to, price lists for the products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Defendant will produce all non-privileged documents responsive to this Request that are within its possession, custody, or control and are located after a reasonable search.

### a.    Monster's Contentions and Points of Authority

Defendant's counsel stated on April 3, 2018 that she "believe[d]" that all sales invoices and documents reflecting the amount of Defendant's products that have been given away "may" have been included in the documents made available for inspection.  (Zoretic Decl., Ex. 16 at 2.) Indeed, Defendant's counsel had not reviewed any of the documents made available for inspection, so she did not even have an understanding of what documents were being collected and produced.  Although some invoices were included in the documents made available for inspection, it is not clear whether all sales invoices have been produced.  (*Id*., ¶ 23.)  It is also not clear whether all documents reflecting the amount of products that have been given away have been produced.  (*Id*.)  Accordingly, Monster requests that the Court order Defendant to confirm whether all such documents have been produced, and if they have not produced, Monster requests that the Court order Defendant to produce them.

Defendant's counsel also stated on April 3, 2018 that she "believe[d]" that all documents filed with the Board of Equalization (which shows sales information) "may" have been included in the documents made available for inspection.  (*Id*., Ex. 16 at 2 (also responsive to RFP No. 26).)  But the only documents that appear to have been filed with the Board of Equalization that were included in the documents made available for inspection were for 2017.  (*Id*., ¶ 23.) Defendant has still failed to produce all other documents filed with the Board of Equalization for 2017 as well as any such documents for 2014–2016, so Monster requests that the Court order Defendant to produce them.

Defendant's counsel further stated on April 3, 2018 that she "believe[d]" that the form Defendant uses to track product provided to stores and all sales documents from Foothill Distributing "may" have been included in the documents made available for inspection.  (*Id*., Ex. 16 at 2.)  But the documents were not included in the documents made available for inspection (*id*. ¶ 23), and Monster requests that the Court order Defendant to produce them.

1        **b.**      **BeastUp's Response**

2        [BEASTUP TO INSERT]

3    **8.**      **RFP No. 23**

4    **REQUEST FOR PRODUCTION NO. 23:**

5    All documents and things relating to the advertisement, promotion, or marketing of the

6    BEASTUP mark, Defendant's Claw Logos, or the BeastUp Products.

7    **RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

8    Defendant will produce all non-privileged documents responsive to this Request that are within

9    its possession, custody, or control and are located after a reasonable search.

10   **SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

11   Defendant hereby supplements its production to provide additional documents responsive to this

12   Request that were located after a reasonable search. To the extent additional documents are later

13   uncovered, Defendant will continue to supplement its production.

14       **a.**      **Monster's Contentions and Points of Authority**

15       Defendant's counsel stated on April 3, 2018 that she "believe[d]" that the list of athletes

16   Defendant has sponsored "may" have been included in the box of documents made available for

17   inspection.  (Zoretic Decl., Ex. 16 at 2.)  But the document was not included in the documents

18   made available for inspection (*id.*, ¶ 23), and Monster requests that the Court order Defendant to

19   produce it.

20       **b.**      **BeastUp's Response**

21       [BEASTUP TO INSERT]

22   **9.**      **RFP No. 26**

23   **REQUEST FOR PRODUCTION NO. 26:**

24   All documents relating to Your costs and expenditures in connection with promoting and

25   advertising the BEASTUP mark, Defendant's Claw Logos, and the BeastUp Products.

26   **RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

27   Defendant will produce all non-privileged documents responsive to this Request that are within

28   its possession, custody, or control and are located after a reasonable search.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

Defendant hereby supplements its production to provide additional documents responsive to this Request that were located after a reasonable search. Defendant maintains voluminous additional documents exclusively in hard copy format. Such documents are overly burdensome for Defendant to scan or mail to Plaintiff. Defendant will make such documents available to Plaintiff for inspection and copying, at Plaintiff's expense, at Defendant's place of business, during regular business hours and upon reasonable advance notice.

