Steven J. Nataupsky (CA SBN 155913)
steven.nataupsky@knobbe.com
Lynda J. Zadra-Symes (CA SBN 156511)
lynda.zadrasymes@knobbe.com
Matthew Bellinger (CA SBN 222228)
matt.bellinger@knobbe.com
Marko R. Zoretic (CA SBN 233952)
marko.zoretic@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Plaintiff
MONSTER ENERGY COMPANY

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONSTER ENERGY COMPANY, a Delaware corporation,<br><br>                    Plaintiff,<br><br>          v.<br><br>BEASTUP LLC, a California limited liability company,<br><br>                    Defendant. | Case No. 2:17-CV-01605-KJM-EFB<br><br>**DECLARATION OF ROBERT L. KLEIN IN SUPPORT OF MONSTER ENERGY COMPANY'S MOTION FOR SUMMARY JUDGMENT**<br><br>Hon. Kimberly J. Mueller<br><br>Date:       November 2, 2018<br>Time:       10:00 a.m.<br>Location:  Courtroom 3 |

I, Robert L. Klein, hereby state and declare as follows:

1. I have personal knowledge of the matters set forth herein, and if I am called upon to testify, I could testify competently thereto.

2. I am Chairman and Co-Founder of Applied Marketing Science, Inc. ("AMS"), which is a market research consulting firm.

3. I received a Bachelor of Science degree in Mechanical Engineering in 1966 from the Massachusetts Institute of Technology, Cambridge, Massachusetts, and a Master of Science degree in 1968 from the MIT Sloan School of Management.

4. In 1989, I started Applied Marketing Science, Inc. with an MIT professor and a former client as partners. For the past 29 years, we have conducted market research on a wide range of both consumer and business products and services. AMS currently has approximately 30 employees.

5. In my market research career, I have personally designed and conducted over one thousand market research surveys. I am a member of the American Association for Public Opinion Research, the Product Development and Management Association, and the Institute for Operations Research and Management Science. I have represented AMS on the Council of American Survey Research Organizations and the International Trademark Association (INTA). For four years I was a member of INTA's Proof of Confusion Subcommittee, and for two years a member of INTA's Opposition & Cancellation Standards & Procedures Subcommittee.

6. Additional information regarding my experience and credentials is included in my curriculum vitae, which is included in the exhibit attached hereto.

7. I was asked by counsel for Plaintiff Monster Energy Co. ("Monster") to design, execute and analyze a market research survey that would determine the extent, if any, of a likelihood of confusion caused by the BEASTUP name, stylized logo, and other claw marks on cans of Defendant BeastUp LLC's energy drinks and Monster's marks, which include the Claw Icon mark, UNLEASH THE BEAST!® mark, UNLEASH THE ULTRA BEAST!® mark, and other BEAST containing marks, and that appear on the containers of Monster's energy drinks.

8. Attached hereto as Exhibit 1 is a true and correct copy of my June 22, 2018 Expert Report and attached documents containing additional information about the survey I conducted and the results of the survey. I reaffirm that my Expert Report truly and accurately sets forth my opinions in this matter and the basis for those opinions.

9. I used a survey design adapted from the *Eveready* format that is appropriate for district court proceedings, whereby survey respondents are shown the junior user's products or marks and are asked open-ended questions about the source of the products or marks. To assess the degree to which relevant consumers would be confused as to the source of the BeastUp energy drink, which displays the BEASTUP name, stylized logo, and other claw marks, I used a test-control experimental design. The purpose of the test-control design was to account for the level of respondent guessing and other forms of survey noise. Survey noise refers to factors that introduce error or bias into the survey estimates, causing them to deviate from the "true" level of association caused by the BEASTUP name, stylized logo, and other claw marks on the BeastUp energy drink can.

10. In order to interview relevant potential customers, I designed an Internet survey that screened potential respondents to determine if they were qualified to participate in the survey. The survey began with a series of screening questions to determine if a respondent was a member of the target population and qualified to participate in the survey. Only respondents who, among other qualifying criteria, were likely to purchase energy drinks in the next 30 days were allowed to participate in the survey. The survey consisted of 400 respondents who qualified for the survey.

11. Respondents were then randomly assigned to either the Test Group (200 respondents) or Control Group (200 respondents). Respondents in the Test Group were shown a picture of the existing BeastUp energy drink can. Respondents in the Control Group were shown a picture of the BeastUp energy drink can, but with the BEASTUP name changed to BRAVEUP, an alternative stylized logo, and other claw marks at issue removed. Respondents in both groups were then given a series of questions that addressed potential confusion as to source, affiliation, or approval about the Test Group or Control Group products. The questions

included what company the respondents believed put out the product shown, what other brand or brands (if any) did respondents believe were put out by the company that put out the product shown, and did respondents believe the company that puts out the product shown needed to get authorization or approval from another company.

12. In the Test Group, 49.2% of respondents (98 respondents) believed that the BeastUp energy drink is either put out by Monster, is another energy drink brand put out by the same company that puts out Monster Energy drink, or is from a company that needed authorization or approval from Monster to put out such a product. In the Control Group, 21.3% of respondents (42 respondents) believed that the control product was either put out by Monster, is another energy drink brand put out by the same company that puts out the Monster Energy® drinks, or is from a company that needed authorization or approval from Monster to put out such a product. After subtracting the level of guessing (the percentage of respondents who believed the control product had a connection to Monster or the Monster Energy® drinks) from the total level of confusion, the resulting "net" confusion is 27.9%. Based on these survey results, it is my opinion to a reasonable degree of professional certainty that a significant number of potential purchasers of the BeastUp energy drink products will be confused by the BeastUp energy drink.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 1st day of October, 2018, in WALTHAM, MA.

_____
Robert L. Klein

# CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2018, I caused the **DECLARATION OF ROBERT L. KLEIN IN SUPPORT OF MONSTER ENERGY COMPANY'S MOTION FOR SUMMARY JUDGMENT** to be electronically filed with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to the following counsel of record:

Eve J. Brown
BARTON GILMAN LLP
10 Dorrance Street, Suite 800
Providence, RI  02903
(401) 273-7171
ejbrown@bartongilman.com

                                           */s/ Matthew S. Bellinger*
                                           Matthew S. Bellinger

29135501