Eve J. Brown (SBN 247051)
BARTON GILMAN LLP
10 DORRANCE STREET, SUITE 800
PROVIDENCE, RI 02903
ebrown@bglaw.com
Phone: 401-273-7171

ATTORNEY FOR DEFENDANT

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONSTER ENERGY COMPANY,<br><br>          Plaintiff,<br><br>v.<br><br>BEASTUP LLC,<br><br>          Defendant. | Case No.: 2:17-CV-01605-KJM-EFB<br><br>**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

Before the Court is Plaintiff's Motion for Summary Judgment, which seeks to avoid a jury trial by prematurely dispensing of all claims and defenses without a full evaluation of the salient facts. In order to prevail on its motion, Plaintiff must show that there is no genuine issue of material fact in dispute and that Plaintiff is entitled to judgment as a matter of law on all counts. Plaintiff has failed to do so. To the contrary, substantially all material facts remain in genuine and rigorous dispute. Accordingly, summary judgment is inappropriate and should be denied.

This case involves a trademark dispute between two companies that sell energy beverages. Other than the commonality of the general "energy drink" product line and the inclusion of the generic dictionary word "beast" in their respective marks (albeit appearing in vastly different manners), there is no overlap between the two.

Plaintiff Monster Energy Company is a behemoth international corporation that sells highly caffeinated beverages under the name MONSTER ENERGY, with a tag line that demands UNLEASH THE BEAST! and a menacing claw icon intended to connote a violent creature tearing through Plaintiff's beverage cans, as seen below:



Plaintiff's goods have been under fire from numerous consumer groups and under investigation from the government for including dangerous ingredients, sometimes in lethal amounts. *See, e.g.,* Daniel J. DeNoon, *FDA: 5 Death Reports for Monster Energy Drink:*

MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 2

*Monster Energy Sued in Death of 14-Year-Old Girl*, WebMD (Oct. 23 2012), available at: https://www.webmd.com/food-recipes/news/20121023/death-reports-monster-energy-drink#1 (reporting that Plaintiff was under investigation by the United States Food and Drug Administration after five deaths and a nonfatal heart attack in people who drank Plaintiff's high-caffeine energy drinks and that a Maryland couple additionally filed a wrongful death suit against Plaintiff alleging that Plaintiff's product killed their 14-year-old daughter); *see also* Barry Meier, *Monster Energy Drink Cited in Deaths*, THE NEW YORK TIMES (Oct. 22, 2012), available at: https://www.nytimes.com/2012/10/23/business/fda-receives-death-reports-citing-monster-energy-a-high-caffeine-drink.html. Plaintiff's consumer brand identity and marketing is closely connected with hard partying, extreme sports, and girls. *See, e.g.*, the "Monster Energy Girls," depicted below:



MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 3



      Defendant, on the other hand, is a local, family-owned performance beverage and gear micro-business named BEAST UP. Defendant's performance products, including clothing, gear, and beverages, were formulated to be healthy, natural, and safe, and are marketed for young children and adolescent athletes. *See* Deposition Transcript of Robert Waelty, submitted by Plaintiff. The company was inspired by the founder's then-teenaged son, a professional motocross athlete. Defendant's company name, BEAST UP, was derived from motivational speech adopted by the company's founder, Robert Waelty, when volunteering with California prison inmates. *See* Deposition Transcript of Robert Waelty. Contrary to Plaintiff's accusations, Defendant has no "claw" trademark or logo, does not use identical or even similar imagery, colors, or wording in its packaging, advertising, or promotion, and had no intent whatsoever to associate or affiliate itself with Monster Energy Company. Indeed, given Plaintiff's negative press and far from family-friendly brand identity, Defendant would much prefer to distance itself from Plaintiff, rather than suggest any connection at all.

      Notably, Defendant has operated its business in Red Bluff, California since 2009. <u>For the past nine years, there has been zero actual confusion</u> between Defendant's and Plaintiff's

MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 4

products or their companies. Nor is there an iota of evidence that confusion is likely to ever occur. Nonetheless, Plaintiff employs faulty logic, mischaracterizations of law and fact, and abuses of the judicial process in order to persuade this Court to rule in its favor without a trial.

