Steven J. Nataupsky (CA SBN 155913*)*
steven.nataupsky@knobbe.com
Lynda J. Zadra-Symes (CA SBN 156511)
lynda.zadrasymes@knobbe.com
Matthew Bellinger (CA SBN 222228)
matt.bellinger@knobbe.com
Marko R. Zoretic (CA SBN 233952)
marko.zoretic@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Plaintiff
MONSTER ENERGY COMPANY

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONSTER ENERGY COMPANY, a Delaware corporation,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>BEASTUP LLC, a California limited liability company,<br><br>　　　　　Defendant. | Case No. 2:17-CV-01605-KJM-EFB<br><br>**MONSTER ENERGY COMPANY'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**<br><br>Hon. Kimberly J. Mueller |

# TABLE OF CONTENTS

Page No.

I. DEFENDANT'S UNTIMELY OPPOSITION SHOULD BE DISREGARDED ................................................................................................ 1

II. DEFENDANT FAILS TO CITE TO ANY EVIDENCE OF RECORD SUFFICIENT TO RAISE A GENUINE DISPUTE OF MATERIAL FACT ................. 2

III. THERE IS NO GENUINE DISPUTE THAT CONFUSION IS LIKELY ...................... 3

    A. Monster's Marks Are Strong ................................................................ 3

    B. The Proximity of the Goods Factor Refers to Whether the Goods at Issue Are Competing, Not the Physical Distance Between Them ........................ 4

    C. Similarity of the Marks ........................................................................ 5

        1. The Parties' Claw Marks Are Highly Similar ........................................ 5

        2. Defendant's Argument that Confusion Is Not Likely Because the Term "Beast" Is Allegedly Generic Is Unsupported By Law or Fact ................................................................................................ 5

    D. The Lack of Reported Instances of Actual Confusion Is Unnoteworthy and Is Not Evidence that Confusion Is Unlikely ......................... 6

    E. Defendant's Intent in Selecting Its Marks Does Not Negate the Likelihood of Confusion .................................................................... 7

    F. Defendant Failed to Present Any Evidence Regarding the Remaining *Sleekcraft* Factors ............................................................................. 7

IV. DEFENDANT FAILS TO RAISE ANY DISPUTED ISSUES OF FACT ON MONSTER'S DILUTION CLAIM ............................................................................. 8

V. DEFENDANT HAS CONCEDED ITS AFFIRMATIVE DEFENSES ........................... 9

# TABLE OF AUTHORITIES

**Page No(s).**

*AMF Inc. v. Sleekcraft Boats,*
  599 F.2d 341 (9th Cir. 1979) ............................................................................................... 3, 4, 7

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) ..................................................................................................................... 2

*Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.,*
  457 F.3d 1062 (9th Cir. 2006) ..................................................................................................... 6

*British Airways Bd. v. Boeing Co.,*
  585 F.2d 946 (9th Cir. 1978) ....................................................................................................... 2

*In re E. I. DuPont DeNemours & Co.,*
  476 F.2d 1357 (C.C.P.A. 1973) ................................................................................................... 3

*Foster v. City of Fresno,*
  392 F. Supp. 2d 1140 (E.D. Cal. 2005) ...................................................................................... 5

*GoTo.com, Inc. v. Walt Disney Co.,*
  202 F.3d 1199 (9th Cir. 2000) ..................................................................................................... 7

*Lacoste Alligator S.A. v. Maxoly, Inc.*
  Opp. No. 91177866, 2009 WL 1227922 (T.T.A.B. Apr. 27, 2009) ......................................... 4

*McIndoe v. Huntington Ingalls Inc.,*
  817 F.3d 1170 (9th Cir. 2016) ..................................................................................................... 2

*Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee*
  396 F.3d 1369 (Fed. Cir. 2005) ................................................................................................... 3

*Perfumebay.com Inc. v. eBay, Inc.,*
  506 F.3d 1165 (9th Cir. 2007) ..................................................................................................... 6

