1
2
3
4
5
6
7                          UNITED STATES DISTRICT COURT

8                          EASTERN DISTRICT OF CALIFORNIA

9

10   MONSTER ENERGY COMPANY, a              No.  2:17-cv-01605-KJM-EFB
     Delaware corporation,
11
                    Plaintiff,
12                                          AMENDED[1] FINAL PRETRIAL ORDER
             v.
13
     BEASTUP LLC, a California limited
14   liability company,

15                  Defendant.

16

17           On November 22, 2019, the court conducted a final pretrial conference.   The court

18   issued its Final Pretrial Order on January 16, 2020.  ECF No. 61.  Monster Energy Company

19   ("Monster") objected.  ECF No. 63.  The objection alerted the court to its inadvertent inclusion of

20   disputed facts in the section containing facts not in dispute.  The court has the inherent power and

21   duty to correct orders containing clerical errors which have been issued due to inadvertence or

22   mistake. *Am. Trucking Ass'ns v. Frisco Transp. Co.*, 358 U.S. 133, 145 (1958).  Thus, the court

23   vacates its prior order and orders as follows:

24   JURISDICTION/VENUE

25           Jurisdiction over Monster's complaint for trademark infringement under 15 U.S.C.

26   §§ 1116 and/or 1121(a) is predicated on 28 U.S.C. §§ 1331 and 1338.  The court has

27   _____

28   [1]  The order is amended to delete previously included Undisputed Facts 45 and 46.  *See* ECF No.
     63.

                                              1

supplemental jurisdiction over Monster's state law claims for unfair competition under 28 U.S.C. §§ 1338(b) and 1367(a).

Venue is proper in this Judicial District under 28 U.S.C. 1391(b) and (c). Jurisdiction and venue are not contested.

JURY/NON-JURY

The parties agree the trial should be a bench trial.  Monster has withdrawn its demand for a jury trial.  Pretrial Statement, ECF No. 58 at 15.  BeastUp withdrew its jury demand at hearing.

Monster withdraws its request for monetary relief of any kind, including attorney's fees, and now requests exclusively injunctive relief.

The Seventh Amendment provides a constitutional right to a jury trial on legal claims, no right to a jury exists on purely equitable claims.  *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 962 (9th Cir. 2010); *Toyota Motor Sales, U.S.A., Inc. v. Tabari,* 610 F.3d 1171, 1183 (9th Cir. 2010) (finding no error in the trial court's denial of a jury trial in a trademark claim for purely injunctive relief); *Anti-Monopoly, Inc. v. General Mills Fun Group*, 611 F.2d 296, 307-08 (9th Cir. 1979).  Because Monster now requests only injunctive relief, the parties' positions are consistent with the applicable law and the case will proceed as a bench trial.

UNDISPUTED FACTS

1.      Monster is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 1 Monster Way, Corona, California, 92879.

2.      Monster launched its original Monster Energy® drink in 2002.

3.      Since 2002, Monster's original MONSTER ENERGY® drink container has and continues to display Monster's "Claw Icon"[2]® and UNLEASH THE BEAST!® mark on the product container.



[2] 

2

4.      Since 2002, Monster has expanded its MONSTER™ line of drinks to include other products, all of which display the Claw Icon on the product containers.

5.      Monster uses the marks UNLEASH THE BEAST!®, UNLEASH THE NITRO BEAST!®, REHAB THE BEAST!®, UNLEASH THE ULTRA BEAST!®, and PUMP UP THE BEAST!®, among other BEAST-containing marks, on containers of products in its MONSTER line of drinks.

6.      Monster is the owner of U.S. Trademark Registration No. 2,903,214 for the Claw Icon mark in connection with "drinks, namely, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated and non-carbonated energy or sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not" in International Class 32. The application for this registration was filed on May 7, 2003 and the registration issued on November 16, 2004.  The registration lists a first use in commerce date of April 18, 2002. The registration has achieved incontestable status.

7.      Monster is the owner of U.S. Trademark Registration No. 3,134,841 for the mark designated in this order as the "Lower Text Claw Icon"[3] in connection with "beverages, namely, carbonated soft drinks, carbonated soft drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated energy and sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not" in International Class 32.  The application for this registration was filed on May 7, 2003 and the registration issued on August 29, 2006.  The registration lists a first use in commerce date of April 18, 2002.  The registration has achieved incontestable status.

