Eve J. Brown (CA SBN 247051)
83 Morse St. Bldg. 6
Norwood, Massachusetts 02062
(t) 617.209.9753
(e) ejb@hoganduff.com
Anderson J. Duff (*pro hace vice*)
43-10 Crescent St. Ste. 1217
New York, New York 11101
(t) 646.450.3607
(e) ajd@hoganduff.com
HOGAN DUFF, LLP

*Attorneys for Defendant Beastup LLC*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONSTER ENERGY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>BEASTUP LLC,<br><br>Defendant. | No. 2:17-CV-01605-KJM-JDP<br><br>**DEFENDANT BEASTUP LLC'S TRIAL BRIEF**<br><br>Hon. Kimberly J. Mueller |

In accordance with the Court's Amended Final Pretrial Order (Dkt. No. 64) and subsequent extensions of the deadlines set forth therein, Defendant Beastup LLC ("Beastup"), by and through its attorneys, Hogan Duff, LLP, submits its trial brief.

## INTRODUCTION

This lawsuit centers on Rob Waelty ("Waelty"), the founder and owner of BeastUp LLC ("BeastUp"), and his decision to use BEASTUP as a trademark for energy drinks. Waelty filed federal trademark application Serial No. 77/841,371 for BEASTUP for "sports drinks, namely, energy drinks" on April 30, 2010. Plaintiff initiated this action asserting that BeastUp's use of BEASTUP and scratch marks as product trade dress infringed upon its trademark rights in several phrases ending in BEAST and other less relevant marks used in connection with energy drinks. Because BeastUp has removed all scratch marks from the product trade dress about which Plaintiff complained, the focus of Plaintiff's claims for trademark infringement, trademark dilution, false designation of origin, and unfair competition should be on BeastUp's federally registered BEASTUP trademark and Plaintiff's phrase marks ending in BEAST.

## SHORT STATEMENT OF FACTS

Before filing his '371 Application, Waelty filed federal trademark application Serial No. 77/578,285 for BEASTUP for "hats; shirts" on September 25, 2008. Waelty's '285 Application matured into federal trademark Registration No. 3,838,489 for BEASTUP for "hats; shirts" on August 24, 2010. Waelty assigned his '371 Application and '489 Registration to BeastUp on December 16, 2011 along with his entire interest in his BEASTUP trademarks and the goodwill associated with them. BeastUp's '371 Application matured into federal trademark Registration No. 4,584,629 for BEASTUP for "sports drinks, namely, energy drinks" on August 12, 2014. BeastUp, through its predecessor in interest, Waelty, first used BEASTUP as a trademark for hats and shirts on April 1, 2009. BeastUp first used BEASTUP as a trademark for energy drinks in May 2014.

When Waelty decided to make a foray into the business of sports and energy drinks, he chose BEASTUP as the trademark for his beverages because of his many experiences leading teams of people in physically and psychologically demanding circumstances. For example, when

2

Waelty led teams of firefighters who fought wildfires in remote locations in California, he would encourage the exhausted firefighters on his team by telling them to "beast up." Waelty went from telling his team to beast up to give them the physical and mental energy they needed to perform in a harsh environment to using BEASTUP as a one-word trademark for his beverage, which he designed to give those who drank it physical and mental energy.

On August 7, 2017, Plaintiff Monster Energy Company ("Plaintiff" or "Monster") filed a complaint against BeastUp asserting claims for:  (1) trademark infringement and false designation of origin under 15 U.S.C. § 1125(a); (2) trademark infringement under 15 U.S.C. § 1114; (3) trademark dilution under 15 U.S.C.  § 1125(c); (4) cancellation of BeastUp's '629 Registration; (5) unfair competition under California Business & Professions Code §§ 17200 *et seq.*; and (6) unfair competition under the common law of California. (Compl. ¶¶ 54-99, ECF No. 1.) Plaintiff later decided to forego any monetary damages or other monetary award, including attorneys' fees, and now seeks only equitable relief. Because BeastUp has ceased all use of scratch marks in its product trade dress, the only remaining issue is whether BeastUp's use of BEASTUP as a trademark conflicts with one or more of the eight trademarked phrases asserted by Plaintiff that end with BEAST! and/or the similarly formed trademark asserted by Plaintiff that appends a domain name to the end of the phrase ending in BEAST! The trademarks protected by Plaintiff's nine relevant registrations are:  UNLEASH THE BEAST!; UNLEASH THE NITRO BEAST!; REHAB THE BEAST!; REHAB THE BEAST! WWW.MONSTERENERGY.COM; UNLEASH THE ULTRA BEAST!; and PUMP UP THE BEAST! (referred to collectively herein as " Phrase Marks"). Plaintiff's registrations for each of its Phrase Marks identify a type of beverage. Only Plaintiff's registration for UNLEASH THE BEAST! recites a filing date that predates the filing date of the federal trademark application that matured into BeastUp's registration for BEASTUP for "sports drinks, namely, energy drinks," but each of the registrations for Plaintiff's Phrase Marks recites a first use date prior the date on which BeastUp began using BEASTUP for beverages.