### a. Monster's Contentions and Points of Authority

Defendant's counsel stated on April 3, 2018 that she "believe[d]" that the sheet showing the investments made into Defendant's business "may" have been included in the box of documents made available for inspection.  (Zoretic Decl., Ex. 16 at 2.)  But the document was not included in the documents made available for inspection (*id.*, ¶ 23), and Monster requests that the Court order Defendant to produce it.

### b. BeastUp's Response

[BEASTUP TO INSERT]

## 10. RFP No. 34

**REQUEST FOR PRODUCTION NO. 34:**

All documents and things relating to the channels of distribution or the intended channels of distribution for the BeastUp Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

Defendant will produce all non-privileged documents responsive to this Request that are within its possession, custody, or control and are located after a reasonable search.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

Defendant hereby supplements its production to provide additional documents responsive to this Request that were located after a reasonable search. To the extent additional documents are later uncovered, Defendant will continue to supplement its production.

### a. Monster's Contentions and Points of Authority

Defendant's counsel stated on April 3, 2018 that she "believe[d]" that the final, executed

1   version of Deposition Exhibit 12 (BEASTUP PROD 0010–21) "may" have been included in the

2   box of documents made available for inspection.  (Zoretic Decl., Ex. 16 at 2.)  But the document

3   was not included in the documents made available for inspection (*id.*, ¶ 23), and Monster

4   requests that the Court order Defendant to produce it.

5               **b.**      **BeastUp's Response**

6        [BEASTUP TO INSERT]

7        **11.**    **RFP No. 38**

8   **REQUEST FOR PRODUCTION NO. 38:**

9   All documents relating to any communications between You and any third-parties relating to

10  this lawsuit.

11  **RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

12  Defendant objects to the extent that this Request asks for documents not relevant to Plaintiff's

13  claims. Without waiving this objection, Defendant will produce all non-privileged documents

14  responsive to this Request that are within its possession, custody, or control and are located

15  after a reasonable search.

16  **SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

17  Defendant objects to the extent that this Request is duplicative of prior requests. Nonetheless,

18  Defendant hereby supplements its production to provide additional documents responsive to this

19  Request that were located after a reasonable search. To the extent additional documents are later

20  uncovered, Defendant will continue to supplement its production.

21               **a.**      **Monster's Contentions and Points of Authority**

22        Defendant agreed to investigate whether there were communications that occurred

23  before Aug. 7, 2017 between Mr. Waelty and Mr. Norberg, who is the owner of a company

24  involved in a separate trademark opposition proceeding with Monster and who discussed the

25  present lawsuit with Mr. Waelty.  (Zoretic Decl., Ex. 16 at 2–3.)  Defendant has neither

26  confirmed whether such documents exist nor has it produced any such documents. (*Id.*, ¶ 23.)

27  Accordingly, Monster requests that the Court order Defendant to produce any such documents.

28        Defendant also agreed on April 3, 2018 that it would confirm in writing that a search

1   was conducted for all communications with Tim Crew (who provided business advice to

2   Defendant and discussed the present lawsuit with Defendant (*see Id*., Ex. 12 at 41:18–44:9))

3   and state whether the requested documents are being produced or that there are no responsive

4   documents. (*Id*., Ex. 16 at 1.)   But Defendant has still failed to provide the requested

5   information despite agreeing to do so.  (*Id*., ¶ 23.)  Accordingly, Monster requests that the

6   Court order Defendant to produce all of its communications with Tim Crew.

7        Moreover, as discussed above in connection with Request for Production No. 47,

8   Defendant's production does not contain any communications between Robert Waelty, Jessee

9   Waelty, John Waelty, Colter Hedden, and/or Tony Thompson.   (*Id*., Ex.16 at 3; ¶ 23.)

10  Defendant should produce any such communications responsive to this request.

11            **b.    BeastUp's Response**

12            [BEASTUP TO INSERT]