Defendant is entitled to a trial on the merits in this case, to cross examine the witnesses proffering unsubstantiated evidence against it, and to a jury's full consideration of the facts. Because those facts are genuinely in dispute, summary judgment must be denied.

## II.   STANDARD OF REVIEW

Summary judgment is only appropriate where there are no genuine issues of material fact in dispute and when the movant is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the burden of meeting this high standard. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). In applying this standard, the evidence, and all reasonable factual inferences drawn therefrom, must be viewed in the light most favorable to the non-moving party. Lloyd's Food Prods. Inc. v. Eli's Inc., 987 F.2d 766, 767, 25 U.S.P.Q.2d 2027, 2029 (Fed. Cir. 1993); Olde Tyme Foods, Inc. v. Roundy's, Inc., 961 F.2d 200, 202, 22 U.S.P.Q.2d 1542 (Fed. Cir. 1992) ("the law requires that all reasonable inferences be drawn in favor of the nonmovant"); Opryland USA Inc. v. Great American Music Show, Inc., 970 F.2d 847, 850, 23 U.S.P.Q.2d 1471 (Fed. Cir. 1992) ("the evidence submitted by the non-movant, in opposition to a motion for summary judgment, is to be believed, and all justifiable inferences are to be drawn in [its] favor."). *See also* United States Steel Corp. v. Vasco Metals Corp., 394 F.2d 1009, 157 U.S.P.Q. 627 (C.C.P.A. 1968) (summary judgment should be cautiously used so as not to deprive a party of the right to have the case decided on the evidence presented during the trial period).

### III. SUMMARY JUDGMENT IS INAPPROPRIATE IN THIS MATTER BECAUSE THE COMPARISON OF TRADEMARKS IS A HIGHLY FACTUAL INQUIRY REQUIRING ANALYSIS OF THE FULL RECORD

It is well established that trademark infringement cases are not conducive to resolution at the summary judgment stage due to the highly fact-specific nature of the analysis. Federal courts, including those in the Ninth Circuit, have a long history of disfavoring summary judgment in these cases because the ultimate issues are so inherently factual and not self-evident. KP Permanent Make-Up, Inc. v. Lasting Impression, Inc., 408 F.3d 596, 608 (9th Cir. 2005) ("Due to the factual nature of likelihood of confusion, determining whether a likelihood of confusion exists at the summary judgment stage is generally disfavored because a full record is usually required to fully assess the facts."), *citing* Clicks Billiards, Inc. v. Sixshooters, Inc., 251 F.3d 1252, 1265 (9th Cir. 2001); In Union National Bank of Texas, Laredo, Texas v. Union National Bank of Texas, Austin, Texas, 909 F.2d 839, 845 (5th Cir. 1990) ("We do not think that the trademark law is so clear that the interests it is meant to protect will be served in most cases without a thorough presentation of the evidence on all of the issues."); Car-Freshner Corp. v. Auto Aid Mfg. Corp., 461 F. Supp. 1055, 201 U.S.P.Q. 233 (N.D.N.Y. 1979) (trademark cases should not be resolved on summary judgment "absent the most extraordinary circumstances"); National Color Laboratories, Inc. v. Philip's Foto Co., 273 F. Supp. 1002, 1004, 157 U.S.P.Q. 136 (S.D.N.Y. 1967) (in trademark and unfair competition cases, the Court must "consider various factors, including the identity or similarity of the names, the similarity of the businesses of the respective parties, the extent to which the name in dispute describes the business conducted by each, the degree to which confusion may be created in the mind of the public, and any possible bad faith on the part of the defendant. By their very nature some of these factors are so hazy and grayish in nature that a summary judgment cannot be granted merely upon perusal of

MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 6

affidavits, except in those rare instances where the facts are so black and white in nature that it can be stated unequivocally that there is no genuine issue as to any material fact and no issues to be resolved at a trial."), *citing* G. D. Searle & Co. v. Chas. Pfizer & Co., 231 F.2d 316 (7th Cir. 1956); Sanitized, Inc. v. S. C. Johnson & Sons, Inc., 23 F.R.D. 230 (S.D.N.Y.1959); *and* Flint v. Oleet Jewelry Mfg. Co., 133 F.Supp. 459 (S.D.N.Y.1955).