*Rebel Oil Co., Inc. v. Atl. Richfield Co.,*
  51 F.3d 1421 (9th Cir. 1995) ....................................................................................................... 9

*Rudolph Int'l, Inc. v. Realys, Inc.,*
  482 F.3d 1195 (9th Cir. 2007) ..................................................................................................... 5

*R.W. Beck & Assocs. v. City & Borough of Sitka,*
  27 F.3d 1475 (9th Cir. 1994) ....................................................................................................... 2

*U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.,*
  800 F. Supp. 2d 515 (S.D.N.Y. 2011) ........................................................................................ 7

*Visa Int'l Serv. Ass'n v. JSL Corp.,*
  610 F.3d 1088 (9th Cir. 2010) ..................................................................................................... 5

**TABLE OF AUTHORITIES**
**(Cont'd)**

**Page No(s).**

*Warner Bros. Entm't v. Global Asylum, Inc.*,
   No. CV 12-9547 PSG CWX, 2012 WL 6951315 (C.D. Cal. Dec. 10, 2012) ........................ 7

**OTHER AUTHORITIES**

Local Rule 230 ................................................................................................................... 1

Local Rule 260 ................................................................................................................... 2

# I. DEFENDANT'S UNTIMELY OPPOSITION SHOULD BE DISREGARDED

Defendant's opposition to Monster's summary judgement motion was due on October 19, 2018 at 4:00 p.m. *See* Local Rule 230; Dkt. No. 29 (Jan. 9, 2018 Status (Pretrial Scheduling) Order). Defendant brazenly disregarded that deadline. Defendant inexplicably waited to file an opposition brief until after the date provided in the Local Rules for Monster to file a reply (October 26, 2018) had passed and after the Court had taken the hearing on this motion off-calendar. Defendant unapologetically filed its threadbare opposition brief on October 30, 2018, eleven days after the opposition was due.[1] The Local Rules and this Court's orders are clear. "Failure to comply with Local Rule 230(c), as modified by [the Court's] order, may be deemed consent to the motion and the court may dispose of the motion summarily." Dkt. No. 29 at 4; *see also* L.R. 230(c). Defendant's flagrant disregard for this Court's rules should not be condoned.

Defendant had more than sufficient time to timely submit an opposition brief if it desired to do so. The parties held a pre-filing conference of counsel regarding Monster's motion on September 14, 2018. *See* Dkt. No. 38 at 1. Monster gave the bases for its proposed motion and Defendant indicated that it would oppose. *Id*; *see also* Ex. A (email exchange between Plaintiff's and Defendant's counsel prior to September 14, 2018 meet and confer). Monster then timely filed the present motion on October 4, 2018. *See* Dkt. No. 29 at 4. By the time Defendant's opposition was due, Defendant had been aware of Monster's motion for five weeks, and had Monster's motion papers for more than two weeks.

Defendant never contacted Monster about this motion prior to filing its untimely opposition. Defendant also provides no reason whatsoever in its opposition brief as to why the Court should accept the belated filing. Accordingly, Monster respectfully requests the Court to grant Monster's motion as conceded.

///

---

[1] Due to Defendant's failure to timely file an opposition, Monster was not able to file this reply by the deadline provided in the Local Rules.

## II. DEFENDANT FAILS TO CITE TO ANY EVIDENCE OF RECORD SUFFICIENT TO RAISE A GENUINE DISPUTE OF MATERIAL FACT

To the extent the Court does consider Defendant's inexplicably late opposition, the opposition fails to raise any genuine dispute of material fact that would defeat Monster's motion. Defendant resorts to launching ad hominem attacks that Defendant knows are irrelevant to the issues raised by Monster's motion. Rather than attempting to present actual evidence, Defendant relies almost entirely upon unsupported attorney argument or indiscriminate citations to entire deposition transcripts, with no indication of what specific testimony allegedly supports the arguments made by Defendant's counsel. This is insufficient as a matter of law to demonstrate a genuine issue of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."); *McIndoe v. Huntington Ingalls Inc.*, 817 F.3d 1170, 1173 (9th Cir. 2016) (nonmoving party must show that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.") (quoting *R.W. Beck & Assocs. v. City & Borough of Sitka*, 27 F.3d 1475, 1480 n. 4 (9th Cir. 1994); *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978) (attorney argument is not evidence and cannot by itself create a factual dispute sufficient to defeat a summary judgment motion where no dispute otherwise exists).