---

[3] 

3

1       8.  Monster is the owner of U.S. Trademark Registration No. 3,434,821 for the

2    Claw Icon mark in connection with "nutritional supplements" in International Class 5.  The

3    application for this registration was filed on September 7, 2007 and the registration issued on

4    May 27, 2008.  The registration lists a first use in commerce date of April 18, 2002.  The

5    registration has achieved incontestable status.

6       9.  Monster is the owner of U.S. Trademark Registration No. 3,434,822 for the

7    Claw Icon mark in connection with "non-alcoholic beverages, namely, energy drinks, excluding

8    perishable beverage products that contain fruit juice or soy" in International Class 32.  The

9    application for this registration was filed on September 7, 2007 and the registration issued on

10   May 27, 2008.  The registration lists a first use in commerce date of April 18, 2002.  The

11   registration has achieved incontestable status.

12      10.  Monster is the owner of U.S. Trademark Registration 3,963,668 for the

13   Claw Icon mark in connection with "stickers; sticker kits comprising stickers and decals; decals;

14   posters" in International Class 16.  The application for this registration was filed on July 28, 2010

15   and the registration issued on May 17, 2011.  The registration lists a first use in commerce date of

16   January 2004.  The registration has achieved incontestable status.

17      11.  Monster is the owner of U.S. Trademark Registration 3,963,669 for the

18   Claw Icon mark in connection with "all purpose sport bags; all-purpose carrying bags; backpacks;

19   duffel bags" in International Class 18.  The application for this registration was filed on July 28,

20   2010 and the registration issued on May 17, 2011.  The registration lists a first use in commerce

21   date of June 30, 2002.  The registration has achieved incontestable status.

22      12.  Monster is the owner of U.S. Trademark Registration 4,011,301 for the

23   Claw Icon mark in connection with "sports helmets; video recordings featuring sports, extreme

24   sports, and motor sports" in International Class 9.  The application for this registration was filed

25   on July 27, 2010 and the registration issued on August 16, 2011.  The registration lists a first use

26   in commerce date of June 30, 2002.

27      13.  Monster is the owner of U.S. Trademark Registration 4,051,650 for the

28   Claw Icon mark in connection with "clothing, namely, t-shirts, hooded shirts and hooded

sweatshirts, sweat shirts, jackets, pants, bandanas, sweat bands and gloves; headgear, namely hats and beanies" in International Class 25.  The application for this registration was filed on July 27, 2010 and the registration issued on November 8, 2011.  The registration lists a first use in commerce date of June 30, 2002.

14.   Monster is the owner of U.S. Trademark Registration 4,332,062 for the mark designated in this order as the "Side Text Claw Icon"[4] in connection with "silicone wrist bands; Silicone bracelets; Jewelry, namely, bracelets and wristbands" in International Class 14. The application for this registration was filed on October 5, 2012 and the registration issued on May 5, 2013.  The registration lists a first use in commerce date of December 2006.

15.   Monster is the owner of U.S. Trademark Registration 3,908,600 for the Lower Text Claw Icon mark in connection with "stickers; sticker kits comprising stickers and decals; decals" in International Class 16.  The application for this registration was filed on April 2, 2009 and the registration issued on January 18, 2011.  The registration lists a first use in commerce date of January 2004.

16.   Monster is the owner of U.S. Trademark Registration 3,908,601 for the Lower Text Claw Icon mark in connection with "clothing, namely, t-shirts, hooded shirts and hooded sweatshirts, sweat shirts, jackets, pants, bandanas, sweat bands and gloves; headgear, namely, hats and beanies" in International Class 16.  The application for this registration was filed on April 2, 2009 and the registration issued on January 18, 2011.  The registration lists a first use in commerce date of January 2004.  The registration has achieved incontestable status.

17.   Monster is the owner of U.S. Trademark Registration 3,914,828 for the Lower Text Claw Icon mark in connection with "sports helmets" in International Class 9.  The application for this registration was filed on April 2, 2009 and the registration issued on February 1, 2011.  The registration lists a first use in commerce date of January 2006.  The registration has achieved incontestable status.

[4] 

5

18. Monster is the owner of U.S. Trademark Registration 3,923,683 for the Lower Text Claw Icon mark in connection with "all purpose sport bags; All-purpose carrying bags; Backpacks; Duffle bags" in International Class 18. The application for this registration was filed on April 2, 2009 and the registration issued on February 22, 2011. The registration lists a first use in commerce date of May 2004.