**ADMISSIONS AND STIPULATIONS NOT
RECITED IN THE PRETRIAL ORDER**

No such admissions or stipulations exist.

**SUMMARY OF RELEVANT POINTS OF LAW**

**I.     Trademark Infringement and False Designation of Origin**

A claim for trademark infringement under 15 U.S.C. § 1114 and a claim for false designation of origin under 15 U.S.C. § 1125(a) require proof of the same elements and may be analyzed together. *Brookfield Commc'ns, Inc. v. West Coast Ent. Corp.*, 174 F.3d 1036, 1046 n.6 (9th Cir. 1999). "'The core element of trademark infringement is the likelihood of confusion, i.e., whether the similarity of the marks is likely to confuse customes about the source of the products.'" *Brookfield Commc'ns*, 174 F.3d at 1053 (quoting *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1391 (9th Cir. 1993) (quotation omitted)). "The test for likelihood of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998). A reasonably prudent consumer is "the typical buyer exercising ordinary caution."

Whether a likelihood of confusion exists is a question of material fact. *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1356 n.5 (9th Cir. 1985). The Ninth Circuit looks to eight non-exhaustive and pliant factors when determining whether a likelihood of confusion exists, namely:

> similarity of the conflicting designations; relatedness or proximity of the two companies' products or services; strength of Brookfield's mark; marketing channels used; degree of care likely to be exercised by purchasers in selecting goods; West Coast's intent in selecting its mark; evidence of actual confusion; and likelihood of expansion in product lines.

*Brookfield Commc'ns*, 174 F.3d at 1053-54 (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979) (citations omitted)). "[I]t is often possible to reach a conclusion with respect to likelihood of confusion after considering only a subset of the factors." *Id.* at 1054 (citing *Dreamwerks Prod. Grp. v. SKG Studio*, 142 F.3d 1127, 1130-32 (9th Cir. 1998)).

### A. Similarity of the Marks

"Similarity of the marks is tested on three levels: sight, sound, and meaning." *Sleekcraft*, 599 F.2d at 351 (citing *Plough, Inc. v. Kreis Lab'ys*, 314 F.2d 635, 638 (9th Cir. 1963)). " The similarity of the marks will always be an important factor. Where the two marks are entirely dissimilar, there is no likelihood of confusion." *Brookfield Commc'ns*, 174 F.3d at 1054. The sight, sound, and meaning of the marks at issue are compared under this factor. *Id.* Each mark must be considered in its entirety and as it appears to consumers in the marketplace. *Id.* (citations omitted).

### B. Strength of the Senior Mark

Under this factor, courts look at the conceptual and commercial strength of the senior mark. *U.S. Wholesale Outlet & Distrib., Inc. v. US Wholesale*, No. 2:20-cv-02379-KJM-AC, 2021 WL 2562596, *4 (E.D. Cal. June 23, 2021). Suggestive marks are weak when compared to arbitrary or fanciful marks but will be protected without proof of secondary meaning. *Sleekcraft*, 599 F.2d at 349.

#### 1. Conceptual Strength

"A mark's conceptual strength 'depends largely on the obviousness of its connection to the good or service to which it refers.'" *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1107 (9th Cir. 2016) (quoting *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1032-33 (9th Cir. 2010)). A trademark's conceptual strength is defined through a spectrum of five possible classifications. *Id.*

"Fanciful" marks consist of coined terms and are considered the strongest types of trademarks because a newly minted word has no meaning other than its trademark significance. McCarthy on Trademarks and Unfair Competition § 11:6 (5th ed.). Examples of fanciful marks include KODAK and AVEDA. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 632 (9th Cir. 2005) (citing *Aveda Corp. v. Evita Mktg., Inc.*, 706 F.Supp. 1419, 1428 (D. Minn. 1989)).

"Arbitrary" marks are common words that have no connection with the actual product--for example, 'Dutch Boy' paint." *Surfvivor Media*, 406 F.3d at 631-32. Fanciful and arbitrary trademarks are, conceptually, the strongest types of trademarks. *Id.* (citation omitted).

Between the inherently distinctive fanciful and arbitrary marks are "suggestive" marks that "subtly connote something about the products." *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 349 (9th Cir. 1979).  The Ninth Circuit has "rejected the contention that extensive advertising automatically transforms a suggestive mark into a strong one." *Nutri/System, Inc. v. Con-Stan Indus., Inc.*, 809 F.2d 601, 605 (citing *Sleekcraft*, 599 F.2d at 350). Suggestive marks do not describe the features of the goods or services for which they are used but suggest them. *Surfvivor Media*, 406 F.3d at 632. "The exercise of some imagination is required to associate a suggestive mark with the product." *Id.* (citation omitted). By way of example, the Ninth Circuit found that the trademark SURFVIVOR was suggestive when used in connection with beach-related goods because associating SURFVIVOR with such goods required some imagination. *Id.*; *see also Pinterest, Inc. v. Pintrips, Inc.*, 140 F.Supp.3d 997, 1010 (N.D. Cal. 2015) ("Accordingly, while understanding the meaning of the 'Pinterest' mark requires the public to employ the multistage reasoning that differentiates suggestive marks from those that are merely descriptive, the combination of 'pin' and 'interest' cannot reasonably be said to be arbitrary or fanciful.")