13

14

15                              Respectfully submitted,

16                              KNOBBE, MARTENS, OLSON & BEAR, LLP

17

18  Dated:   April 23, 2018       By: */s/*_____
19                                    Steven J. Nataupsky
                                      Lynda J. Zadra-Symes
20                                    Matthew S. Bellinger
                                      Marko R. Zoretic
21
                                  Attorneys for Plaintiff
22                                MONSTER ENERGY COMPANY

23

24

25                              BRICOLAGE LAW, LLC

26  Dated:   April 23, 2018       By: */s/*_____
27                                      Eve J. Brown

28                                Attorney for Defendant,
                                  BEASTUP, LLC

1

2

3    28056426

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| **From:** | Eve J. Brown |
| **To:** | Marko.Zoretic |
| **Subject:** | RE: Monster v. BeastUp |
| **Date:** | Monday, April 2, 2018 3:37:29 PM |

Marko,

I assure you there is no gamesmanship on my end; just a sole practitioner, representing a one-man business that is run by an entrepreneur who is also a full-time fire chief, dad, and whose wife is in chemo. We are doing the best we can to respond meaningfully to your massive (and arguably disproportionate to the needs of this case) demands. I apologize if we are slower than you would like. I am not ignoring you.

Your copy service can copy the box at 1235 Jefferson Street at 10am tomorrow.
Rob Waelty will be there to oversee the process.

I can talk on the phone about your discovery concerns tomorrow at 1pm EST. I will be on my cell 617-671-5044.

From: Marko.Zoretic
Sent: Monday, April 2, 3:04 PM
Subject: RE: Monster v. BeastUp
To: Eve J. Brown
Cc: Matt.Bellinger


Eve,


You've been on notice of our discovery concerns since our March 12, 2018 letter and our March 22, 2018 email, but you have still failed to supplement BeastUp's document production and interrogatory responses.  Further, you have <u>again</u> ignored our request to continue our March 20 meet and confer.  Moreover, you have improperly withheld documents from inspection despite us already travelling to the exact location that you are now making the documents available for inspection.  Your discovery gamesmanship is wholly improper.  Monster is not required to continue the Sisyphean task of attempting to meet and confer with you or having BeastUp comply with its discovery obligations without court involvement.   Accordingly, please be advised that we consider our good faith obligations to meet and confer with you to have been met and that the issues raised in our March 12, 2018 letter and March 22, 2018 email to be ripe for a motion to compel pursuant to L.R. 251.


Regarding the documents you now state are available for inspection, a representative from Legal Photocopy Service (Redding, CA) is available to begin scanning the documents at 10:00 am at BeastUp's principal place of business (what you originally offered), A. Please confirm as soon as possible today, but no later than 2:30 pm Pacific time, that the date, time, and location works for Mr. Waelty.  If you insist that the document scanning is to take place at the hotel where BeastUp's Rule 30(b)(6) deposition took place, please confirm as soon as possible today, but no later than 2:30 pm Pacific time, that BeastUp will make the

necessary conference room arrangements so that the documents can be scanned at that location tomorrow at 10:00 am.


Regards,
Marko


**Marko Zoretic**
Partner
949-721-7695 **Direct**
**Knobbe Martens**



**From:** Eve J. Brown [mailto:ejbrown@bricolagelaw.com]
**Sent:** Monday, April 02, 2018 7:06 AM
**To:** Marko.Zoretic
**Cc:** Matt.Bellinger
**Subject:** RE: Monster v. BeastUp


Marko,


I am still reviewing your discovery concerns, but in the meantime, wanted to let you know that I have arranged with my client for you to meet him at the same hotel in Red Bluff where you took his deposition to inspect the hard copy box of documents. He can meet you tomorrow or Wednesday of this week or Monday of next week. He or his son will be there as well. You may copy the documents while on the premises, or take my client with you if you remove the documents for copying.


Please advise as to when you would like to meet him and I will have him and the box there for you.


Eve


**From:** Eve Brown
**Sent:** Wednesday, March 28, 2018 1:56 PM
**To:** 'Marko.Zoretic' <Marko.Zoretic@knobbe.com>
**Cc:** Matt.Bellinger <Matt.Bellinger@knobbe.com>
**Subject:** RE: Monster v. BeastUp


Hi Marko,

I apologize – I will review your bullet points and get back to you.