The issues in the instant case are not unequivocal, nor "black and white," as evidenced by even a cursory visual comparison of the marks and products at issue:




No "extraordinary circumstances" exist that could justify a decision without any factual examination. Further, it is clear from the existing record that a reasonable jury could find in Defendant's favor. Thus, summary judgment is inappropriate at this stage. *See* Downing v. Abercrombie & Fitch, 265 F.3d 994, 1008 (9th Cir. 2001) (summary judgment inappropriate in trademark infringement case hinging on factual question of likelihood of confusion of compared marks).

IV.   **SUMMARY JUDGMENT IS INAPPROPRIATE IN THIS MATTER BECAUSE MATERIAL FACTS REMAIN IN DISPUTE**

At its core, this case centers around whether there is likelihood of confusion between Plaintiff's and Defendant's respective marks. Likelihood of confusion is a question of material fact. Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1356 n. 5 (9th Cir.1985) ("trial courts disfavor deciding trademark cases in summary judgments because the ultimate issue is so inherently factual.... Additionally, the question of likelihood of confusion is routinely submitted

for jury determination as a question of fact"); *see also* 5 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 32:119.

Within the broader likelihood of confusion analysis, additional questions of material fact arise. In this case, the laundry list of material facts remaining in dispute include:

- Whether Plaintiff has priority over several of its cited marks, despite claiming a date of first use of 2013, four years after Defendant's 2009 date of first use;
- Whether Plaintiff's and Defendant's marks are prohibitively similar in sight, sound, and meaning, all of which require factual comparison;
- Whether Defendant's mark is likely to cause confusion, mistake, or deception within the meaning of Section 2(d) of the Trademark Act, despite nine years of co-existence in the marketplace with Plaintiff's mark without a shred of evidence or indication thereof;
- Whether Plaintiff has met the notoriously high burden of establishing fame for its UNLEASH THE BEAST! tag line;
- If Plaintiff has proven fame, whether that fame predates Defendant's first use of its mark in 2009;
- If Plaintiff has proven fame, whether that fame is mere "niche fame" within a single product line, which is not afforded the deference claimed by Plaintiff;
- Whether Plaintiff has established a family of "BEAST-inclusive" marks, despite failing to show that goods bearing the marks are advertised, promoted, or sold together;
- Whether Defendant's California bear claw drawing, which appeared as an ornamentation on one of Defendant's former can designs, was ever used in a trademark manner, and if so, whether that drawing is confusingly similar to Plaintiff's raptor claw icon;

- Whether Plaintiff has shown that Defendant had an intent to infringe upon or harm Defendant's marks, despite documentary and testimonial evidence, taken under oath, that Defendant adopted its mark in good faith and with no intent to confuse or deceive;

- Whether Plaintiff has established such broad exclusive rights over the generic word BEAST such that any third-party mark including the dictionary word in any format, derivation, or combination with other words may be barred and punished;

- Whether Plaintiff waited an unreasonable and prejudicial length of time in bringing its lawsuit nine years after Defendant launched its business, allowing Defendant to expend substantial time, effort, and money to build its brand and to establish consumer recognition and loyalty before Plaintiff filed a single objection, including during the public objection period of Defendant's trademark registration process; and

- Whether Plaintiff has suffered any harm or injury caused by Defendant's mark, despite offering no evidence thereof.

In light of the above comprehensive list, there can be no question that various salient facts are vigorously in dispute, meaning that summary judgment may not properly be rendered.

## V. PLAINTIFF HAS FAILED TO MEET ITS HEAVY BURDEN OF SHOWING THAT IT IS ENTITLED TO JUDGMENT IN ITS FAVOR AS A MATTER OF LAW

Even if summary judgment in trademark proceedings was not strongly disfavored, and even if Defendant did not set forth numerous disputed material facts, Plaintiff in this case has not demonstrated that it is entitled to judgment as a matter of law. Plaintiff's burden in this matter is heavy, and has not been met. *National Color Laboratories, Inc.*, supra, 273 F. Supp. at 1006 (there is a "heavy burden upon the plaintiff to show that no genuine issue exists as to any material fact"); *see also* Fed. R. Civ. P. 56.