Defendant also did not controvert any of the facts set forth in Monster's Statement of Undisputed Facts or file a Statement of Disputed Facts. *See* Local Rule 260(b) (opposing party "shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial" and may also file a Statement of Disputed Facts containing "the source thereof in the record, of all additional material facts as to which there is a genuine issue precluding summary judgment or adjudication."). Instead, Defendant's

///

opposition purports to raise a "laundry list" of allegedly disputed factual questions without pointing to specific evidence to show any genuine issues actually exist. *See* Opp. Br. at 8-9.

Monster presented extensive evidence, in the form of supporting declarations, deposition testimony, discovery responses, and other documentary evidence, showing that it is entitled to summary judgment on its claims. For all of Defendant's talk of requiring analysis of the full record at trial, Defendant fails to identify any specific evidence that would raise a genuine dispute of material fact. The arguments of Defendant's counsel cannot substitute for citations to actual, supportable facts and are insufficient to defeat Monster's motion.

### III. THERE IS NO GENUINE DISPUTE THAT CONFUSION IS LIKELY

Defendant baselessly accuses Monster of "misquot[ing] and contort[ing]" the *Sleekcraft* factors. Opp. Br. at 12. However, it is Defendant who misstates the law. Monster provided a near word-for-word quote of the relevant *Sleekcraft* factors in its opening brief and then addressed each in turn. *See* Dkt. No. 39 at 5. Defendant has not shown that any genuine disputes of fact exist for any of the relevant *Sleekcraft* factors that preclude summary judgment.

### A.   Monster's Marks Are Strong

Defendant argues in addressing the first *Sleekcraft* factor (strength of the mark) that Monster failed to show that its marks are "famous to the degree required by the Lanham Act." Opp. Br. at 12. But fame is not a *Sleekcraft* factor. *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-50 (9th Cir. 1979) (referring to "strength of the mark"). Instead, the salient question for assessing likelihood of confusion, and as addressed by Monster in its opening brief, is where the mark lies on the distinctiveness scale (generic, descriptive, suggestive, arbitrary, or fanciful). *Id.* at 349. Evidence of sales, advertising, and the amount of consumer recognition may also show that a mark is strong for the purposes of assessing likelihood of confusion. *Id.* at 349-50.

Defendant attempts to substitute the Federal Circuit *Du Pont* fame factor (applicable in Trademark Trial and Appeal Board proceedings, and often used in such proceedings to describe strength of a mark) for the first *Sleekcraft* factor. *See In re E. I. DuPont DeNemours & Co.*, 476 F.2d 1357 (C.C.P.A. 1973); *Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee en 1772*, 396 F.3d 1369, 1374 (Fed. Cir. 2005). This tactic obfuscates the issues by

confusing the *Du Pont* fame factor with fame for the purposes of trademark dilution. *See Lacoste Alligator S.A. v. Maxoly, Inc.*, Opp. No. 91177866, 2009 WL 1227922, at *4 n.8 (T.T.A.B. Apr. 27, 2009) ("Fame for likelihood of confusion and dilution is not the same."). Defendant's string citations to various cases in the Federal Circuit, Trademark Trial and Appeal Board, Eighth Circuit, and Ninth Circuit referring to fame in the context of both likelihood of confusion and trademark dilution highlights Defendant's misapplication of the law for assessing strength of a mark under the first *Sleekcraft* factor. *See* Opp. Br. at 10-11.