19. Monster is the owner of U.S. Trademark Registration No. 2,769,364 for the UNLEASH THE BEAST! mark in connection with "fruit juice drinks, soft drinks, carbonated soft drinks and soft drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs" in International Class 32. The application for this registration was filed on December 18, 2002 and the registration issued on September 30, 2003. The registration lists a first use in commerce date of April 16, 2002. The registration has achieved incontestable status.

20. Monster is the owner of U.S. Trademark Registration No. 4,975,822 for the UNLEASH THE BEAST! mark in connection with "clothing, namely, tops, shirts, long-sleeved shirts, t-shirts, hooded shirts and hooded sweatshirts, sweat shirts, jackets, pants, bandanas, socks, sweat bands and gloves; headgear, namely, hats and beanies" in International Class 25. The application for this registration was filed on March 7, 2017 and the registration issued on June 14, 2016. The registration lists a first use in commerce date of 2002.

21. Monster is the owner of U.S. Trademark Registration No. 4,394,044 for the UNLEASH THE NITRO BEAST! mark in connection with "non-alcoholic beverages, namely, carbonated soft drinks; carbonated drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; carbonated energy or sports drinks" in International Class 32. The application for this registration was filed on December 14, 2010 and the registration issued on August 27, 2013. The registration lists a first use in commerce date of July 8, 2009.

22. Monster is the owner of U.S. Trademark Registration No. 4,336,329 for the REHAB THE BEAST! mark in connection with "ready to drink tea, iced tea and tea based beverages; ready to drink flavored tea, iced tea and tea based beverages" in International Class 30 and "non-alcoholic beverages, namely, energy drinks, sports drinks and fruit juice drinks; all the foregoing enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs" in

International Class 32.  The application for this registration was filed on November 3, 2010 and the registration issued on May 14, 2013.  The registration lists a first use in commerce date of March 2, 2011.

23.     Monster is the owner of U.S. Trademark Registration No. 4,292,502 for the REHAB THE BEAST! WWW.MONSTERENERGY.COM mark in connection with "ready to drink tea, iced tea and tea based beverages; ready to drink flavored tea, iced tea and tea based beverages" in International Class 30 and "non-alcoholic beverages, namely, energy drinks, sports drinks and fruit juice drinks; all the foregoing enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs" in International Class 32.  The application for this registration was filed on February 15, 2012 and the registration issued on February 19, 2013.  The registration lists a first use in commerce date of March 2, 2011.

24.     Monster is the owner of U.S. Trademark Registration No. 4,371,544 for the UNLEASH THE ULTRA BEAST! mark in connection with "non-alcoholic beverages, namely, carbonated soft drinks; carbonated drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; carbonated energy drinks and sports drinks" in International Class 32.  The application for this registration was filed on November 19, 2012 and the registration issued on July 23, 2013.  The registration lists a first use in commerce date of August 30, 2012.

25.     Monster is the owner of U.S. Trademark Registration No. 4,482,659 for the PUMP UP THE BEAST! mark in connection with "nutritional supplements in liquid form; vitamin fortified beverages" in International Class 5.  The application for this registration was filed on May 15, 2013 and the registration issued on February 11, 2014.  The registration lists a first use in commerce date of March 18, 2013.

26.     Monster is the owner of U.S. Trademark Registration No. 4,482,660 for the PUMP UP THE BEAST! mark in connection with "dairy-based beverages; dairy-based energy shakes" in International Class 29.  The application for this registration was filed on May 15, 2013 and the registration issued on February 11, 2014.  The registration lists a first use in commerce date of March 18, 2013.

27.     Monster is the owner of U.S. Trademark Registration No. 4,542,107 for the PUMP UP THE BEAST! mark in connection with "ready to drink coffee-based beverages; coffee-based shakes for boosting energy; chocolate-based shakes for boosting energy; ready to drink chocolate based beverages" in International Class 30.  The application for this registration was filed on May 15, 2013 and the registration issued on June 3, 2014.  The registration lists a first use in commerce date of March 18, 2013.

28.     Monster is the owner of U.S. Trademark Registration No. 4,546,402 for the PUMP UP THE BEAST! mark in connection with "non-alcoholic beverages, namely, non-alcoholic and non-carbonated drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; non-carbonated energy or sports drinks" in International Class 32.  The application for this registration was filed on May 15, 2013 and the registration issued on June 10, 2014.  The registration lists a first use in commerce date of March 18, 2013.

29.     All beverages in the MONSTER line of drinks display the Claw Icon on the product container and the majority also display at least one BEAST-containing mark on the product container such as, but not limited to, UNLEASH THE BEAST!®, UNLEASH THE NITRO BEAST!®, REHAB THE BEAST!®, UNLEASH THE ULTRA BEAST!®, and PUMP UP THE BEAST!®.