The next category of trademarks are "descriptive" marks. *Id.* "These marks define a particular characteristic of the product in a way that does not require any exercise of the imagination." *Id.* (citation omitted). Descriptive marks merely describe a characteristic of the relevant goods or services and so do not receive trademark protection unless they acquire secondary meaning in the minds of the relevant consumers. *Id.* (citation omitted). The final category of marks, "generic" marks, are not entitled to trademark protection because they describe the goods or services for which the marks are used in their entirety. *JL Beverage Co., LLC*, 828 F.3d at 1107.

### 2. Commercial Strength

After considering the conceptual strength of the senior mark, "[t]he second step is to determine the strength of the mark in the marketplace, *i.e.*, the commercial strength of the mark." *Pinterest, Inc. v. Pintrips, Inc.*, 140 F.Supp.3d 997, 1010 (N.D. Cal. 2015) (citing *One Indus., LLC v. Jim O'Neal Distrib., Inc.*, 578 F.3d 1154, 1164 (9th Cir. 2009)). Even undisputed evidence showing that a mark is commercially strong cannot transform a suggestive mark into a mark

worthy of the protection provided to a fanciful or arbitrary mark. *Pinterest*, 140 F.Supp.3d at 1011 (finding that undisputed evidence that one-quarter of the United States' population used plaintiff's website each month only meant that plaintiff's PINTEREST mark should be afforded greater protection that most other suggestive marks and weighed only slightly in favor of plaintiff given the suggestive nature of the PINTEREST mark).

## II.     Trademark Dilution

### A.     Date for Establishing Fame

"In order to prevail on a claim of trademark dilution, the plaintiff must establish that its mark was famous when the defendant first began to use the mark in commerce." *Pinterest*, 140 F.Supp.3d at 1031. "The Ninth Circuit has interpreted this portion of Section 1125 to mean any use of the mark in commerce by the defendant, not necessarily the particular use being challenged in the litigation." *Id.* (citing *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1012-13 (9th Cir. 2004)). "To fix the date by which the plaintiff must demonstrate fame, the defendant's use of the challenged mark in commerce need not be 'substantial or cover a wide geographic area[.]'" *Id.* (quoting *Nissan Motor Co.*, 378 F.3d at 1012 (citation omitted)).

### B.     Identity of Marks

"[T]he mark used by the alleged diluter must be identical, or nearly identical, to the protected mark" for a dilution claim to succeed." *Nissan Motor Co.*, 378 F.3d at 1011 (quoting *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 905 (9th Cir. 2002)).

### C.     Fame Threshold Requirement

"A 'famous' mark is one that 'is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner.'" *Pinterest*, 140 F.Supp.3d at 1033-34 (quoting 15 U.S.C. § 1125(c)(2)(A)). "The Ninth Circuit has recognized that fame requires a high standard of consumer awareness beyond the trademark owner's specific market—the mark should be a 'household name' or 'part of the collective national consciousness.'" *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, No. 11-CV-01846-LHK, 2012 WL 2571719, *7 (N.D. Cal. June 30, 2012) (quoting *Thane Int'l*, 305 F.3d at 911-12).

|   |   |
|---|---|
|   | Respectfully submitted, |
| Dated:  December 2, 2021 | By:   /s/ Anderson J. Duff |

Dated:  December 2, 2021            By:     /s/ Anderson J. Duff
                                            Anderson J. Duff
                                            HOGAN DUFF, LLP
                                            43-10 Crescent St. Ste. 1217
                                            New York, New York 11101
                                            (t) 646.450.3607
                                            (e) ajd@hoganduff.com

                                            *Attorneys for Defendant
                                            Beastup LLC*

**CERTIFICATE OF SERVICE**

I, Anderson J. Duff, hereby certify that on December 2, 2021, I caused Defendant BeastUp LLC's Trial Brief to be electronically filed with the Clerk of Court using the CM/ECF system, which sends an electronic notification of such filing to Plaintiff's following counsel of record:

>Steven J. Nataupsky
>(e) steven.nataupsky@knobbe.com
>Lynda J. Zadra-Symes
>(e) lynda.zadrasymes@knobbe.com
>Matthew S. Bellinger
>(e) matt.bellinger@knobbe.com
>Marko R. Zoretic
>marko.zoretic@knobbe.com
>KNOBBE, MARTENS, OLSON & BEAR, LLP
>2040 Main Street, Fourteenth Floor
>Irvine, CA 92614
>(t) 949.760.0404
>(f) 949.760.9502
>
>*Attorneys for Plaintiff*
>*Monster Energy Company*

>/s/ Anderson J. Duff
>Anderson J. Duff