**From:** Marko.Zoretic <Marko.Zoretic@knobbe.com>
**Sent:** Wednesday, March 28, 2018 12:45 PM
**To:** Eve Brown <ejbrown@bricolagelaw.com>
**Cc:** Matt.Bellinger <Matt.Bellinger@knobbe.com>
**Subject:** RE: Monster v. BeastUp

Eve,

If you are not available at a requested meet and confer time (despite stating that you were generally available all week), we would expect the professional courtesy of a response. Informing us that you were not available only after we followed up with you days after our request, and then still not providing any available times to meet and confer, is not conducting the meet-and-confer process in good faith.

Further, regarding an alleged "revised version" of our meet and confer letter that you suggest you were waiting for (and apparently requesting as a prerequisite to continue our meet and confer), please see our March 22 email below which you appear to wholly ignore concerning the bullet points on pages 2–3 of our March 12, 2018 letter.  During our March 20 meet and confer, we discussed the bullet points in our March 12 letter, and you represented that those documents were largely produced on Feb. 2, 2018 in the range BEAST UP PROD 0242–445.  As you can see by the revised bullet point list in our March 22 email, your representation was not correct.

Accordingly, please let us know today if you're available tomorrow at 10:00 am, 11:00 am or 12:30 pm Pacific to continue our March 20 meet and confer based on our March 12, 2018 letter and my March 22, 2018 email . If you are not available tomorrow, please propose times on Thursday.

Moreover, during our March 20 meet and confer, you agreed that BeastUp would supplement its interrogatory responses to specifically identify the documents it was relying on.  We have not received any such promised supplementation despite your promise to provide them, and despite being on notice of such deficiencies since no later than March 12 (at least Interrogatory Nos. 1, 2, 7, 8, and 14 ).  Accordingly, that issue is now ripe for a motion to compel.

Regards,
Marko

**Marko Zoretic**

Partner
949-721-7695 **Direct**
**Knobbe Martens**



**From:** Eve Brown [mailto:ejbrown@bricolagelaw.com]
**Sent:** Wednesday, March 28, 2018 8:36 AM
**To:** Marko.Zoretic
**Cc:** Matt.Bellinger
**Subject:** RE: Monster v. BeastUp

Marko,

I was generally available last week, but did not hear from you until Thursday evening, at which point I was no longer available at the one time (the following morning at 10am) that you had proposed.

I have not yet heard back from you about a revised version of your meet and confer letter that specifies which documents you still feel are missing. As you recall, a large segment of the documents you complained of in your original letter had already been produced, but had been overlooked by you or your team. I hope you understand that I am reluctant to undertake additional legwork on my end without assurance from you that you have actually reviewed my client's production first.

Once you provide me with an updated outline of your discovery concerns, we can schedule a call to discuss and resolve them.

I am awaiting confirmation from my client about when and where you should pick up the box. It should be available for you whenever you would like to access it, but I will make sure and let you know.


Eve



**From:** Marko.Zoretic <Marko.Zoretic@knobbe.com>
**Sent:** Tuesday, March 27, 2018 4:42 PM
**To:** Eve Brown <ejbrown@bricolagelaw.com>
**Cc:** Matt.Bellinger <Matt.Bellinger@knobbe.com>
**Subject:** RE: Monster v. BeastUp

Eve,

We have not received a response to our email below to continue our meet and confer, despite your representation that you were generally available last week.  Please let us know what times you are available tomorrow and Thursday.  We have also not received any further document production from BeastUp, nor any further supplemental responses to Monster's interrogatories.

Further, we have not heard from you regarding what date and time next week the box of BeastUp's documents will be available for pick up so that we can make copies. Please let us know today so that we can make the necessary arrangements.