Plaintiff's own evidence raises significant questions as to the questions of fact raised above. For example, the testimonial depositions of both Defendant's founder, Robert Waelty, and Mr. Waelty's son, Jessee Waelty, contain repeated assertions, under oath, that: (1) Defendant's mark was adopted in good faith and with no intent to deceive consumers or to affiliate Defendant with Plaintiff; (2) Defendant's products are dissimilar to Plaintiff's products in ingredients, function, marketing, consumer messaging, connotation, trade channels, and appearance; (3) that Defendant's sales have been *de minimis*, indicating that Plaintiff's billion-dollar operation could not possibly have been "irreparably harmed" by Defendant; and (4) that, over the past nine years, there has been absolutely no confusion, actual or potential, between Defendant's and Plaintiff's products or marks.

Another example of Plaintiff's failure to prove an essential element of its case as a matter of law is found in Plaintiff's anemic assertion of its own fame. As a cornerstone of both its trademark infringement and dilution claims, Plaintiff must prove fame in order to succeed. Yet other than referring to itself as "famous" in a conclusory manner repeatedly throughout its motion, Plaintiff sets forth insufficient evidence to support a finding that its marks are, in fact, famous, and therefore entitled to an elevated scope of protection.

The standard for proving fame is notoriously high, and is Plaintiff's affirmative duty to meet. Lacoste Alligator S.A. v. Maxoly, Inc., 91 U.S.P.Q.2d 1594, 1596 (TTAB 2009) ("Because of the extreme deference accorded to a famous mark in terms of the wide latitude of legal protection it receives, and the dominant role fame plays in the likelihood of confusion analysis, it is the duty of the party asserting fame to clearly prove it."); *see also* Aegis Software, Inc. v. 22nd District Agricultural Association, 255 F.Supp.3d 1005, 1009 (S.D. Cal. 2017) (to meet the "famousness" threshold, a mark must be "widely recognized by the general consuming

MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 10

public of the United States as a designation of source of the goods or services of the mark's owner"), *citing* 15 U.S.C. § 1125(c)(2)(A); Avery Dennison Corp. v. Sumpton, 189 F.3d 868, 875 (9th Cir. 1999) (the famousness prong of the claim is meant to "carefully [limit] the class of trademarks eligible for dilution protection."); Thane Int'l, Inc. v. Trek Bicycle Corp., 305 F.3d 894, 911 (9th Cir. 2002) ("[A] mark usually will achieve broad-based fame only if a large portion of the general consuming public recognizes that mark. Put another way, the mark must be a household name."); Everest Capital Ltd. v. Everest Funds Mgm t., L.L.C., 393 F.3d 755, 763 (8th Cir. 2005) ("The judicial consensus is that 'famous' is a rigorous standard."); Coach Servs., Inc. v. Triumph Learning LLC, 668 F.3d 1356, 1373 (Fed. Cir. 2012) (it is well-established that fame is difficult to prove).

In this case, Plaintiff relies heavily on the declaration of its own chairman and CEO, Rodney Sacks, to assert its fame. It should first be noted that Mr. Sacks, as a layman and a biased party, lacks the authority and knowledge to accurately testify as to whether or not Plaintiff has met the threshold legal requirement for proving fame. The Sacks Declaration is also deficient as proof of Plaintiff's fame in that it is devoid of any credible evidence to support Mr. Sacks' self-serving claims and unsubstantiated opinions. Declarations such as Mr. Sacks' that are comprised of generalized, biased, and overstated claims are disfavored as a means of proving fame. *See* Genesco Inc. and Genesco Brands Inc. v. Gregory Martz, 66 U.S.P.Q.2d 1260, 1272 (TTAB 2003) ("The general and self-serving statement that opposer's marks have been used and advertised 'extensively' is entitled to little weight in establishing the fame of opposer's marks.")