Defendant has not come forward with any evidence refuting that Monster's marks at issue are arbitrary marks that are entitled to a wide scope of protection. Monster also presented extensive and unrebutted evidence, in the form of sales and marketing information, demonstrating that its marks are strong. Monster's Statement of Undisputed Facts (Dkt. No. 40) ("SUF") 21- 23, 25, 27, 28. Defendant likewise has not presented any evidence refuting the survey conducted by Monster's expert, Dr. Itamar Simonson, showing the Claw Icon mark has achieved significant secondary meaning among consumers. SUF 45-48. In sum, there is no dispute that Monster's marks are strong.

**B.    The Proximity of the Goods Factor Refers to Whether the Goods at Issue Are Competing, Not the Physical Distance Between Them**

Defendant characterizes the *Sleekcraft* factor addressing proximity of the goods as somehow relating to the physical distance between the parties' goods on store shelves. *See* Opp. Br. at 13 ("[I]f simply being sold in the same aisle of a general store sufficed as evidence of proximity of goods, few competing (or even non-competing) items would ever be permitted to co-exist."). However, the proper inquiry on this factor is the relatedness of the goods at issue, such as in use and function. *Sleekcraft*, 599 F.2d at 350 ("For related goods, the danger presented is that the public will mistakenly assume there is an association between the producers of the related goods, though no such association exists."). It is undisputed that the parties' goods here are both energy drinks. SUF 1-4, 35, 60. It is also undisputed that Defendant views Monster as one of its main competitors. SUF 55. Thus, there is no genuine dispute that this factor favors finding that consumer confusion is likely.

**C.  Similarity of the Marks**

    **1.  The Parties' Claw Marks Are Highly Similar**

Defendant's arguments relating to the similarity of the marks factor focus on the word "beast." Opp. Br. at 13-14. By failing to address Monster's arguments that Defendant's claw marks are highly similar to Monster's Claw Icon, Defendant concedes that the marks are similar. *See Foster v. City of Fresno*, 392 F. Supp. 2d 1140, 1146 n.7 (E.D. Cal. 2005) ("[F]ailure of a party to address a claim in an opposition to a motion for summary judgment may constitute a waiver of that claim.").

    **2.  Defendant's Argument that Confusion Is Not Likely Because the Term "Beast" Is Allegedly Generic Is Unsupported By Law or Fact**

Defendant asserts that the term BEAST is a "generic dictionary word" and asserts that "[t]here is not likelihood of confusion when the only similarity between marks is a generic term." Opp. Br. at 2, 13. A generic mark is synonymous with the type of product at issue. *See Rudolph Int'l, Inc. v. Realys, Inc.*, 482 F.3d 1195, 1197 (9th Cir. 2007) ("A generic term, also known as a common descriptive term, refers to the type or species of the product at issue."). BEAST is not synonymous with energy drinks. While BEAST can be found in the dictionary (like most words in the English language), it is also arbitrary, and thus inherently distinctive, when used on energy drinks. *See, e.g., Visa Int'l Serv. Ass'n v. JSL Corp.*, 610 F.3d 1088, 1091 (9th Cir. 2010) ("It's true that the word visa is used countless times every day for its common English definition, but the prevalence of such non-trademark use does not undermine the uniqueness of Visa as a trademark.").

The cases cited by Defendant (Opp. Br. at 13-14) are also inapplicable here because there is no evidence that BEAST is a common or descriptive term, let alone a generic term, for energy drinks or other beverages. Indeed, Defendant presents no evidence that BEAST is used in connection with energy drinks other than by Monster and in connection with Defendant's infringing use.

Defendant does not dispute that the term BEAST is a constant portion in all of Monster's BEAST-Inclusive Marks and the dominant portion of Defendant's BEASTUP mark. Based on

this commonality, there is a strong likelihood of confusion between the parties' marks as used on their respective goods. As explained by Monster in its opening brief, the likelihood of confusion is further increased by the fact that Defendant is using a BEAST-inclusive mark together with claw marks, which is something Monster has exclusively done since 2002. SUF 2, 16-20, 31. Defendant concedes that fact by failing to address it in Defendant's opposition. Thus, there is no genuine dispute that Defendant's BEASTUP mark and claw marks as used together are confusingly similar in appearance to Monster' marks.