30.     In July 2009, Monster launched its Monster Energy Extra Strength Nitrous Technology® line of energy drinks which, since that time, has continuously displayed both the Claw Icon and UNLEASH THE NITRO BEAST!® marks on the product containers.

31.     In March 2011, Monster launched its MONSTER REHAB® line of energy drinks which, since that time, has continuously displayed both the Claw Icon and the REHAB THE BEAST!® and REHAB THE BEAST! WWW.MONSTERENERGY.COM® marks on the product containers.

32.     In August 2012, Monster launched its Monster Energy Ultra® line of energy drinks which, since that time, has continuously displayed both the Claw Icon and the UNLEASH THE ULTRA BEAST!® mark on the product containers.

33.     In March 2013, Monster launched its Muscle Monster® line of drinks which, since that time, has continuously displayed both the Claw Icon and the PUMP UP THE BEAST!® mark on the product containers.

34.     Between 2002 to 2013, inclusive, Monster spent approximately $2.2 billion on advertising and promoting its MONSTER line of drinks.

35.     Monster's Claw Icon and BEAST-containing marks have appeared in connection with Monster's sponsorship of athletes, teams, and athletic events, including in connection with motorsports.

36.     Between 2002 and August 2017, Monster sold more than 12 billion beverages that displayed both the Claw Icon and a BEAST-containing mark on the product container.

37.     Between 2002 to 2013, inclusive, Monster sold more than 6.8 billion cans of beverages that displayed both the Claw Icon and a BEAST-containing mark on the product container.

38.     Between 2002 to 2013, inclusive, Monster sold more than $10 billion worth of cans of its MONSTER line of beverages, all of which displayed the Claw Icon on the product container.

39.     Monster's sales in 2013 of the entire MONSTER line of beverages exceeded $1.98 billion.

40.     BeastUp is a single-owner limited liability company founded in 2009 by individual Robert Waelty.

41.     BeastUp is organized and existing under the laws of the State of California, and has a principal place of business at 1235 Jefferson Street, Red Bluff, California 96080.

42.     BeastUp is the owner of U.S. Trademark Registration No. U.S. Trademark Registration No. 4584629 for the mark BEASTUP in connection with "Sports drinks; namely, energy drinks" in International Class 32.  The application for this registration was filed on October 5, 2009 and the registration issued on August 12, 2014.  The registration lists a first use in commerce date of May 2014.

9

The following facts were listed in the Joint Pretrial Statement as disputed facts but do not appear to be in dispute.

43.   BeastUp is the owner of U.S. Trademark Registration No. 3838489 for the mark BEASTUP in connection with "Hats, shirts" in International Class 25. The application for this registration was filed on September 25, 2008 and the registration issued on August 24, 2010. The registration lists a first use in commerce date of April 1, 2009. The registration has achieved incontestable status.

44.   BeastUp's total gross sales from 2009-2017 for all goods sold, including both Class 25 and Class 32 products, were approximately $74,788.

DISPUTED FACTUAL ISSUES

Plaintiff identifies the following disputed factual issues, based on the court's Order on Monster's Motion for Summary Judgment, ECF No. 49:

1.   The similarity of Monster's BEAST-inclusive marks and the BEASTUP mark and of Monster's Claw Icon mark and BeastUp's claw marks.

2.   The fame of Monster's Claw Icon mark (as related to Monster's claim for dilution).

Defendant identifies the following disputed factual issues:

1.   Whether Monster's BEAST-inclusive marks are strong marks entitled to a wide scope of protection.

2.   Whether Monster's exclusive rights over its BEAST-inclusive marks extend to BeastUp's use of the BEASTUP mark.

3.   Whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin or source of the goods or services bearing one of the marks or names at issue in the case.

4.   Whether the parties' marks are confusingly similar in sight.

5.   Whether the parties' marks are confusingly similar in sound.

6.   Whether the parties' marks are confusingly similar in meaning.

/////

7.	Whether the plaintiff has suffered harm as a result of defendant's use of its mark.

8.	Whether plaintiff is entitled to cancellation of defendant's trademark and to enjoin defendant's use of its BeastUp mark.

9.	BeastUp is not currently profitable, and has ceased new production pending this lawsuit.

10.	BeastUp has removed all scratch mark designs from its original can design in response to plaintiff's complaint and is currently undertaking additional changes to its brand, including packaging, color palette, ingredients, and market positioning.