Regards,
Marko

**Marko Zoretic**
Partner
949-721-7695 **Direct**
**Knobbe Martens**

**From:** Marko.Zoretic
**Sent:** Thursday, March 22, 2018 4:40 PM
**To:** 'Eve Brown'
**Cc:** Matt.Bellinger
**Subject:** RE: Monster v. BeastUp

Thank you Eve. Please let us know what date and time next week the box will be available for pick up.  We will have Legal Photocopy Service in Redding pick up the box, make copies, and return the originals.

During our call on Tuesday, you mentioned that you believe that the documents identified in the bullet points on pages 2–3 of our March 12, 2018 letter were largely produced on Feb. 2, 2018 in the range BEAST UP PROD 0242–445.  From our review however, it does not include at least the following identified in our letter:

Communications with Foothill Distributing (e.g. Tr. at 13:19–14:12) (e.g. RFP Nos. 9 and 34)Communications with Tony Thompson (Tr. at 30:18–31:15) (e.g., RFP Nos. 10 and 47)Communications with Tim Crew (Tr. at 41:18–44:9) (e.g. RFP Nos. 11, 23, and 38)Communications with Tom Jahnke regarding Defendant's can designs (Tr. at 58:10–

59:7) (e.g. RFP Nos. 1 and 3)All sales invoices (Tr. at 62:9–63:1) (e.g. RFP Nos. 13 and 14)Documents reflecting the amount of Defendant's products that have been given away (Tr. at 63:2–64:5) (e.g. RFP Nos. 13 and 14)All records showing Defendant's purchase of inventory (Tr. at 64:15–65:3) (e.g. RFP Nos. 13 and 26)All documents filed with the Board of Equalization (Tr. at 64:4–65:12) (e.g. RFP Nos. 13 and 26)The form Defendant uses to track product provided to stores (Tr. 65:21–66:2) (e.g. RFP No. 13)Communications with A.J. Collins, including the mentioned drawings (Tr. at 112:7–113:8) (e.g. RFP Nos. 1 and 3)Communications with PSI, including Ben Ebeling, and communications between Jessee Waelty and PSI (Tr. at 117:12–119:13) (e.g. RFP Nos. 1, 3, 23, and 27) (one produced at BEATUP PROD 0552-553)The final, executed version of Deposition Exhibit 12 (BEASTUP PROD 0010-21) (Tr. at 144:15–145:3) (e.g. RFP Nos. 33–34)Sales documents from Foothill Distributing (Tr. at 145:11–146:6 and 148:14–149:8) (e.g. RFP Nos. 13 and 14)The sheet showing the investments made into Defendant's business (Tr. at 168:22–169:17) (e.g. RFP No. 23 and 26)The list of athletes Defendant has sponsored (Tr. at 170:20–171:1) (e.g. RFP Nos. 23–25)


Further:

As mentioned in our March 13, 2018 letter, Mr. Waelty testified that he regularly conducted business communications using various email accounts (e.g., beastupenergy@gmail.com, info@beastup.com, sniperwaelty@yahoo.com, and beastupgear@gmail.com) from 2008 to present.  But Defendant's production does not appear to have emails from the following accounts: beastupenergy@gmail.com, info@beastup.com, and beastupgear@gmail.com. Please confirm that Defendant will conduct the required search of each of these and any other of Defendant's email accounts for documents responsive to MEC's Requests for Production.Although there are some requested communications with Stephen Norberg, there are earlier communications that were not produced.  Please confirm that Defendant will search for and produce all the requested communications with Mr. Norberg.The emails produced produced at BEAST UP PROD 0242-243 (see Nov. 22 and Nov. 28 emails) refer to attachments, but there were no attachments produced with the emails.  Please produce the attachments or identify where in the production the attachments were produced.The email produced at BEAST UP PROD 0246 refers to a "Creative Brief."  Please produce the "Creative Brief" or identify where in the production the documents is produced.The email at BEAST UP PROD 0274 refers to an attached and completed "Power Brands Agreement." Please produce the agreement.The emails produced at BEAST UP PROD 0320, 0324, 0535, 0548 ("search.doc"), and 0666 refer to attachments, but there were no attachments produced with the emails.  Please produce the attachments or identify where in the production the attachments were produced.Please produce the "attached two draft letters for your review" that are referred to in the Nov. 6, 2011 email produced at BEASTUP PROD 0598. Please produce the letter referred to in the May 12, 2010 email produced at BEASTUP PROD 0615.