Plaintiff also relies on expert testimony to show that its marks are famous. Both these reports and the Sacks Declaration purport to find fame, but lack context for any of Plaintiff's actual sales figures or raw number data. Plaintiff fails to explain how any of its figures relate to

MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 11

those of its competitors or how Plaintiff is situated within the larger market. This failure is fatal to Plaintiff's claim at the summary judgment stage. *See* Lacoste Alligator S.A. v. Ma xoly, Inc., 91 U.S.P.Q.2d 1594, 1596 (TTAB 2009) (raw numbers alone may be misleading without some context in the market). Moreover, the figures and analyses offered by these witnesses frequently and misleadingly conflate Plaintiff's MONSTER ENERGY and UNLEASH THE BEAST! marks in a manner that makes it untenable to identify which sales and survey results actually apply to the marks at issue in this lawsuit.

Finally, and perhaps most notably, Plaintiff has failed to make even a fundamental showing that Defendant's marks "so resemble Plaintiff's marks as to be likely to cause confusion when used on related goods or services." 5 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 20:14. In determining whether likelihood of confusion exists for trademark infringement and dilution purposes, the Ninth Circuit uses the 8-part test developed in *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979); namely; (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines.

In its Motion for Summary Judgment, Plaintiff misquotes and contorts the *Sleekcraft* factors to its own benefit, yet still fails meet its burden of showing that these factors should be resolved in its favor. To the contrary, Plaintiff's arguments are made up entirely of unsupported and improper assertions of law and fact.

For example, as to the very first *Sleekcraft* factor, as detailed above, Plaintiff has failed to show that its UNLEASH THE BEAST! mark is strong, or even that its more prominently advertised MONSTER ENERGY marks are famous to the degree required by the Lanham Act.

MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 12

Regarding the second *Sleekcraft* factor, proximity of the goods, Plaintiff has shown only that Defendant's beverages were once placed on a "local products" display in the same aisle as Plaintiff's goods, which were located on a shelf amongst various other unrelated beverages. This display was so rare and notable that Defendant posted it on his social media, as quoted by Plaintiff. Indeed, if simply being sold in the same aisle of a general store sufficed as evidence of proximity of goods, few competing (or even non-competing) items would ever be permitted to co-exist. Plaintiff's standard is simply not, and cannot be, the correct one in evaluating the similarity of trade channels.

As to the third factor, similarity of the marks, Plaintiff fails to convincingly argue that Defendant's BEAST UP mark is similar to Plaintiff's UNLEAST THE BEAST! mark as to appearance, sound, connotation, or commercial impression. The similarity or dissimilarity of marks is determined based on the marks in their entireties, and "cannot be predicated on dissecting the marks into their various components; that is, the decision must be based on the entire marks, not just part of the marks." In re Nat'l Data Corp., 753 F.2d 1056, 224 USPQ 749, 751 (Fed. Cir. 1985); *see also* Franklin Mint Corp. v. Master Mfg. Co., 667 F.2d 1005, 212 USPQ 233, 234 (CCPA 1981) ("'It is axiomatic that a mark should not be dissected and considered piecemeal; rather it must be considered as a whole in determining likelihood of confusion."). Here, the only similarity is the common inclusion of the dictionary word "beast," which comprises a mere portion of the respective marks. That is simply not enough.

There is not likelihood of confusion when the only similarity between marks is a generic term. *See* In re Nat'l Data Corp., 753 F.2d 1056, 224 USPQ 749, 751 (Fed. Cir. 1985); Jack Poust & Co., Inc. v. John Gross & Co., 460 F.2d 1076, 174 USPQ 149 (CCPA 1972) (the mark "Cherry Jubilee" did not so resemble the mark "Cherry Julep" as to cause confusion because the

MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 13

word "cherry" is the generic name of a flavor); In re Digirad Corp., 45 U.S.P.Q.2d 1841, 1998 WL 104305 (T.T.A.B. 1998) (finding no likelihood of confusion between the marks "Digiray" and "Digirad" because "digi" is commonly used for digital equipment); In re Hartz Hotel Services, Inc., 102 USPQ2d 1150 (TTAB 2012) (When comparing "Grand Hotel" to "Grand Hotel NYC," the Board found that, because the word "grand" is a weak formative in the hotel field, the addition of "NYC" to "Grand Hotel" was enough to distinguish the marks); National Distillers Products Co., LLC v. Refreshment Brands, Inc., 198 F. Supp. 2d 474 (S.D.N.Y. 2002) (no likelihood of confusion between TETON GLACIER and GLACIER BAY, both for alcoholic beverages, because the only shared term, "glacier," was generic and thus a weak source identifier); Sports Authority Michigan Inc. v. PC Authority Inc., 63 U.S.P.Q.2d 1782, 2002 WL 31039597 (TTAB 2002) (no likelihood of confusion between THE SPORTS AUTHORITY and THE PERSONAL COMPUTER AUTHORITY because of the genericness of the shared term "authority"); L.P. v. North Atlantic Operating Co., Inc., 101 USPQ2d 1163 (TTAB 2011) (finding that "Zig Zag Classic American Blend" and "Classic Canadian" were not confusing because the shared word "classic" would not likely be perceived by purchasers as a distinguishing source; instead, consumers would focus on the non-generic elements of the marks, and therefore the dissimilarities outweighed the similarities). In light of the above, Plaintiff's argument that the common and dissected word "beast" in both parties' marks is sufficient to rule in its favor on summary judgment is clearly deficient and erroneous.

      Regarding the fourth *Sleekcraft* factor, evidence of actual confusion, even Plaintiff admits that there has been none whatsoever. Defendant has never received misdirected inquiries from Plaintiff's consumers, nor has Defendant seen any other evidence of actual confusion in the nine years that Defendant has continuously been using its marks in commerce. *See* Deposition

MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 14

Transcript of Robert Waelty. Notably, in *Miguel Torres. S.A. v. Bodegas Muga, S.A.*, 176 F. App'x 124 (Fed. Cir. 2006), the same period of <u>nine years without any evidence of actual confusion</u> was deemed to be conclusive evidence in favor of the accused infringer. *Id*. at 129 ("the Board reasonably inferred that the lack of such evidence, under the circumstances, favored [the accused infringer].") Thus, this factor, too, weighs significantly in favor of Defendant.

The remaining *Sleekcraft* factors are equally speculative and insufficiently pled. Plaintiff's failure to prove its case as a matter of law is fatal at the summary judgment stage. Although the likelihood of confusion standard is necessarily speculative to a degree, "it cannot be pure guesswork. Evidence of a bare 'possibility' of confusion does not suffice." A&H Sportswear Inc. v. Victoria's Secret Stores Inc., 166 F. 3d 197 (3d Cir. 1999). Here, we have convincing evidence that there is no confusion between the marks. Plaintiff's unsupported guess that it might happen in the future is not sufficient to cancel Defendant's long-held mark, seize its property, and hand the fruits of its labors over to Plaintiffs without even a trial or full examination of the substantive record.

Without proving infringement or dilution, Plaintiff's other claims also necessarily fail. As such, Plaintiff's claims, and Defendant's defenses, should proceed to trial before a jury.

IV.   **CONCLUSION**

Defendant has set forth numerous triable issues of fact. Plaintiff has failed to meet its burden of showing that Defendant's facts are not genuine or genuinely in dispute, and that Plaintiff is entitled to judgment as a matter of law. As such, Plaintiff's motion for summary

1 | judgment must be denied.

2 | Dated: October 30, 2018                     By:     /Eve J. Brown/
3 |                                                     BARTON GILMAN LLP
                                                        10 DORRANCE STREET, SUITE 800
4 |                                                     PROVIDENCE, RI 02903
5 |                                                     ebrown@bglaw.com
                                                        Phone: 401-273-7171
6 |
7 |                                                     ATTORNEY FOR DEFENDANT

MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 16

**CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2018, I electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to the following attorneys of record at their e-mail addresses on file with the Court:

Lynda J. Zadra-Symes
ljs@kmob.com, litigation@kmob.com
Marko R. Zoretic
marko.zoretic@knobbe.com
Matthew S. Bellinger
2msb@knobbe.com, litigation@knobbe.com
Steven J. Nataupsky
litigation@knobbe.com

Dated: October 30, 2018        By:    /Eve J. Brown/
                                      BARTON GILMAN LLP
                                      10 DORRANCE STREET, SUITE 800
                                      PROVIDENCE, RI 02903
                                      ebrown@bglaw.com
                                      Phone: 401-273-7171

                                      ATTORNEY FOR PETITIONER

MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 17