### D.  The Lack of Reported Instances of Actual Confusion Is Unnoteworthy and Is Not Evidence that Confusion Is Unlikely

Defendant attempts to make much of the fact that there have not been reported instances of actual confusion between the parties' products. Opp. Br. at 14-15. However, courts have routinely stated that the absence of direct evidence of actual confusion does not weigh against finding a likelihood of confusion. *See, e.g., Perfumebay.com Inc. v. eBay, Inc.*, 506 F.3d 1165, 1176 (9th Cir. 2007) ("[T]he failure to prove instances of actual confusion is not dispositive against a trademark plaintiff, because actual confusion is hard to prove; difficulties in gathering evidence of actual confusion make its absence generally unnoteworthy.") (quoting *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.,* 457 F.3d 1062, 1077 (9th Cir. 2006)).

Defendant asserts that it has been using its marks for nine years. Opp. Br. at 14. But it only began using its marks on energy drinks in May 2014. SUF 61. Defendant further concedes that its sales have been *de minimis*. Opp. Br. at 10. In view of Defendant's minimal sales, there has been no meaningful opportunity for actual confusion to have occurred. Defendant also does not dispute that the parties' energy drinks are relatively inexpensive and purchased with less care. SUF 57, 58. Consequently, consumers are unlikely to bother to report any confusion that may have occurred. *See*, *e.g.*, *Au-Tomotive Gold,* 457 F.3d at 1077 ("In this case, which involves a national market and a low degree of consumer care, nothing suggests that the lack of evidence of confusion should be particularly noteworthy.").

Defendant also entirely ignores the survey conducted by expert Robert Klein showing a significant 27.9% confusion rate between Defendant's BeastUp energy drinks and Monster and

its products.  SUF 41.  This unrebutted survey is further powerful evidence that confusion is likely.  *See, e.g., Warner Bros. Entm't v. Global Asylum, Inc.*, No. CV 12-9547 PSG CWX, 2012 WL 6951315, at *9 (C.D. Cal. Dec. 10, 2012) ("Generally, confusion levels of 25 to 50 percent provide 'solid support' for a finding of likelihood of confusion . . . ."); *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 532-36 (S.D.N.Y. 2011) (surveys showing net confusion levels of 17.8 %, 22.5%, and 27.8% supported conclusion that confusion was likely).

### E. Defendant's Intent in Selecting Its Marks Does Not Negate the Likelihood of Confusion

Defendant does not dispute that it was aware of Monster and its UNLEASH THE BEAST!® mark well before starting Defendant's business.  SUF 59.  Defendant instead argues, without any specific citation to the record, that its mark was adopted in good faith and without intent to deceive consumers or to affiliate Defendant with Plaintiff.  Opp. Br. at 9-10.  Even crediting all reasonable inferences in favor of Defendant, this does not save Defendant because bad faith is not a prerequisite to finding a likelihood of confusion.  *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1208 (9th Cir. 2000).

### F. Defendant Failed to Present Any Evidence Regarding the Remaining *Sleekcraft* Factors

Defendant's only argument on the remaining *Sleekcraft* factors is that they are "equally speculative and insufficiently pled."  Opp. Br. at 15.  Defendant ignores that Monster presented evidence, including Defendant's own written discovery responses, on two additional *Sleekcraft* factors, namely that the parties' products are marketed through the same channels and that purchasers are likely to exercise a low degree of care when purchasing the parties' energy drinks.  SUF 25, 50, 51, 56-58.  Defendant does not explain how these factors are allegedly speculative or "insufficiently pled" in view of the evidence presented by Monster.  Defendant's failure to present evidence to the contrary shows there is no material fact in genuine dispute.