SPECIAL FACTUAL INFORMATION

None applicable.

DISPUTED EVIDENTIARY ISSUES

Evidentiary issues in dispute are identified below in the section on motions in limine.

STIPULATIONS/AGREED STATEMENTS

No stipulations. Plaintiff recites its core contentions in the "Agreed Statements" portion of the joint pretrial brief but states that the "[t]he defendant denies the plaintiff's claims."

RELIEF SOUGHT

Monster seeks injunctive relief only against BeastUp.  BeastUp seeks a defense verdict and an exceptional case designation entitling it to attorney's fees and costs.

POINTS OF LAW

The parties shall alert the court to disputes about the applicable law and legal standards.  Trial briefs addressing these points more completely shall be filed with this court no later than seven days prior to the date of trial in accordance with Local Rule 285.

ABANDONED ISSUES

Monster withdraws all demands in its complaint for monetary damages or other monetary relief such as attorney's fees and seeks only equitable relief.

/////

11

WITNESSES

Each party may call any witnesses designated by the other.

A.      The court will not permit any other witness to testify unless:

(1) The party offering the witness demonstrates that the witness is for the purpose of rebutting evidence that could not be reasonably anticipated at the pretrial conference, or

(2) The witness was discovered after the pretrial conference and the proffering party makes the showing required in "B," below.

B.      Upon the post pretrial discovery of any witness a party wishes to present at trial, the party shall promptly inform the court and opposing parties of the existence of the unlisted witnesses so the court may consider whether the witnesses shall be permitted to testify at trial. The witnesses will not be permitted unless:

(1) The witness could not reasonably have been discovered prior to the discovery cutoff;

(2) The court and opposing parties were promptly notified upon discovery of the witness;

(3) If time permitted, the party proffered the witness for deposition; and

(4) If time did not permit, a reasonable summary of the witness's testimony was provided to opposing parties.

EXHIBITS, SCHEDULES AND SUMMARIES

Plaintiff's exhibits are identified on **Exhibit 1** to the Pretrial Statement, ECF No. 58-1**.**  At trial, plaintiff's exhibits shall be listed numerically.

Defendant's exhibits are identified on the attached **Exhibit 2** to the Pretrial Statement, ECF No. 58-2**.**   At trial, defendant's exhibits shall be listed alphabetically, first A, B, C, etc., then AA, BB, CC, etc., and so on.

The court encourages the parties to generate a joint exhibit list to the extent possible.  Joint Exhibits shall be identified as JX and listed numerically, e.g., JX-1, JX-2.

All exhibits must be premarked.

The parties must prepare exhibit binders for use by the court at trial, with a side tab identifying each exhibit in accordance with the specifications above.  Each binder shall have an identification label on the front and spine.

The parties must exchange exhibits no later than twenty-eight days before trial.  Any objections to exhibits are due no later than fourteen days before trial.

A.   The court will not admit exhibits other than those identified on the exhibit lists referenced above unless:

(1)  The party proffering the exhibit demonstrates that the exhibit is for the purpose of rebutting evidence that could not have been reasonably anticipated, or

(2)  The exhibit was discovered after the issuance of this order and the proffering party makes the showing required in Paragraph "B," below.

B.   Upon the discovery of exhibits after the discovery cutoff, a party shall promptly inform the court and opposing parties of the existence of such exhibits so that the court may consider their admissibility at trial. The exhibits will not be received unless the proffering party demonstrates:

(1)  The exhibits could not reasonably have been discovered earlier;

(2)  The court and the opposing parties were promptly informed of their existence; and

(3)  The proffering party forwarded a copy of the exhibits (if physically possible) to the opposing party.  If the exhibits may not be copied the proffering party must show that it has made the exhibits reasonably available for inspection by the opposing parties.

DEPOSITION TRANSCRIPTS

Counsel must lodge the sealed original copy of any deposition transcript to be used at trial with the Clerk of the Court on the first day of trial.

/////

/////

13

1  FURTHER DISCOVERY OR MOTIONS

2          The parties do not anticipate further discovery or motion practice, excepting

3  motions in limine listed below.

4  AMENDMENTS/DISMISSALS

5          Monster withdraws all demands in its complaint for monetary relief.

6  SETTLEMENT

7          The parties did not reach a settlement at the settlement conference on October 9,

8  2019 with Judge Carolyn K. Delaney.  It appears the parties are interested in further settlement

9  discussions with Judge Delaney; the court REFERS the matter to Judge Delaney to conduct

10  further settlement negotiations as she deems appropriate.