During our call you stated that you were generally available this week to continue our meet-and-confer.  Please let us know if you're available on Friday at 10:30 am Pacific (1:30 pm Eastern).


Regards,
Marko

**Marko Zoretic**
Partner
949-721-7695 **Direct**
**Knobbe Martens**


**From:** Eve Brown [mailto:ejbrown@bricolagelaw.com]
**Sent:** Thursday, March 22, 2018 8:32 AM
**To:** Marko.Zoretic
**Subject:** RE: Monster v. BeastUp


Marko,


I just heard back from my client that there are "over 600 hard copy receipts, invoices, bank statements etc... All in one large box."


He cannot afford to copy or scan these hard copies but will make the box available to you for inspection and copying if you wish to do so. I have not seen the documents yet, but my client did say that he does not believe there is anything in there germane to Monster Energy's claims. That said, if you want to view his old receipts, they are available for your inspection.


**From:** Marko.Zoretic <Marko.Zoretic@knobbe.com>
**Sent:** Monday, March 19, 2018 5:10 PM
**To:** Eve Brown <ejbrown@bricolagelaw.com>
**Cc:** Matt.Bellinger <Matt.Bellinger@knobbe.com>
**Subject:** RE: Monster v. BeastUp


Hi Eve,


The letter set forth 1:30 pm Pacific. But we can proceed at 10:30 am Pacific, 1:30 pm Eastern.


Regards,
Marko


**From:** Eve Brown [mailto:ejbrown@bricolagelaw.com]
**Sent:** Monday, March 19, 2018 2:07 PM
**To:** Marko.Zoretic
**Cc:** Matt.Bellinger
**Subject:** RE: Monster v. BeastUp

Just to clarify, did you mean EST or PST? 1:30 EST is better for me.


**From:** Marko.Zoretic <Marko.Zoretic@knobbe.com>
**Sent:** Monday, March 19, 2018 2:55 PM
**To:** Eve Brown <ejbrown@bricolagelaw.com>
**Cc:** Matt.Bellinger <Matt.Bellinger@knobbe.com>
**Subject:** RE: Monster v. BeastUp


Thank you. We will call you at that time.


Regards,
Marko


**Marko Zoretic**
Partner
949-721-7695 **Direct**
**Knobbe Martens**



**From:** Eve Brown [mailto:ejbrown@bricolagelaw.com]
**Sent:** Monday, March 19, 2018 11:51 AM
**To:** Marko.Zoretic
**Cc:** Matt.Bellinger
**Subject:** RE: Monster v. BeastUp


Yes, that time works tomorrow. I will be on my cell. 617-671-5044.


**From:** Marko.Zoretic <Marko.Zoretic@knobbe.com>
**Sent:** Monday, March 19, 2018 2:37 PM
**To:** Eve Brown <ejbrown@bricolagelaw.com>
**Cc:** Matt.Bellinger <Matt.Bellinger@knobbe.com>
**Subject:** RE: Monster v. BeastUp


Eve,


We write to follow up on our March 12, 2018 letter requesting a meet and confer on March 16 or March 20.  Are you available on March 20 at 1:30 pm?

Regards,
Marko


**Marko Zoretic**
Partner
949-721-7695 **Direct**
**Knobbe Martens**


**From:** Eve Brown [mailto:ejbrown@bricolagelaw.com]
**Sent:** Monday, March 12, 2018 12:22 PM
**To:** Marko.Zoretic
**Cc:** Matt.Bellinger
**Subject:** RE: Monster v. BeastUp


Received. I will respond as soon as possible.