/ / /

/ / /

## IV. DEFENDANT FAILS TO RAISE ANY DISPUTED ISSUES OF FACT ON MONSTER'S DILUTION CLAIM

Defendant's sole argument in response to Monster's dilution claim appears to be that Monster allegedly has not shown that its Claw Icon mark is famous among the general public. Opp. Br. at 10-12. However, Defendant does not dispute the results of the survey conducted by expert Dr. Itamar Simonson on the Claw Icon, which he found supported a conclusion of fame. SUF 45-48. Monster also submitted evidence through the declaration of Monster's CEO and chairman, Rodney Sacks, showing that the Claw Icon has been extensively used by Monster since 2002. *See, e.g.,* SUF 2, 3, 16, 23. Mr. Sacks explained, for example, that Monster has sold more than 18 billion cans of its Monster Energy® line of drinks in the United States displaying the Claw Icon on the drink containers and has spent over $5.5 billion in advertising its Monster Energy® brand, including the Claw Icon. Declaration of Rodney Sacks (Dkt. No. 41) ¶¶ 22-23; *see also* SUF 21, 22, 27-30. That evidence also supports a finding of fame.

Defendant criticizes the testimony of Mr. Sacks as failing to meet the standard for an expert witness. Opp. Br. at 11. However, Mr. Sacks is a fact witness. His declaration sets forth facts within his knowledge and authenticates documents submitted by Monster in support of its motion. Defendant does not contest the accuracy of any of the sales and marketing information contained in Mr. Sacks' declaration and his testimony on those issues is undisputed. Defendant instead criticizes Monster for failing to provide "context" for actual sales figures, including how Monster's sales compare to its competitors. Opp. Br. at 11-12. On the contrary, Mr. Sacks specifically testified: "Monster's energy drinks hold a 38% by dollar value market share of the U.S. energy drink market, and the Monster Energy® line of drinks is the best-selling energy drink brand in the U.S." Sacks Decl. ¶ 21 (Dkt. No. 41 at 8-9).

In sum, Monster has presented evidence showing that its Claw Icon is famous among the general public and Defendant has not refuted that evidence in any meaningful way. Monster is thus entitled to summary judgment on its dilution claim.

/ / /

/ / /

## V. **DEFENDANT HAS CONCEDED ITS AFFIRMATIVE DEFENSES**

Monster moved for summary judgment on Defendant's affirmative defenses of laches/waiver/acquiescence, unclean hands, and priority. Opening Br. at 14-20. Defendant bears the burden of proof on its affirmative defenses and was required in opposing Monster's motion to present evidence sufficient to sustain a jury verdict on those defenses. *See*, *e.g.*, *Rebel Oil Co., Inc. v. Atl. Richfield Co.*, 51 F.3d 1421, 1435 (9th Cir. 1995) ("If the moving party shows that there is an absence of evidence to support the plaintiff's case, the nonmoving party bears the burden of producing evidence sufficient to sustain a jury verdict on those issues for which it bears the burden at trial."). Defendant does not respond to the arguments made by Monster in its motion regarding the affirmative defenses and presents no evidence in support of the defenses. Accordingly, the Court should grant summary judgment against Defendant on all of its affirmative defenses.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:   November 6, 2018            By: /s/ Matthew S. Bellinger
                                            Steven J. Nataupsky
                                            Lynda J. Zadra-Symes
                                            Matthew S. Bellinger
                                            Marko R. Zoretic

                                         Attorneys for Plaintiff
                                         MONSTER ENERGY COMPANY

**CERTIFICATE OF SERVICE**

I hereby certify that on November 6, 2018, I caused the **MONSTER ENERGY COMPANY'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** to be electronically filed with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to the following counsel of record:

Eve J. Brown
BARTON GILMAN LLP
10 Dorrance Street, Suite 800
Providence, RI  02903
(401) 273-7171
ebrown@bartongilman.com

                                                          */s/ Matthew S. Bellinger*
                                                         Matthew S. Bellinger

29361348