11  MOTIONS IN LIMINE

12          The parties have not yet filed motions *in limine*.  Unless designated otherwise, the

13  court will decide evidentiary disputes and/or motions *in limine* on the first day of trial, or reserve

14  ruling, where appropriate, as trial unfolds.  If a party wishes to contest a pretrial ruling, it must do

15  so through a proper motion or objection, or otherwise forfeit appeal on such grounds.  *See* Fed. R.

16  Evid. 103(a); *Tennison v. Circus Circus Enters., Inc.*, 244 F.3d 684, 689 (9th Cir. 2001) ("Where

17  a district court makes a tentative in limine ruling excluding evidence, the exclusion of that

18  evidence may only be challenged on appeal if the aggrieved party attempts to offer such evidence

19  at trial.") (alteration, citation and quotation omitted).

20          Motions *in limine* shall be filed with the court no later than April 1, 2019.

21  Oppositions shall be filed no later than April 15, 2019, and replies, if any, shall be filed by April

22  22, 2019.

23          Monster intends to file motions *in limine* seeking the following:

24          1.      BeastUp should be precluded from offering evidence or argument that

25  Monster is a "trademark bully" or from making other derogatory, disparaging, and/or pejorative

26  references to Monster, including offering the evidence BeastUp produced at "MEC BULLYING

27  0001–0155" or evidence which uses the Bates labelling prefix "MEC BULLYING."

28  /////

1          2.      BeastUp should be precluded from offering evidence or argument that

2   energy drinks in general, or Monster Energy drinks in particular, cause harm to consumers.

3          3.      BeastUp should be precluded from offering evidence or argument of

4   alleged third party uses of trademarks in an attempt to show that Monster's trademarks are weak

5   because BeastUp cannot show the extent of any third-party use.

6          4.      BeastUp should be precluded from arguing that BeastUp has priority of use

7   with respect to BeastUp's BEASTUP mark or claw marks over Monster's asserted marks in

8   connection with beverages.

9          BeastUp intends to file motions *in limine* seeking the following:

10          1.      Monster Energy should be precluded from offering evidence of or

11  arguments relating to its Claw Icon, as BeastUp has testified to and is prepared to stipulate in

12  writing that, in an attempt to resolve this dispute, it has already ceased use of the "scratch marks"

13  complained of in the Complaint, and has redesigned its packaging to remove all such marks.

14          2.      In their pretrial statement, BeastUp stated they planned to bring a motion *in*

15  *limine* seeking that the scope of Monster Energy's sought injunction should be limited or mooted

16  entirely based on voluntarily changes BeastUp is currently in the process of making as to: the

17  size, shape, and materials of its packaging; its color palette; its logo design; its ingredients; and its

18  marketing.  At hearing, BeastUp agreed with the court that the issue would be reserved for post-

19  trial motion practice.  Thus, no motion *in limine* will be heard addressing this issue.

20  JOINT STATEMENT OF THE CASE

21          The parties have not submitted a joint statement of the case.  Because the trial will

22  be a bench trial, none is necessary.

23  SEPARATE TRIAL OF ISSUES

24          The parties agree that no separate trial of any issue is necessary.

25  IMPARTIAL EXPERTS/LIMITATION OF EXPERTS

26          The parties agree no impartial expert witnesses or limitations on the number of

27  expert witnesses are necessary.

28  /////

15

1  ATTORNEYS' FEES

2        Monster has withdrawn its demand for attorney's fees.  BeastUp seeks attorney's

3  fees and costs under the "exceptional case" provision of the Lanham Act, 15 U.S.C. § 1117(a)(3).

4  ESTIMATED TIME OF TRIAL/TRIAL DATE

5        Trial is set for May 6, 2020 at 9:00 a.m. in Courtroom Three before the Honorable

6  Kimberly J. Mueller.  Trial briefs are due **seven (7) days** prior.  Trial is anticipated to last three

7  days.  The parties are directed to Judge Mueller's trial schedule outlined on her web page on the

8  court's website.

9  MISCELLANEOUS

10       The court will not hear opening statements, but will hear closing statements.

11  OBJECTIONS TO PRETRIAL ORDER

12       Each party is granted **fourteen (14) days** from the date of this order to file

13  objections to the same.  If no objections are filed, the order will become final without further

14  order of this court.

15       The court's prior Final Pretrial Order, ECF No. 61, is hereby VACATED.

16     IT IS SO ORDERED.

17  DATED:  February 4, 2020.

18

19  _____

20  CHIEF UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28