**From:** Marko.Zoretic <Marko.Zoretic@knobbe.com>
**Sent:** Monday, March 12, 2018 2:47 PM
**To:** Eve Brown <ejbrown@bricolagelaw.com>
**Cc:** Matt.Bellinger <Matt.Bellinger@knobbe.com>
**Subject:** Monster v. BeastUp


Eve,


Please see the attached letter.


Regards,
Marko


**Marko Zoretic**
Partner
Marko.Zoretic@knobbe.com
949-721-7695 **Direct**
**Knobbe Martens**
2040 Main St., 14th Fl.
Irvine, CA 92614
www.knobbe.com/marko-zoretic



NOTICE: This email message is for the sole use of the intended recipient(s) and may

contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

**From:**     Eve J. Brown
**To:**       Marko Zoretic
**Subject:**  BeastUp update
**Date:**     Monday, April 16, 2018 9:53:00 AM

Hi Marko,

I apologize for the delay on the BeastUp supplemental answers. My client is going through a difficult time with his wife's cancer treatments, and it has been a struggle to go back and spend time on the email searches. Would you be amenable to an extension? I don't expect that I will have any additional documents or information for you until at least next week, and I appreciate that if we go too long, your time may be limited as well.

Eve J. Brown

**Bricolage Law, LLC**

Tel.  (617) 671-5044

Email:  ejbrown@bricolagelaw.com

Web: bricolagelaw.com

| From: | Eve J. Brown |
|-------|--------------|
| To: | "Marko.Zoretic" |
| Cc: | Matt.Bellinger |
| Subject: | RE: Monster v. BeastUp - Joint Statement Regarding Discovery Disagreement (Monster"s portion and supporting declaration) |
| Date: | Tuesday, April 24, 2018 2:36:00 PM |

Marko,

I am taken aback and a little speechless at your motion. I specifically asked for a week to allow my client time to be with his wife during cancer treatments. Instead of responding, you motioned the court with a comprehensive brief that must have taken an impressive number of billable hours, but that was entirely unnecessary.

I repeat that we are not hiding anything, and that I continue to work with my client to address your questions. We have been nothing but cooperative and courteous with you. I wish we could ask for the same in return.

I just spoke to Mr. Waelty to tell him about your motion. He is out of town until Saturday. He reiterated to me - again – that he has given you what he has, but said that he will triple check for the specific items you listed.

I have continually promised in good faith to look for everything you request, and have kept you abreast of any and all delays and their legitimate causes. If there are more documents, you will have them.

There is nothing I can do, however, until after Saturday.

Eve

---

**From:** Marko.Zoretic <Marko.Zoretic@knobbe.com>
**Sent:** Monday, April 23, 2018 3:28 PM
**To:** Eve J. Brown <ejbrown@bricolagelaw.com>
**Cc:** Matt.Bellinger <Matt.Bellinger@knobbe.com>
**Subject:** Monster v. BeastUp - Joint Statement Regarding Discovery Disagreement (Monster's portion and supporting declaration)

Eve,

Please find attached Monster's portion of the Joint Statement Regarding Discovery Disagreement (including supporting declaration and exhibits) noticed to be heard on May 16, 2018.  Please provide your portion as soon as possible, but no later than May 8, 2018 so that we have sufficient time to prepare for filing.  Please also note that the exhibits may contain reference to personal information that Defendant would prefer redacted. If there is any such information, please specifically identify any such portions.

Best regards,
Marko

**Marko Zoretic**
Partner
Marko.Zoretic@knobbe.com

**949-721-7695 Direct**

# Knobbe Martens

2040 Main St., 14th Fl.
Irvine, CA 92614
www.knobbe.com/marko-zoretic

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

| | |
|---|---|
| **From:** | Eve J. Brown |
| **To:** | "Marko.Zoretic" |
| **Cc:** | Matt.Bellinger |
| **Subject:** | Discovery |
| **Date:** | Friday, May 4, 2018 9:57:00 AM |

Marko,

As a follow-up to my email yesterday, and in an effort to resolve outstanding discovery concerns, below are specific items that you asked for that are already in your possession, as well as answers to some of your other questions.

<u>Produced as Part of Hard Copy Box Scan or Past Production:</u>

- All attachments from BeastUp emails

- All sales invoices

- Documents reflecting the amount of products that have been given away

- All records showing BeastUp's purchase of inventory

- All documents filed with the Board of Equalization (all filings Defendant has copies of were in the box. others were not kept after filing and are on record with the BOE, but are not within Defendant's possession)

<u>Documents/Things that Definitively Do Not Exist:</u>

- The "Creative Brief" referred to in emails with Powerbrands. This refers to an in-person meeting/"briefing" and not to a document.

- SKU and UPC codes for sweatshirts, t-shirts, tank tops, workout shirts, hats, lanyards, wristbands, beanies, coffee cups, or stickers/decals (these items have no SKUs or UPCs)

- Communications with A.J. Collins. These were all in person, not over email. Mr. Collins was Rob Waelty's sister's boyfriend, and they only spoke face to face. You already have the artwork he designed. There are no additional documents.

- Communications with Tony Thompson. These were all in person, not over email.

- Communications between Jessee Waelty and PSI. Jessee had no input with PSI and Rob Waelty does not recall Jessee ever emailing them. If he did, those emails are not in Rob's possession and Rob does not know about them.

- Written plans for future expansion of BeastUp. Mr. Waelty's hope is to retire in two years from his firefighting job and make BeastUp into a full-time operation. However, all plans have stalled due to this lawsuit and to his and his wife's respective health issues. There are no concrete plans at this moment, and nothing in writing.

<u>Documents that Defendant Was Able to Locate (Currently Being Prepared for Production):</u>

*I believe that many of these have already been produced to you at least once, but, for*

*efficiency's sake, am sending them again rather than searching through past productions for specific items.*

- The "Power Brands Agreement" referred to in produced emails

- The form Defendant used to track product provided to stores

- The final, signed version of Defendant's Distribution Agreement with Foothill

- The sheet Mr. Waelty referenced in his  deposition showing the investments made into BeastUp

- The list of athletes Defendant sponsors

- The Art Specification Form

- Wholesale pricing information for each of Defendant's goods

- All communications with the That Jack Show, including communications between Defendant and Jack Stockton

- All communications with Steve Adams, including communications sent to and from steve@316design.com

- Invoice No. 1060

- All documents relating to Defendant's sponsorships or endorsements of events or competitors

- All costs or expenses incurred in selling the BeastUp products, including the dollar amount and what the cost was for

- Additional communications with Foothill

- Communications with Tim Crew

- Communications with Tom Jahnke

- All emails with PSI

- All emails from the accounts beastupenergy@gmail.com, info@beastup.com, and beastupgear@gmail.com (my client gave me the login and password for each account and I am working on downloading each email for you, but it is a slow process)

<u>Other Info I Can Provide:</u>

- The roles that Power Brand Consulting employees Kris Guiao, Ashiliegh Brookham, and Alina Guerrero played in the development, selection, or approval of the BEASTUP mark.

*No Power Brand employee had a role in the development, selection, or approval of the BEASTUP mark. The mark had already been developed, trademarked, and was in use by Robert Waelty when Power Brands was hired. Power Brands was solely involved in can*

*design and beverage formulation. Kris Guaio was the design and packaging creative director, Ashleigh Brookham managed the design project, and Alina Guerrero was in charge of beverage formulation.*

- The date range for when BeastUp Products were sold on Defendant's website:

3/28/2016-10/28/2016

I will do my absolute best in good faith to scan and upload those documents I received recently (listed above) by the beginning of next week.

Would you be amenable to a stipulated extension of the discovery period for 30 days? This would allow me to both spend the time necessary to prepare the above documents as well as serve Defendant's discovery requests, which have been set aside so that I could address your concerns.

Thanks,

Eve

Eve J. Brown

**Bricolage Law, LLC**

Tel.  (617) 671-5044

Email:  ejbrown@bricolagelaw.com

Web: bricolagelaw.com